

No. 14-10483-A

IN THE COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

GARY STEVEN VASILOFF,

Movant-Appellant,

vs.

UNITED STATES OF AMERICA,

Respondent-Appellee.

*** R E Q U E S T   F O R   A   C O A ***

On Appeal from the Northern District of Alabama

USDC No. 4:10-cv-08001-VEH-PWG

Gary Steven Vasiloff  (#26486001), pro se

13 July 2014          P.O. Box 24550, Tucson, AZ 85734

## APPLICABLE RULES

Both the Federal Rules as well at 28 U.S.C. §2253 govern COA's. Rule 11(a) of the Rules Governing §2255 Proceedings says, in part, that, "If the [district] court denies a certificate, a party may not appeal that denial but may seek a certificate from the court of appeals under Federal Rules of Appellate Procedure 22." Fed.R.App.P. 22(b)(2) states, in part, "A request addressed to the court of appeals may be considered by a circuit judge or judges as the court prescribes."

## REQUIREMENT FOR A COA

Since 1996 the requirement for a COA has been codified at 28 U.S.C. §2253(c)(1)(B). The next section, §2253(c)(2), states, "A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right." The Supreme Court's holing in Miller-El v. Cockrell [537 U.S. 322, 336, 342; 154 L.Ed.2d 931 (2003)] says that for the purposes of granting the COA, this Court must simply determine if other jurists COULD have debated the resolution of this case. "The question is the debatability of the underlying constitutional claim, not the resolution of that debate."

Mr. Vasiloff will show herein (and the record will further show) that other judges could have resolved this case differently and that the issues deserve further proceedings.

/.

<u>SUMMARY OF ARGUMENT   (in favor of COA)</u>

There are four types of errors that the district made when denying Mr. Vasiloff's §2255 petition: the appeal waiver was not properly invalidated; an evidentiary hearing was never held in regards to the material, non-conclusory facts in dispute; a non-precedential and no longer valid holding was used to deny a constitutional claim; and the Magistrate's sua sponte creation of a "new" justification for a sentencing enhancement once the Judge's original reason was refuted.

(P.5-9)

The only defense of the appeal waiver was based on claims by the appointed defense counsel that were facially false. Mr. Tuten, who agreed at the plea hearing both orally and in writing, that NOTHING besides the written agreement presented to the Judge existed, now (years later) "remembers" that there was a completely different "unwritten" non-prosecution agreement that he negotiated as a benefit for Mr. Vasiloff. Not only does this contradict his (and the AUSA's) representations-- as officers of the court-- to the contrary, but when Mr. Vasiloff requested confirmation of this "immunity / non-prosecution" [District Court Dockets #40 & 41 in the §2255 case] that request was explicitly denied. Further, neither the AUSA nor Mr. Tuten voluntary produced any evidence of this "deal" either. Logically, it should be concluded that said "agreement" exists no where but in Mr. Tuten's mind and cannot form the basis Mr. Vasiloff's appeal waiver. Further, it is both illogical and unreasonable that Mr. Vasiloff would agree to waive all his appeals for a case that carried neither

2.

the death penalty nor a "Life" sentence in exchange for a multi-century sentence that Judge Hopkins herself said was "basically just another way of saying life." [Criminal Docket #28 at 16].

(P. 10-15)

There were also MANY material, non-conclusory facts that were in dispute in the §2255 and were backed up with sworn claims from Mr. Vasiloff and others, but no evidentiary hearing was held. These disputes included that Mr. Vasiloff is NOT related to the "victim" in the case-- contrary to the Magistrate's and Judge's claims otherwise; that there was NO reliable evidence that the pictures were produced on five distinct dates; that the defendant in "Heath" really was much worse, quantitatively and qualitatively, than Mr. Vasiloff; and many other issues too.

(P. 16-17)

The unpublished opinion, United States v. Shiver [305 Fed. Appx 640 (11th Cir. 2008)] used by the Magistrate to deny Mr. Vasiloff relief on the "possession" count, based on all the images being long-before deleted, was based on the Ninth Circuit's holding in United States v. Romm [455 F.3d 990 (9th Cir. 2006)]. After the Ninth Circuit explicitly reversed that holding in United States v. Flyer [633 F.3d 911, 920 (9th Cir. 2011)], Shiver should have been similarly invalidated. Therefore, it was improper for the District Court to deny this claim.

3.

(P. 18 -20)

Finally the Magistrate was not allowed to create sua sponte (after all briefing was complete and without allowing supplemental briefing on the issue) a completely different justification [familial relationship] that was not only factually invalid, but was improper to justify the vulnerable victim [§3A1.1(b)(1)] enhancement that was proven false under the original justification [provision of alcohol].

4

ARGUMENT


APPEAL WAIVER IS INVALID


Pro se petitioner-appellant Mr Gary Steven Vasiloff,
being a layman and unsophisticated in the law, is unclear as
to whether the appeal waiver (mentioned in the plea agreement)
is still applicable in this case. To the extent that it IS
still applicable, he argues below that it must be set aside.
HOWEVER, if the appeal waiver is NO LONGER in force, then it
seems to be a logical error for this Court to have DISMISSED
his "Direct Appeal" [No. 08-10412-EE] on 07 August 2008 on the
basis of that (now invalidated) waiver. Therefore, he prays
that this Court restore his rights, under 28 U.S.C. §1291, to
file a "direct appeal." (Note: Since Mr. Vasiloff had already
filed a similar request in the District Court-- denied without
comment-- this request could be considered as an "appeal" of
that earlier request-- if there are timeliness or
jurisdictional issues over the request.)


Subsequent to filing his motion for a writ of Habeas
Corpus [pursuant to 28 U.S.C. §2255], the Government filed a
Motion to Dismiss [Civil Docket #6]-- which was nearly a
photocopy of the one that they filed years earlier in this
Court, in reference to his Direct Appeal. (Note: If that
filing is review, the duplicate headers from when it was first
filed in this Court are also visible along with those from the
Habeas case.) The Dismissal Motion was recommended for denial
by Magistrate Paul W. Greene on 4 September 2012 [reproduced

ʎ

at 2012 U.S. Dist. LEXIS 156206; 2012 WL 5379334 at *2 (N.D.AL 4 Sept 2012)]. Judge Virginia Emerson Hopkins concurred with the recommendation [2012 U.S. Dist. LEXIS 155160 (N.D.AL 30 October 2012)] and gave the Government "twenty-one (21) days in which to file any response addressing Vasiloff's §2255 claims on the merits." Fellow District Court Judge Inez Prytz Johnson explicitly agreed with the reasoning of Judges Greene and Hopkins when ruling in Threatt v. United States [2013 U.S. Dist. LEXIS 43279 {No. 1:10-cv-08009-IPJ-MHH} (N.D.AL 27 March 2013)]. Therefore, Mr. Vasiloff is only asking for the same benefit on his "direct appeal"-- that it be decided "on the merits" rather than being summarily dismissed.

Subsequent to Judge Hopkins' ruling, the Government briefed their "merits" response and included an affidavit from former appointed defense counsel Mr. Tuten [Docket #25-1 on the civil docket]. In his affidavit Mr. Tuten swore that he got Mr. Vasiloff a "prompt plea" benefit because "related [State of Alabama] charges would be filed against [Mr. Vasiloff] if [there was] a more thorough investigation." After reading that Affidavit Mr. Vasiloff submitted a formal written request to the District for documentation that he would NOT have to fear future charges from the State or any other Federal jurisdiction-- in essence, proof of Mr. Tuten's claim. [These were his "Notice of Fraud Upon the Court" [Docket #40] and "Request For Immunity Letter" [Docket #41]]. Those requests were denied-- without comment-- by Judge Hopkins [2013 U.S. Dist. LEXIS 170620 (N.D.AL 4 December 2013)]. Mr. Vasiloff's concern is that the plea agreement, which included

a waiver of all appeal rights, explicitly EXCLUDED immunity
from prosecution by ANY State or Federal jurisdiction EXCEPT
the Northern District of Alabama. Therefore, the only
"benefit" that the Government alleged that Mr. Vasiloff
received in exchange for ALL his appeal rights was not even a
real benefit. In both the written agreement and the associated
plea colloquy Mr. Vasiloff was told that he was NOT safe from
prosecution by the State or any other Federal jurisdiction. He
then confirmed this fact. ("No other promises or
representations have been made by the prosecutor, or anyone
else. [Criminal Docket #15, Pg. 8 and later reproduced by
Magistrate Haikala in her R & R-- 2013 U.S. Dist. LEXIS 171054
(N.D.AL 14 August 2013)]). Had attorney Mr. Tuten actually
secured the non-prosecution agreement as he claimed years
later, he would NOT have signed the agreement and made the
oral representation to Judge Hopkins at the plea hearing that
the agreement explicitly EXCLUDED any immunity from State or
Federal prosecution nor would he have allowed Mr. Vasiloff to
agree to that either. To quote Magistrate Haikala's R & R,
which itself quoted this Court's holding in United States v.
Medlock [12 F.3d 185, 187 (11th Cir. 1994)], "Statements made
during the plea colloquy are presumed to be true." Therefore,
since Mr. Vasiloff received NO actual "benefit" (due to the
alleged "immunity" being unenforceable) his associated appeal
waiver should be similarly invalidated.

    Even if all of the above evidence is ignored, there
still remains no logical nor legal justification for Mr.
Vasiloff to have signed the agreement and no effective defense

attorney would have allowed him to agree to it. In the alternative, if Mr. Vasiloff had a bench trial (or one of stipulated facts)-- since it was PRIMARILY the enhancements and "relevant conduct" not his guilt that were in dispute-- then he could have disputed the weak and unreasonable "facts" that were used to support the sentencing enhancements that were the subject of his §2255 motion and increased his sentence from one of the statutory minimum (15 years) to the 325 years ("virtual life") that he actually received. This increase was DESPITE the full three (3) offense level that he received for "accepting responsibility" and "promptly pleading." Under the Supreme Court's holding in Lafler v. Cooper [182 S.Ct. 1376; 182 L.Ed.2d 398 (2012)] this made his attorney's bad advice to sign the bad deal a violation of constitutional magnitude which invalidates the agreement (and associated appeal waiver).

7

The "maximum" possible statutory sentence that Mr. Vasiloff could have received was LESS than "Life." Additionally, since the death penalty-- the only possible sentence GREATER than Life (according to the Supreme Court)-- was NOT available (in the State or Federal justice systems) for any crime for which Mr. Vasiloff could even POSSIBLY have been charged with, Mr. Vasiloff received the maximum possible sentence. Judge Hopkins noted at sentencing, "325 years, which is basically just another way of saying life." [Criminal Docket #28, p. 16 and reproduced in Magistrate Haikala's R & R]. This Court held, in United States v. Gallego [247 F.3d 1191, 1200 & Fn. 19 (11th Cir. 2002)], that, "combining

sentences to equal life imprisonment are effectively the same as one sentence of life imprisonment." Finally, as the Supreme Court noted in Lockyear v. Andrade [538 U.S. 63, 74 & Fn. 1; 155 L.Ed.2d 144 (2003)], it is "unrealistic to think that a sentence of 50 years to life for [a 37-year old defendant] is not equivalent to life in prison without parole." Since Mr. Vasiloff was well over FIFTY years old at sentencing and received 325 years (which requires service of a MINIMUM of OVER 284 years considering the current "good time" scheme), he surely received at least a "virtual" life sentence-- meaning that his plea agreement (and associated appeal waiver) was no "bargain." Had he NOT entered into the plea agreement his situation would have had a much better result because he would have retained his ability to appeal his case and contest the onerous [eleven disputed offense levels] sentencing enhancements. This fact was clearly foreseeable prior to the agreement being executed and so when Mr. Tuten advised Mr. Vasiloff to sign it, he provided constitutionally ineffective assistance to Mr. Vasiloff.

<u>IT WAS AN ERROR TO NOT GRANT AN EVIDENTIARY HEARING</u>

<u>BECAUSE THERE WERE DISPUTED MATERIAL FACTS</u>

In <u>San Martin v. McNeil</u> [633 F.3d 1257, 1271 (11th Cir. 2011)] this Court noted that, "An evidentiary hearing may be necessary where the material facts are in dispute." However, in <u>Rizo v. United States</u> [446 Fed. Appx. 264, 265 (11th Cir. 2011)], this Court quoted <u>Montgomery v. United States</u> [469 F.2d 148, 150 (5th Cir. 1972) {precedent in this Circuit too}] saying that, "contested fact issues in §2255 cases must be decided on the basis on an evidentiary hearing, not affidavits." <u>Rizo</u> also cited this Court's holding in <u>Aron v. United States</u> [291 F.3d 708, 715 & Fn. 6 (11th Cir. 2002)] that, "to be entitled to an evidentiary hearing, [Mr. Vasiloff] need only ALLEGE-- not prove-- reasonably specific, non-conclusory facts that, if true, would entitle him to relief." [emphasis in original]. Interestingly, this Court recently quoted the same line from <u>Aron</u> in <u>Aragon-Llanos v. United States</u> [2014 U.S. Dist. LEXIS 3169 {No. 12-16207} (11th Cir. 21 February 2014)] to justify granting a COA (and remand) . Mr. Vasiloff is requesting similar relief and as he will show just below, he has made the required showing in his earlier filings in the District Court.

There are approximately ten (10) specific areas of factual dispute and prevailing on even a single one of them would entitle Mr. Vasiloff to relief. Since Mr. Vasiloff VERIFIED under oath all of his relevant filings in the District Court and he has supplemented his submissions with

the associated source documents, this is sufficient to meet
the "specific, non-conclusory facts" standard. Please note
also that he is summarizing below the factual disputes that
were noted in his objections to the Magistrate's R & R and
that is why he uses that order to list them.

Mr. Vasiloff has no "step-daughter" despite both
Judges Haikala and Hopkins claiming that he does and enhancing
his sentence based on this misstatement of reality. He
supported his claim with relevant court documents and findings
from the State of Alabama and the Government has NEVER
produced any documents that claim otherwise. Had Judge Hopkins
held an evidentiary hearing she would have understood that Mr.
Vasiloff was telling the truth and would not have enhanced his
sentence for something that was just not true.

As to the effectiveness of appointed defense attorney
Robert Tuten and his claims concerning the plea agreement, Mr.
Vasiloff notes that both he and Mr. Tuten submitted sworn
statements. Therefore, this presents the exact type of dispute
where this Court requires an evidentiary hearing. Further, in
an Order issued in another §2255 case about nineteen months
ago, O'Dell v. United States [2012 U.S. Dist. LEXIS 173604
{No. 5:11-cv-8003-RDP-RRA} (N.D.AL 7 December 2012)], Judge
David Proctor ordered the same attorney Robert Tuten to appear
for an evidentiary hearing concerning a plea agreement that he
has negotiated. Therefore, having attorney Tuten appear at an
evidentiary hearing on this issue is not at all unprecedented
and should be done in Mr. Vasiloff's case too.

*11.*

There are also disputes about the various sentencing enhancements. When it comes to the five (5) different claimed "production dates"-- which accounted for a total of NINE (9) offense levels (four (4) due to the five (5) distinct "groupings" [under U.S.S.G. §3D1.4] for the claim that there were five (5) different "production dates" and five (5) more points [under U.S.S.G. §4B1.5(b)(1)] based on a "pattern of conduct")-- there is simply NO evidence EVER put forth, except for the unsupportable claim in the PSIR. When requested-- through FOIA, the Privacy Act, and even Court Order-- no party to this case, including the Probation Office, could substantiate the multiple production dates. On the other hand, a basic inspection of the photos in question will reveal that certain of the pictures that were placed into DIFFERENT groups had to have been taken within minutes of each other based on lighting, background effects, body positioning, etc. That is sufficient proof to call into question the entire "grouping" in this case (especially since the photos were claimed by the Government to have taken place over the course of just a few days, rather than the FIVE (5) year span-- which did not receive an grouping enhancement-- in United States v. Fee [491 Fed. Appx. 151, 153 (11th Cir. 2012)], a case also arising out of Northern District of Alabama. The impact of the improper nine (9) level increase was to ensure that Mr. Vasiloff received a sentence that exceeded his life span.

As mentioned in detail below in the fourth section of this filing, the Vulnerable Victim enhancement [U.S.S.G.

§3A1.1(b)(1)] was not only disputed, but when Magistrate Haikala sua sponte changed the justification for it to one that was already accounted for in the Guidelines, Mr. Vasiloff should have been given an Evidentiary Hearing so he could prove his point. This was not done and so his Guideline went from one with a MAXIMUM of Life to one with Life being the ONLY possibility.

To the extent that the Government continues to DISPUTE that Mr. Vasiloff reasonably understood that ALL of the alleged pornography found on his computer was long-ago deleted and unrecoverable (by him), this too should have been the subject of an evidentiary hearing. (Note: the significance of the files being deleted is discussed in detail in the next section of this COA request.)

In his intial §2255 petition Mr. Vasiloff cited the case of Lavon Heath, United States v. Heath [840 F.Supp. 129 (S.D.FL 1993)], for the proposition that the "proper" guideline range for a person with a computed net offense level of 44 should be "a range of 441 months to life." [Id. at 131]. This statement was made by Judge Norman Roettger who described himself as a "hanging judge" [Id. at 132] to emphasize the significance of his position. However, in her R & R in Mr. Vasiloff's case, Magistrate Haikala-- without a presenting a single supporting fact-- declined to accept the argument and said, "Mr. Vasiloff committed his crime as an older offender, and the crime was more egregious in nature than Mr. Heath's crack cocaine offense at the age of 22." Perhaps, in this time

when reasoned jurists, like New Mexico's Judge James Browning justify significant downward departures for drug dealers by using the excuse that even President Obama admitted to using crack cocaine [See, United States v. Reyes, 2014 U.S. Dist. LEXIS 43184 {No. CR 12-1695 JB} (D.NM 10 March 2014)], the legal and moral landscape in this country is changing. HOWEVER, as this Court noted, in United States v. Heath [297 Fed. Appx. 849, 851 (11th Cir. 2008)], "Heath ultimately was held responsible for 240 kilograms of crack cocaine." Considering that this Court holds that 1/10 of a GRAM of crack cocaine is a single dose [e.g. United States v. Vann, 336 Fed. Appx. 944, 947 (11th Cir. 2009)], then Heath was selling 2,400,000 (or more, if it was heavily "cut") doses of a potentially fatal drug. Considering that the population of Birmingham, AL is 1/10 of that size, this quantity is drugs is fantastically huge, perhaps "Brobdingnagian" to quote appellate Judge Bruce Selya in United States v. Saccoccia [58 F.3d 754, 789 (1st Cir. 1995)].

As to the length of his record, Heath was a frequent arrestee, with multiple serious convictions in his short, twenty-two years of existence, while Mr. Vasiloff spent well over TWICE that long living an undisputed CRIME-FREE life. Magistrate Haikala would have seen-- had she held the required evidentiary hearing-- that Mr. Vasiloff's criminal act was an aberration while Heath's was an integral part of his life. Had an evidentiary hearing been held, the district court judges would have understood that they misconstrued the differences between the two defendants. Then, Mr. Vasiloff would have

*14.*

received a merciful downward departure, not unlike the mere 292 months given to Heath, which was NINETY-THREE PERCENT (93%) LESS than what Mr. Vasiloff received.

In a similar vein, Mr. Vasiloff tried to present comparative cases to show that his sentence represented exactly what the law counseled the judge to avoid ("unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct" [18 U.S.C. §3553(a)(6)]). Because he was wrongly denied an evidentiary hearing to present this evidence, he was improperly denied appropriate consideration of the argument and the associated relief-- a "reasonable" sentence.

Also related to this was the fact that no INDIVIDUALIZED analysis of the other §3553(a) factors were made either. Interestingly, this Court granted a COA for a very similarly situated (in age, lack of criminal record, and charged offenses) defendant-- from the same district-- specifically to consider this exact issue. [See, Baird v. United States, 445 Fed. Appx. 252 (11th Cir. 2011)]. Mr. Vasiloff is just asking for similar relief, especially since he has shown in this (and previous) filings that his §3553(a) claim is much more meritorious than Baird's.

## POSSESSION OF DELETED IMAGES

Former Magistrate Judge Haikala relied on this Court's unpublished opinion in United States v. Shiver [305 Fed. Appx. 640, 643 (11th Cir. 2008)], which was based on the Ninth Circuit's (now discredited) holding in United States v. Romm [455 F.3d 990, 1000 (9th Cir. 2006)] to justify Mr. Vasiloff's conviction (Count 22) of 18 U.S.C. §2252A(a)(5)(B) despite the images being long-ago deleted (and seemingly, to the non-tech savvy Mr. Vasiloff, long gone).

Mr. Vasiloff (in his §2255 petition) presented a sworn declaration from Computer Science Professor Paul Shook, Jr. (which the Government accepted) that established the reasonableness of Mr. Vasiloff's belief that he did not actually "possess" the images on his computer at the time of his arrest (which was also the time charged in his indictment) because they had been deleted and were unrecoverable-- by him, an unsophisticated grocery stocker. Despite this claim not being disputed by either party it was not acknowledged by either the Judge or the Magistrate in their rulings. This means that there was no valid FACTUAL basis for this charge.

16.

More importantly, the Ninth Circuit, in <u>United States v. Flyer</u> [633 F.3d 911, 920 (9th Cir. 2011)], explicitly considered how this Court interpreted the earlier <u>Romm</u> decision when ruling in <u>Shiver</u> and found it to be incorrect. In fact, subsequent to <u>Flyer,</u> Mr. Vasiloff's case is the *ONLY* one that has since referenced <u>Shiver</u> as continuing to be "good law"-- and in that ruling there was no acknowledgement of the <u>Flyer</u> ruling. Therefore, since the ONLY legal basis for this charge is similarly invalid, this Count should have been dismissed.

At a MINIMUM, since the facts were AT LEAST "disputed," an evidentiary hearing is required on this issue. As well, under the standards for a COA, since reasonable jurists (such as Andrew Kleinfeld, A. Wallace Tashima, and Sidney Thomas, who decided <u>Flyer</u>) disagree with <u>Shiver</u>-- and by extension its use to retain Mr. Vasiloff's conviction-- this issue needs to be reviewed by this Court.

## "NEW" JUSTIFICATION FOR ENHANCEMENT IS WRONG

In her R & R (adopted in full, despite Mr. Vasiloff's objections), Magistrate Haikala changed the justification for the two-point "vulnerable victim" [§3A1.1(b)(1)] sentencing guideline enhancement from "providing alcohol to a minor" to "their familial relationship." This was incorrect for three separate and distinct reasons. The first, strictly a matter of law, the second, strictly factual, and the last, a mixed issue of law and fact.

In United States v. Greenlaw [554 U.S. 237; 171 L.Ed.2d 399, 420 & Fn. 9 (majority) & Fn. 1 (dissent)], the majority said that courts should NOT engage in sua sponte "error correction" on behalf of the Government (without their express request). Justice Alito disagreed in his dissent, but our system of law dictates that this Court (and the District Court) follow the current majority opinion. The justification, in the PSI and by Judge Hopkins, for the enhancement-- at the time of sentencing-- was allegedly the provision of alcohol. The "factual support" was the depiction of a beer bottle in some of the charged photographs. The United States has NEVER requested that Mr. Vasiloff's "vulnerable victim" enhancement be justified by ANYTHING except that photographed beer bottle. It was only at the R & R stage-- after Mr. Vasiloff presented a relevant sworn Declaration from motion picture expert Robert Tashbook-- that suddenly a "different" justification arose and this one was unprovoked by the Government. (See, Fn. 10 of the R & R which says in part, "The undersigned does not reach of

18.

the issue [of it being actual alcohol] because the undersigned finds that vulnerable victim enhancement rests squarely on Mr. Vasiloff's familial relationship to the victim.")

When the Magistrate changed positions in her R & R, she completely ignored the factual reality-- the "victim" [a sophisticated, sexually active teenager of normal intelligence] was NOT related to Mr. Vasiloff, as he proved extensively in his objections to the R & R. No one disputes that the "victim" was not a blood relation to Mr. Vasiloff. He further provided extensive Social Services and Family Court documents showing that he had no legal relationship (such as adoption) to the "victim" either. Therefore, since there was NO "familial relationship to the victim" it was factually incorrect to enhance (especially more than five (5) years after his initial sentencing) Mr. Vasiloff for such a "relationship."

Finally, there is the mixed question of law and fact. One of the enhancements under U.S. Sentencing Guideline §2G2.1 [the base guideline for violations of 18 U.S.C. §2251(a), the section that Mr. Vasiloff pled guilty to] is (b)(5). That two-point enhancement increased Mr. Vasiloff's sentence because "the minor was otherwise in the custody, care, or supervisory control of the defendant." Mr. Vasiloff has never disputed THIS enhancement. Regardless of the lack of "familial relationship," he cannot deny that (at times) the minor was in his custody, care, or control. However, since he received THIS enhancement, it would be "double counting" to ALSO enhance

*19.*

him-- using the SAME justification-- under §3A1.1(b)(1). The
application notes for §3A1.1 explicitly says, "Do not apply
subsection (b) if the factor that makes the person a
vulnerable victim is incorporated in the offense guideline."
When the Government (and the Probation Office in the PSI) was
claiming that the §3A1.1 enhancement was based on the beer
bottle, this Note would NOT have applied, but then the later
sworn Declaration of Robert Tashbook WOULD have gotten it
removed. However, once the Magistrate sua sponte changed her
justification, the application note now applied and she should
have removed the enhancement.

        Because Mr. Vasiloff ended up with an Offense Level of
44 / Criminal History I, it was adjusted to the Level 43
maximum, as directed by Application Note 2. That yielded a
Guideline of "Life." Now, with those two points removed, Mr.
Vasiloff would have a net Offense Level of 42. This translates
to a Guideline of 360 months [30 years] to Life. Since Judge
Hopkins made it clear at sentencing that she was giving Mr.
Vasiloff the minimum guideline sentence, this lower Guideline
would make a SUBSTANTIAL difference because 360 months is
NINETY-ONE PERCENT (91%) LESS than the 3900 months he actually
received. These three related errors are significant enough to
justify granting Mr. Vasiloff's requested COA.

Mr. Vasiloff prays for a COA and any available relief
        Respectfully Submitted,

        _Gary Steven Vasiloff_

14 July 2014        Gary Steven Vasiloff, pro se

        20.

CERTIFICATE OF COMPLIANCE

Pursuant to Cir. R. 22-2, FRAP 32(a)(7), and other relevant rules, this filing is in compliance as the non-excludable pages do not exceed thirty (30) and it complies with the typeface requirements too.

CERTIFICATE OF MAILING

I, Gary Steven Vasiloff, affirm that on 14 July 2014, I delivered this Request for a COA to prison legal mail staff, in a properly addressed sealed envelope with fully paid first-class postage affixed, for delivery to this Court.

VERIFICATION

I, Gary Steven Vasiloff, do hereby affirm under penalty of perjury, as per 28 U.S.C. §1746, that I have read and understood everything in this filing and that it is true and correct.

14 July 2014

Gary Steven Vasiloff, pro se