No. 14-10483-AA

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

### GARY VASILOFF,
Petitioner-Appellant,

v.

### UNITED STATES OF AMERICA,
*Respondent-Appellee.*

---

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION
Nos. 4:07-cr-00337-VEH-SGC; 4:10-cv-08001-VEH-SGC

---

### APPENDIX

**JOYCE WHITE VANCE**
*United States Attorney*
*Northern District of Alabama*

**MICHAEL B. BILLINGSLEY**
*Assistant United States Attorney*

**ATTORNEYS FOR APPELLEE**
**UNITED STATES OF AMERICA**

United States Attorney's Office
1801 Fourth Avenue North
Birmingham, AL  35203
(205) 244-2001

## Index of Appendix

Docket Sheets ........................................................................................................ A

### 4:07-cr-00337-VEH-SGC

Plea Agreement ...................................................................................... 15

Presentence Report ........................................................... Sealed Envelope

Notice of Appeal...................................................................................... 22

Plea Transcript (10/18/07)...................................................................... 27

Sentencing Transcript (01/16/08)............................................................ 28

Order of USCA dated 08/07/08............................................................... 34

### 4:10-cv-08001-VEH-SGC

Motion to Vacate, Set Aside or Correct Sentence..................................... 1

Motion to Dismiss ................................................................................... 6

Magistrate Judge's Report and Recommendation................................... 19

Order Adopting Report and Recommendation....................................... 22

Response to Motion to Vacate, Set Aside or Correct Sentence .............. 25

Magistrate Judge's Report and Recommendation................................... 37

Memorandum Opinion and Order .......................................................... 46

Final Judgment ...................................................................................... 47

Notice of Appeal.................................................................................... 49

Order Regarding Certificate of Appealability ......................................................... 53

Order of USCA Granting Appellant's Motion for Certificate of Appealability ..... 59

Order of USCA Granting in Part and Denying in Part Petitioner's Motion for Clarification and Denying as Moot Petitioner's Motion to Stay Briefing Schedule ................................................................................................................. 61

Certificate of Service



CLOSED

# U.S. District Court
## Northern District of Alabama (Middle)
### CRIMINAL DOCKET FOR CASE #: 4:07-cr-00337-VEH-SGC-1

Case title: USA v. Vasiloff                                   Date Filed: 08/28/2007
Magistrate judge case number: 4:07-mj-00550-HGD               Date Terminated: 01/17/2008

---

Assigned to: Judge Virginia Emerson
Hopkins
Referred to: Magistrate Judge Staci G
Cornelius

Appeals court case number: '08-10412
E'

### Defendant (1)

**Gary Steven Vasiloff**                    represented by   **Robert B Tuten**
*TERMINATED: 01/17/2008*                                     TUTEN LAW OFFICES
                                                             223 East Side Square
                                                             Huntsville, AL 35801
                                                             256-536-6009
                                                             Fax: 256-536-2501
                                                             Email: federalct@tutenlaw.com
                                                             *TERMINATED: 09/26/2008*
                                                             *LEAD ATTORNEY*
                                                             *ATTORNEY TO BE NOTICED*
                                                             *Designation: CJA Appointment*

### Pending Counts                                           ### Disposition

18:2251(a)SELLING OR BUYING OF            CBP 180 mos as to cts 1-21,
CHILDREN                                  sep/consec; SRT-LIFE; No fine; AF
(1)                                       $2200.00

18:2251(a) SELLING OR BUYING OF           CBP 180 mos as to cts 1-21,
CHILDREN                                  sep/consec; SRT-LIFE; No fine; AF
(2-3)                                     $2200.00

18:2251(a)SELLING OR BUYING OF            CBP 180 mos as to cts 1-21,
CHILDREN                                  sep/consec; SRT-LIFE; No fine; AF
(4-21)                                    $2200.00

18:2252A(a)(5)(B)ACTIVITIES RE
MATERIAL                                  CBP 120 mos as to ct 22, to be served
CONSTITUTING/CONTAINING                   consec to cts 1-21
CHILD PORNO
(22)

**Highest Offense Level (Opening)**

Felony

| **Terminated Counts** | **Disposition** |
|---|---|
| 18:2253 CRIMINAL FORFEITURE IN VIOLATION OF EXPLOITATION OF MINORS (23) | Ct 23 - Disposed (Criminal Forfeiture) |

**Highest Offense Level (Terminated)**

Felony

| **Complaints** | **Disposition** |
|---|---|
| 18:2252A.F | |

---

**Plaintiff**

**USA**                                    represented by **Alice H Martin, US Attorney**
                                           US ATTORNEY'S OFFICE
                                           1801 4th Avenue North
                                           Birmingham, AL 35203-2101
                                           244-2001
                                           Email: usaaln.ecfusa@usdoj.gov
                                           *LEAD ATTORNEY*
                                           *ATTORNEY TO BE NOTICED*

                                           **US Probation**
                                           UNITED STATES PROBATION
                                           OFFICE
                                           Robert Vance Bldg.
                                           1800 5th Avenue North
                                           Birmingham, AL 35203
                                           716-2900
                                           Email:
                                           alnpdb_cmecf@alnp.uscourts.gov
                                           *LEAD ATTORNEY*
                                           *ATTORNEY TO BE NOTICED*

                                           **USM**
                                           UNITED STATES MARSHAL
                                           Hugo Black Courthouse, Room 240
                                           1729 5th Avenue North
                                           Birmingham, AL 35203
                                           205-731-1712
                                           Email: usms-aln-courts@usdoj.gov
                                           *LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*

**Mary Stuart Burrell**
US ATTORNEY'S OFFICE
400 Meridian Street, Suite 304
Huntsville, AL 35801
256-534-8285
Fax: 256-539-3270
Email: mary.stuart.burrell@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James D Ingram**
US ATTORNEY'S OFFICE
1801 4th Avenue North
Birmingham, AL 35203-2101
244-2001
Email: James.Ingram@usdoj.gov
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 08/06/2007 | 1 | SEALED COMPLAINT as to Gary Steven Vasiloff (1). (SHB, ) [4:07-mj-00550-HGD] (Entered: 08/08/2007) |
| 08/08/2007 | | Minute Entry for proceedings held before Judge Harwell G Davis III:Initial Appearance as to Gary Steven Vasiloff held on 8/8/2007; dft deemed eligible for court appointed counsel; Added attorney Robert B Tuten for Gary Steven Vasiloff as cja attorney; govt. requested detention; dft requested continuance to 8/14/07; Detention Hearing and Preliminary Examination set for 8/14/2007 02:00 PM before Magistrate-Judge Harwell G Davis III in Huntsville, AL; dft remanded to custody of USM. (Tape #FTR.) (SHB, ) [4:07-mj-00550-HGD] (Entered: 08/08/2007) |
| 08/08/2007 | | Case unsealed as to Gary Steven Vasiloff (SHB, ) [4:07-mj-00550-HGD] (Entered: 08/08/2007) |
| 08/08/2007 | 2 | CJA 20 as to Gary Steven Vasiloff: Appointment of Attorney Robert B Tuten for Gary Steven Vasiloff: Access appointment forms at CJA Forms. Signed by Judge Harwell G Davis III on 8/8/07. (SHB, ) [4:07-mj-00550-HGD] (Entered: 08/08/2007) |
| 08/09/2007 | 4 | REQUEST for Disclosure by Gary Steven Vasiloff *Discovery* (Tuten, Robert) [4:07-mj-00550-HGD] (Entered: 08/09/2007) |
| 08/09/2007 | 5 | MOTION for Disclosure *404(b)* by Gary Steven Vasiloff. (Tuten, Robert) [4:07-mj-00550-HGD] (Entered: 08/09/2007) |
| 08/09/2007 | 6 | NOTICE OF ATTORNEY APPEARANCE: Robert B Tuten appearing for Gary Steven Vasiloff (Tuten, Robert) [4:07-mj-00550-HGD] (Entered: 08/09/2007) |

| 08/14/2007 | | Minute Entry for proceedings held before Judge Harwell G Davis III:Detention Hearing and Preliminary Examination as to Gary Steven Vasiloff held on 8/14/2007; testimony of FBI Agent Ed Sims for govt. finding no condition or set of conditions to warrant dft's release and ordered that he be detained pending disposition of case; hrg adj.; dft remanded to custody of USM; written order to be entered (Court Reporter Chanetta Sinkfield.) (SHB, ) [4:07-mj-00550-HGD] (Entered: 08/15/2007) |
| 08/15/2007 | 7 | ORDER finding probable cause as to Gary Steven Vasiloff. Signed by Judge Harwell G Davis III on 8/15/07. (SHB, ) [4:07-mj-00550-HGD] (Entered: 08/15/2007) |
| 08/15/2007 | 8 | ORDER OF DETENTION as to Gary Steven Vasiloff. Signed by Judge Harwell G Davis III on 8/15/07. (SHB, ) [4:07-mj-00550-HGD] (Entered: 08/15/2007) |
| 08/28/2007 | 9 | INDICTMENT as to Gary Steven Vasiloff (1) count(s) 1, 2-3, 4-21, 22, 23. (HBB, ) Additional attachment(s) added on 9/7/2007 (HBB, ). (Entered: 08/30/2007) |
| 08/30/2007 | 10 | NOTICE OF HEARING as to Gary Steven Vasiloff Arraignment set for Thursday 9/13/2007 09:30 AM before Magistrate Judge Paul W Greene. (HBB, ) (Entered: 08/30/2007) |
| 09/05/2007 | 11 | SCHEDULING ORDER AND NOTICE w/Instructions and Deadlines as set out as to Gary Steven Vasiloff. Signed by Judge Paul W Greene on 09/05/07. (SDA ) (Entered: 09/05/2007) |
| 09/13/2007 | | Minute Entry for proceedings held before Judge Paul W Greene:Arr as to Gary Steven Vasiloff (1) Count 1,2-3,4-21,22,23 held on 9/13/2007; dft present w/cja atty Robert Tuten; dft served, waived reading & NG plea entered; dft remanded; hrg adj;(Court Reporter Virginia Flowers)(CJV) (Entered: 09/13/2007) |
| 09/14/2007 | 12 | RESPONSE to by USA as to Gary Steven Vasiloff *Response to Defendant's Request for Disclosure* (Burrell, Mary) (Entered: 09/14/2007) |
| 10/12/2007 | 13 | ORDER as to Gary Steven Vasiloff: Change of Plea Hearing set for Thursday, 10/18/2007 at 9:30 AM, in Courtroom 6A, before Judge Virginia Emerson Hopkins. Signed by Judge Virginia Emerson Hopkins on 10/12/07. (YMB) (Entered: 10/12/2007) |
| 10/18/2007 | | Minute Entry for proceedings held before Judge Virginia Emerson Hopkins :Change of Plea Hearing as to Gary Steven Vasiloff held on 10/18/2007. Guilty Plea entered by Gary Steven Vasiloff (1) as to Counts 1,2-3,4-21, and 22. Dft remanded to custody of USM pending sentencing hearing. (Court Reporter Chanetta Sinkfield.) (YMB) (Entered: 10/18/2007) |
| 10/18/2007 | 14 | GUILTY PLEA ADVICE OF RIGHTS CERTIFICATION by Gary Steven Vasiloff. (YMB) (Entered: 10/18/2007) |
| 10/18/2007 | 15 | PLEA AGREEMENT as to Gary Steven Vasiloff. (YMB) (Entered: 10/18/2007) |

| 10/18/2007 | 16 | ORDER as to Gary Steven Vasiloff: Sentencing set for Wednesday, 1/16/2008 at 9:30 AM, in Courtroom 6A, before Judge Virginia Emerson Hopkins. Signed by Judge Virginia Emerson Hopkins on 10/18/07. (YMB) (Entered: 10/18/2007) |
|---|---|---|
| 01/15/2008 | 17 | MOTION for Forfeiture of Property *Preliminary Order of Forfeiture* by USA as to Gary Steven Vasiloff. (Ingram, James) (Entered: 01/15/2008) |
| 01/16/2008 | | ORDER granting 17 Motion for Preliminary Order of Forfeiture as to Gary Steven Vasiloff (1). Signed by Judge Virginia Emerson Hopkins on 1/16/2008. (DWC, ) (Entered: 01/16/2008) |
| 01/16/2008 | 18 | PRELIMINARY ORDER OF FORFEITURE as set out as to Gary Steven Vasiloff.. Signed by Judge Virginia Emerson Hopkins on 1/16/2008. (HBB, ) Modified on 1/16/2008 to cm as directed (HBB, ). (Entered: 01/16/2008) |
| 01/16/2008 | | Minute Entry for proceedings held before Judge Virginia Emerson Hopkins :Sentencing held on 1/16/2008 for Gary Steven Vasiloff (1): CBP 180 mos as to cts 1-21, sep/consec; CBP 120 mos as to ct 22, to be served consec to cts 1-21 (for a total sentence of 3900 mos or 325 years); SRT-LIFE w/spec conds: 1)Mental Health, 2)Sex Offender Conds; No fine; AF $2200.00 due immediately; Ct 23 - Disposed (Criminal Forfeiture). Dft remanded to custody of USM. (Court Reporter Chanetta Sinkfield.) (YMB) (Entered: 01/16/2008) |
| 01/17/2008 | 19 | PRESENTENCE INVESTIGATION REPORT (Sealed) as to Gary Steven Vasiloff filed w/USP (HBB, ) (Entered: 01/18/2008) |
| 01/17/2008 | 20 | Sentencing Recommendations (Sealed) as to Gary Steven Vasiloff filed w/USP (HBB, ) (Entered: 01/18/2008) |
| 01/17/2008 | 21 | JUDGMENT as to Gary Steven Vasiloff (1), CBP 180 mos as to cts 1-21, sep/consec; SRT-LIFE; No fine; AF $2200.00; CBP 120 mos as to ct 22, to be served consec to cts 1-21; Ct 23 - Disposed (Criminal Forfeiture). Signed by Judge Virginia Emerson Hopkins on 1/17/2008. (HBB, ) (Entered: 01/18/2008) |
| 01/25/2008 | 22 | NOTICE OF APPEAL by Gary Steven Vasiloff re 21 Judgment, No Filing fee . (Tuten, Robert) Modified on 1/28/2008 to edit filing fee entry (HBB, ). (Entered: 01/25/2008) |
| 01/28/2008 | 23 | Transmittal Letter as to Gary Steven Vasiloff re 22 Notice of Appeal - Final Judgment (HBB, ) (Entered: 01/28/2008) |
| 01/28/2008 | | Transmission of Notice of Appeal and Docket Sheet as to Gary Steven Vasiloff to US Court of Appeals re 22 Notice of Appeal - Final Judgment (HBB, ) (Entered: 01/28/2008) |
| 01/30/2008 | 24 | TRANSCRIPT REQUEST by Gary Steven Vasiloff for proceedings held on 10/18/2007 Plea Hrg; 1/16/2008 Sentencing Hrg before Judge Hopkins, re 22 Notice of Appeal - Final Judgment cm crtrptr C Sinkfield (DWC, ) (Entered: 01/31/2008) |
| 02/01/2008 | 25 | USCA Case Number as to Gary Steven Vasiloff 08-10412 E for 22 Notice of Appeal - Final Judgment filed by Gary Steven Vasiloff. (SDA ) (Entered: 02/01/2008) |

| 02/13/2008 | 26 | TRANSCRIPT REQUEST [Part II/pink] filed by crtrptr Chanetta Sinkfield as to dft Gary Steven Vasiloff for Plea held 10/18/2007, and Sentencing held 1/16/2008 before Judge Hopkins; estimated filing date 3/4/2008 re 22 Notice of Appeal - Final Judgment (DWC, ) (Entered: 02/13/2008) |
| 03/05/2008 | 27 | TRANSCRIPT of Plea Hearing filed as to Gary Steven Vasiloff for dates of 10/18/07 before Judge Hopkins, re 22 Notice of Appeal - Final Judgment Court Reporter: Chanetta Sinkfield. [Contact court reporter for copy of transcript] (30 Pgs.) (Attachments: # 1 Signature Page)(SDA ) (Entered: 03/06/2008) |
| 03/05/2008 | 28 | TRANSCRIPT Sentencing Hearing filed as to Gary Steven Vasiloff for dates of 01/16/08 before Judge Hopkins, re 22 Notice of Appeal - Final Judgment Court Reporter: Chanetta Sinkfield. [Contact court reporter for copy of transcript] (25 Pgs.) (Attachments: # 1 Signature Page)(SDA ) (Entered: 03/06/2008) |
| 03/06/2008 | 29 | CERTIFICATE OF READINESS OF RECORD ON APPEAL as to Gary Steven Vasiloff USCA# 08-10412-EE re 22 Notice of Appeal - Final Judgment; Record consists of 1 vol pleadings, 2 vols cert copies of efiled transcript, and 1 SEALED PSI/REC (HBB, ) (Entered: 03/06/2008) |
| 06/19/2008 | 30 | NOTICE *of Publication* by Gary Steven Vasiloff (Attachments: # 1 Affidavit of Publication in the Cherokee County Herald)(Ingram, James) (Entered: 06/19/2008) |
| 06/20/2008 | 31 | MOTION for Forfeiture of Property *Motion for a Final Order of Forfeiture* by USA as to Gary Steven Vasiloff. (Ingram, James) (Entered: 06/20/2008) |
| 06/30/2008 | 32 | ORDER as to Gary Steven Vasiloff re 31 MOTION for Forfeiture of Property *Motion for a Final Order of Forfeiture* - this case is on appeal; therefore, it is hereby ORDERED that the Government shall SHOW CAUSE on or before July 11, 2008 why this court has jurisdiction to enter the requested order. Signed by Judge Virginia Emerson Hopkins on 6/30/08. (SDA ) (Entered: 07/01/2008) |
| 07/01/2008 | 33 | RESPONSE to by USA as to Gary Steven Vasiloff *Government's Response to Court's Order of July 1, 2008* (Ingram, James) (Entered: 07/01/2008) |
| 08/08/2008 | 34 | ORDER of USCA (certified copy) dtd 8/7/2008 as to Gary Steven Vasiloff USCA# 08-10412-EE re 22 Notice of Appeal - Final Judgment; The Govt's motion to dismiss this appeal based on the valid and enforceable sentence appeal waiver in Appellant's plea agreement is GRANTED (ANDERSON, HULL and HILL) (HBB, ) (Entered: 08/08/2008) |
| 09/19/2008 | 35 | FINAL ORDER OF FORFEITURE as to Gary Steven Vasiloff, that certain property as set out is hereby FORFEITED to the USA.. Signed by Judge Virginia Emerson Hopkins on 9/19/2008. (DWC, )ccm J Ingram (Entered: 09/19/2008) |
| 09/24/2008 | 36 | MOTION to Withdraw as Attorney by Robert B. Tuten. by Gary Steven Vasiloff. (Tuten, Robert) (Entered: 09/24/2008) |
| 09/26/2008 |  | ORDER granting 36 Motion to Withdraw as Attorney as to Gary Steven Vasiloff (1). Mr. Vasiloff's appeal has been denied. Mr. Tuten has no continued obligation to represent the defendant. Signed by Magistrate Judge Paul W Greene on 9/26/08. (SJP) (Entered: 09/26/2008) |

| 09/26/2008 | | Attorney update in case as to Gary Steven Vasiloff. Attorney Robert B Tuten terminated. Pursuant to order dtd 9/26/08 (SDA ) (Entered: 09/26/2008) |
| 01/20/2009 | 37 | NOTICE by USCA #08-10412-EE as to dft Gary Steven Vasiloff re 34 USCA Order; the Supreme Court has denied certiorari; the court's mandate having previously issued, no further action will be taken by this court (DWC, ) (Entered: 01/21/2009) |
| 01/14/2010 | 38 | MOTION to Vacate under 28 U.S.C. 2255 (Civil Action 4:10-cv-8001-VEH) Gary Steven Vasiloff. (JLC) Modified text on 7/19/2012 (KWC) (Entered: 01/14/2010) |
| 08/16/2013 | | Case as to Gary Steven Vasiloff Reassigned to Magistrate Judge Madeline H Haikala. Magistrate Judge Paul W Greene no longer assigned to the case. (HBB, ) (Entered: 08/16/2013) |
| 11/20/2013 | | Case as to Gary Steven Vasiloff Reassigned to Magistrate Judge Paul W Greene. Judge Madeline H (MAG) Haikala no longer assigned to the case. (HBB, ) (Entered: 11/20/2013) |
| 12/12/2013 | 39 | ORDER denying 38 Motion to Vacate (2255) as to Gary Steven Vasiloff (1). Signed by Judge Virginia Emerson Hopkins on 12/4/2013. (JLC) (Entered: 12/12/2013) |
| 05/01/2014 | | Case as to Gary Steven Vasiloff Reassigned to Magistrate Judge Staci G Cornelius. Magistrate Judge Paul W Greene no longer assigned to the case. (DWC, ) (Entered: 05/01/2014) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 07/08/2015 12:42:50 | | |
| **PACER Login:** | xq0004:3388745:4299065 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 4:07-cr-00337-VEH-SGC |
| **Billable Pages:** | 5 | **Cost:** | 0.50 |

APPEAL,CASREF,REPORT & RECOMMEND

## U.S. District Court
## Northern District of Alabama (Middle)
## CIVIL DOCKET FOR CASE #: 4:10-cv-08001-VEH-SGC

Vasiloff v. United States of America                  Date Filed: 01/14/2010
Assigned to: Judge Virginia Emerson Hopkins          Date Terminated: 12/04/2013
Referred to: Magistrate Judge Staci G Cornelius      Jury Demand: None
Case in other court: Eleventh Circuit, 14-10483-A    Nature of Suit: 510 Prisoner: Vacate
Cause: 28:2255 Motion to Vacate / Correct Illegal Sentenc    Sentence
                                                     Jurisdiction: U.S. Government
                                                     Defendant

**Petitioner**

**Gary Steven Vasiloff**                    represented by **Gary Steven Vasiloff**
                                            #26486-001
                                            U.S.P. - Tucson
                                            P.O. Box 24550
                                            Tucson, AZ 85734
                                            PRO SE

V.

**Respondent**

**United States of America**                represented by **James D Ingram**
                                            US ATTORNEY'S OFFICE
                                            1801 4th Avenue North
                                            Birmingham, AL 35203-2101
                                            244-2001
                                            Email: James.Ingram@usdoj.gov
                                            *LEAD ATTORNEY*
                                            *ATTORNEY TO BE NOTICED*

                                            **Joyce White Vance**
                                            USA
                                            1801 4th Avenue North
                                            Birmingham, AL 35203
                                            205-244-2001
                                            Email: usaaln.ecfusa@usdoj.gov
                                            *LEAD ATTORNEY*
                                            *ATTORNEY TO BE NOTICED*

                                            **Mary Stuart Burrell**
                                            US ATTORNEY'S OFFICE
                                            400 Meridian Street, Suite 304
                                            Huntsville, AL 35801
                                            256-534-8285

Fax: 256-539-3270
Email: mary.stuart.burrell@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|------------|---|-------------|
| 01/14/2010 | 1 | MOTION to Vacate, Set Aside or Correct Sentence (2255), filed by Gary Steven Vasiloff.(JLC) Modified text on 7/19/2012 (KWC) 4:07-cr-337-VEH-PWG (Entered: 01/14/2010) |
| 01/14/2010 | 3 | MOTION for Extension of Time to File Memorandum of Points and Authorities for 1 Motion Under 28 U.S.C. 2255 by Gary Steven Vasiloff. (JLC, ) (Entered: 01/15/2010) |
| 01/15/2010 | 2 | ORDER TO SHOW CAUSE; It is hereby ORDERED that the United States Appear and Show Cause in writing within twenty (20) days from the date of this Order why the relief requested by the Movant should not be granted. Signed by Magistrate Judge Paul W Greene on 1/15/2010. (JLC, ) (Entered: 01/15/2010) |
| 01/15/2010 | 4 | ORDER GRANTING 3 MOTION for Extension of Time until March 15, 2010. The deadline for the Governments response to the Order to show cause is EXTENDED until twenty (20) days after receipt of Mr. Vasiloffs memorandum in support of his 2255 motion. Signed by Magistrate Judge Paul W Greene on 1/15/2010. (JLC, ) (Entered: 01/15/2010) |
| 03/15/2010 | 5 | Memorandum of Points & Authorities in Support of 1 Motion to Vacate/Set Aside/Correct Sentence (2255). (JLC, ) (Entered: 03/15/2010) |
| 04/01/2010 | 6 | MOTION to Dismiss *2255* by United States of America. (Attachments: # 1 Attachment A, # 2 Attachment B, # 3 Attachment C)(Burrell, Mary) (Entered: 04/01/2010) |
| 04/05/2010 | 7 | REQUEST for Transcripts to Supplement Motion Under 28 U.S.C. 2255 by Gary Steven Vasiloff. (JLC, ) (Entered: 04/05/2010) |
| 04/09/2010 | 8 | REQUEST to Delay Judgment in this Case Until Petitioner's Traverse is Filed by Gary Steven Vasiloff (JLC, ) (Entered: 04/09/2010) |
| 04/16/2010 | 9 | MOTION to Strike Government's 6 MOTION to Dismiss 2255 by Gary Steven Vasiloff. (JLC, ) (Entered: 04/16/2010) |
| 05/04/2010 |  | ORDER denying 9 Defendant's Motion to Strike the Government's Motion to Dismiss 6 . Signed by Magistrate Judge Paul W. Greene on 5/4/2010. (SJB) (Entered: 05/04/2010) |
| 05/04/2010 | 10 | ORDER that the court deems this case ripe for summary disposition; petitioner has 20 days to file additional evidentiary materials; Signed by Magistrate Judge Paul W Greene on 5/4/2010. (BST) (Entered: 05/04/2010) |
| 05/10/2010 | 11 | Request for Judicial Notice by Gary Steven Vasiloff. (JLC, ) (Entered: 05/10/2010) |

| 05/17/2010 | 12 | Preliminary Supplemental Arguments in Opposition to the Government's 6 Motion to Dismiss filed by Gary Steven Vasiloff. (JLC, ) (Entered: 05/17/2010) |
|---|---|---|
| 05/17/2010 | 13 | NOTICE by Gary Steven Vasiloff. (JLC, ) (Entered: 05/17/2010) |
| 05/20/2010 | 14 | RESPONSE to Petitioner's 13 Notice. (JLC, ) (Entered: 05/20/2010) |
| 05/27/2010 | 15 | Supplemental Opposition to Governments' 6 Motion to Dismiss filed by Gary Steven Vasiloff. (JLC, ) (Entered: 05/27/2010) |
| 06/01/2010 | 16 | MOTION to Stay Deadlines by Gary Steven Vasiloff. (JLC, ) (Entered: 06/04/2010) |
| 06/08/2010 | | ORDER denying 16 Defendant's Motion to Stay Deadlines. Signed by Magistrate Judge Paul W. Greene on 6/8/2010. (SJB) (Entered: 06/08/2010) |
| 01/13/2011 | 17 | Request for Judicial Notice of 9/10/2010 Finding by Magistrate Judge Greene in Baird v. U.S. (07-CO-8020-S) by Gary Steven Vasiloff (JLC, ) (Entered: 01/13/2011) |
| 09/09/2011 | 18 | Request for Docket Sheet by Gary Steven Vasiloff. (JLC, ) (Entered: 09/09/2011) |
| 09/04/2012 | 19 | MAGISTRATE JUDGE'S FINDINGS & RECOMMENDATION re 1 Motion to Vacate/Set Aside/Correct Sentence § 2255 filed by Gary Steven Vasiloff. Objections to R&R due by 9/19/2012. Signed by Magistrate Judge Paul W Greene on 9/4/2012. (JLC) (Entered: 09/04/2012) |
| 09/12/2012 | 20 | Clairification of Prior Request by Gary Steven Vasiloff. (JLC) (Entered: 09/12/2012) |
| 10/05/2012 | | CASE REFERRED to Magistrate-Judge Madeline H Haikala (ASL) (Entered: 10/05/2012) |
| 10/25/2012 | 21 | NOTICE of Non-Receipt by Gary Steven Vasiloff. (JLC) (Entered: 10/25/2012) |
| 10/30/2012 | 22 | ORDER ADOPTING REPORT AND RECOMMENDATIONS and DENYING 6 Motion to Dismiss 2255 filed by United States of America; terming 19 REPORT AND RECOMMENDATION; Govt has 21 days to file response; ORDER REFERRING CASE back to Magistrate Judge Magistrate-Judge Madeline H Haikala. Signed by Judge Virginia Emerson Hopkins on 10/30/2012. (KWC) (Entered: 10/30/2012) |
| 10/31/2012 | | Set Deadlines as to Govt response to 2255: Response due by 11/21/2012. (KWC) (Entered: 10/31/2012) |
| 11/09/2012 | 23 | First MOTION for Extension of Time to File Response/Reply by United States of America. (Burrell, Mary) (Entered: 11/09/2012) |
| 11/09/2012 | 24 | ORDER granting 23 Motion for Extension of Time to File Response/Reply. The government is granted thirty (30) additional days from the original deadline to file a response. Signed by Magistrate-Judge Madeline H Haikala on 11/9/2011.(KMT). (Entered: 11/09/2012) |
| 11/13/2012 | | Reset Deadline: Response due by 12/21/2012 (KWC) (Entered: 11/13/2012) |

| 12/19/2012 | 25 | RESPONSE to *2255 Motion* filed by United States of America. (Attachments: # 1 Attachment A)(Burrell, Mary) (Entered: 12/19/2012) |
| 01/14/2013 | 26 | Request by Gary Steven Vasiloff. (JLC) (Entered: 01/14/2013) |
| 01/17/2013 | 27 | ORDER that Movant shall have twenty-one (21) days from the date of this Order to supply any additional evidentiary materials or legal arguments he may wish to offer with regard to whether the motion to vacate is subject to summary disposition. Signed by Magistrate Judge Madeline H Haikala on 1/17/2013. (JLC) (Entered: 01/17/2013) |
| 01/28/2013 | 28 | MOTION for Extension of Time and Notice of Mail Problems by Gary Steven Vasiloff. (JLC) (Entered: 01/28/2013) |
| 01/29/2013 | 29 | ORDER granting 28 Motion for Extension of Time. Petitioner shall have forty-five (45) days from the date of this Order to supply any additional evidentiary materials or legal arguments he may wish to offer with regard to his 2255 petition. The 45 day period includes a 30 day extension for Mr. Vasiloff's preparation of his submission and 15 days for transmission of this Order to Mr. Vasiloff. Signed by Magistrate Judge Madeline H Haikala on January 29, 2013. (Haikala, Madeline) (Entered: 01/29/2013) |
| 01/31/2013 | 30 | MOTION for Evidentiary Hearing by Gary Steven Vasiloff. (JLC) (Entered: 01/31/2013) |
| 02/25/2013 | 31 | Request with Declarations attached by Gary Steven Vasiloff. (JLC) (Entered: 02/25/2013) |
| 03/04/2013 | 32 | MOTION to Appoint Counsel and Request for Discovery by Gary Steven Vasiloff. (JLC) (Entered: 03/04/2013) |
| 03/04/2013 | 33 | NOTICE by Gary Steven Vasiloff. (JLC) (Entered: 03/04/2013) |
| 03/04/2013 | 34 | REPLY/TRAVERSE to 25 Response filed by Gary Steven Vasiloff. (JLC) (Entered: 03/04/2013) |
| 04/29/2013 | 35 | Supplemental Authorities by Gary Steven Vasiloff. (JLC) (Entered: 04/29/2013) |
| 07/29/2013 | 36 | NOTICE by Gary Steven Vasiloff. (JLC) (Entered: 07/29/2013) |
| 08/14/2013 | 37 | MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION re 1 Motion to Vacate/Set Aside/Correct Sentence (2255) filed by Gary Steven Vasiloff. Objections to R&R due by 8/29/2013. Signed by Magistrate Judge Madeline H Haikala on 8/14/2013. (JLC) (Entered: 08/14/2013) |
| 08/19/2013 | 38 | Request for Judicial Notice/Supplemental Briefing by Gary Steven Vasiloff. (JLC) (Entered: 08/19/2013) |
| 08/26/2013 | 39 | MOTION for Extension of Time by Gary Steven Vasiloff. (JLC) (Entered: 08/26/2013) |
| 08/26/2013 | | ORDER granting 39 Motion for Extension of Time. Any objections by either party to the Report and Recommendation are due by October 1, 2013. Signed by Judge Virginia Emerson Hopkins on 8/26/2013. (Hopkins, Virginia) |

|  |  | (Entered: 08/26/2013) |
|---|---|---|
| 08/27/2013 |  | Set Deadlines: Objections to R&R by either party due by 10/1/2013 (KWC) (Entered: 08/27/2013) |
| 09/16/2013 | 40 | OBJECTION to 37 Report and Recommendations (entitled " Notice of Fraud Upon the Court") w/ a request for an evidentiary hearing by Gary Steven Vasiloff. (CTS, ) (Entered: 09/16/2013) |
| 09/30/2013 | 41 | Request for Immunity Letter by Gary Steven Vasiloff. (JLC) (Entered: 09/30/2013) |
| 10/07/2013 | 42 | Objection to Magistrate Judge's 37 Report & Recommendation filed by Gary Steven Vasiloff. (JLC) (Entered: 10/07/2013) |
| 10/22/2013 |  | CASE REFERRED to Magistrate Judge Paul W Greene. (MSN) (Entered: 10/22/2013) |
| 10/24/2013 | 43 | Request of Status by Gary Steven Vasiloff. (Docket Sheet sent to Movant via USPS on this the 24th day of October, 2013.) (JLC) (Entered: 10/24/2013) |
| 10/24/2013 | 44 | Request to delay ruling and add one exhibit by Gary Steven Vasiloff. (JLC) (Entered: 10/24/2013) |
| 12/02/2013 | 45 | NOTICE of Supplemental Citations by Gary Steven Vasiloff. (JLC) (Entered: 12/02/2013) |
| 12/04/2013 | 46 | MEMORANDUM OPINION AND ORDER DENYING AS MOOT 30 MOTION for Hearing, DENYING AS MOOT 32 MOTION to Appoint Counsel. GRANTING IN PART and DENYING IN PART 44 Request to Delay Ruling and Add One Exhibit. Finally, Petitioner has filed a 41 Request for Immunity Letter, while not styled as a motion, to the extent that it could be so construed, it is hereby DENIED. The Court is of the Opinion that the Magistrate Judge's 37 Findings are due to be and are hereby ADOPTED and her 37 Recommendation is ACCEPTED as set out herein. Signed by Judge Virginia Emerson Hopkins on 12/4/2013. (JLC) (Entered: 12/04/2013) |
| 12/04/2013 | 47 | FINAL JUDGMENT ORDER DISMISSING CASE in accordance with the 46 Memorandum Opinion entered contemporaneously herewith. Signed by Judge Virginia Emerson Hopkins on 12/4/2013. (JLC) (Entered: 12/04/2013) |
| 01/03/2014 | 48 | REQUEST FOR FINDING by Gary Steven Vasiloff. (AVC) (Entered: 01/07/2014) |
| 02/03/2014 | 49 | NOTICE OF APPEAL as to 47 Order Dismissing Case, 46 Memorandum Opinion by Gary Steven Vasiloff. (JLC) (Entered: 02/04/2014) |
| 02/04/2014 | 50 | TRANSMITTAL NOTICE re 49 Notice of Appeal. (JLC) (Entered: 02/04/2014) |
| 02/04/2014 | 51 | Transmission of Notice of Appeal, Memorandum Opinion, Order and Docket Sheet to US Court of Appeals re 49 Notice of Appeal. (Attachments: # 1 Criminal Docket Sheet)(JLC) (Entered: 02/04/2014) |
| 02/06/2014 | 52 | USCA Case Number 14-10483-A and Notification for 49 Notice of Appeal |

| | | filed by Gary Steven Vasiloff. (JLC) (Entered: 02/06/2014) |
|---|---|---|
| 02/06/2014 | 53 | ORDER REGARDING CERTIFICATE OF APPEALABILITY IN PRISONER HABEAS CASE; Petitioner has not met the standard required to obtain a Certificate of Appealability. Accordingly, to the extent that the 49 Notice of Appeal is construed as a Motion for a Certificate of Appealability, it is hereby DENIED. Signed by Judge Virginia Emerson Hopkins on 2/6/2014. (JLC) (Entered: 02/06/2014) |
| 03/28/2014 | 54 | Request by Gary Steven Vasiloff. (JLC) (Entered: 03/28/2014) |
| 04/25/2014 | 55 | MOTION for Leave to Proceed on Appeal In Forma Pauperis by Gary Steven Vasiloff. (JLC) (Entered: 04/25/2014) |
| 04/28/2014 | | ORDER REFERRING CASE to Magistrate Judge Staci G Cornelius. Signed by Judge Virginia Emerson Hopkins on 4/28/2014. (JLC) (Entered: 04/28/2014) |
| 05/01/2014 | 56 | ORDER DENYING 55 MOTION for Leave to Proceed On Appeal In Forma Pauperis. Signed by Magistrate Judge Staci G Cornelius on 5/1/2014. (JLC) (Entered: 05/01/2014) |
| 07/22/2014 | 57 | MOTION for Certificate of Appealability by Gary Steven Vasiloff. (Deemed filed 7/18/2014 with the USCA.) (JLC) (Entered: 07/22/2014) |
| 07/23/2014 | 58 | MOTION for Leave to Proceed on Appeal In Forma Pauperis by Gary Steven Vasiloff. (Deemed filed 7/18/2014 in the USCA)(Doc. wouldn't open) (JLC) (Entered: 07/23/2014) |
| 12/09/2014 | 59 | ORDER of USCA GRANTING Appellant's Motion for a Certificate of Appealability and Motion to Proceed on appeal IFP as to 49 Notice of Appeal filed by Gary Steven Vasiloff. (JLC) (Entered: 12/09/2014) |
| 01/09/2015 | 60 | Appellant's Request for Appellee's Concurrence or Alternatively, Taking of Judicial Notice of the Attorney General's Position 49 Notice of Appeal. (JLC) (Entered: 01/12/2015) |
| 04/13/2015 | 61 | ORDER of USCA GRANTING in Part and DENYING in Part Petitioner's Motion for Clarification and DENYING AS MOOT Petitioner's Motion to Stay Briefing Schedule.(JLC) (Entered: 04/13/2015) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 07/08/2015 12:39:18 | | |
| PACER Login: | xq0004:3388745:4299065 | Client Code: |
| Description: | Docket Report | Search Criteria: | 4:10-cv-08001-VEH-SGC |
| Billable Pages: | 4 | Cost: | 0.40 |

# 4:07-cr-00337-VEH-SGC

# 15

FILED
2007 Oct-18  PM 05:25
U.S. DISTRICT COURT
N.D. OF ALABAMA

**FILED**

**OCT 18 2007**

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF ALABAMA

### MIDDLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) 4:07-CR-0337-VEH-PWG |
| | ) |
| GARY STEVEN VASILOFF | ) |

### PLEA AGREEMENT

The United States of America and defendant GARY STEVEN VASILOFF

hereby acknowledge the following plea agreement in this case:

### PLEA

The defendant agrees to plead guilty to **COUNTS ONE through TWENTY-**

**TWO** and confess **COUNT TWENTY-THREE** of the Indictment filed in the above

numbered and captioned matter. In exchange, the United States Attorney, acting on

behalf of the United States and through the undersigned Assistant United States

Attorney, agrees to recommend the disposition specified below.

### TERMS OF THE AGREEMENT

### I. MAXIMUM PUNISHMENT:

Παγε 1 οφ 11

The Parties understand that the maximum statutory punishment that may be imposed for the crime of Production of Child Pornography, in violation of Title 18, United States Code, Section 2251(a), as charged in COUNTS ONE through TWENTY-ONE, is:

      a.    Imprisonment for not less than 15 years nor more than 30 years;

      b.    A fine of not more than $250,000, or,

      c.    Both (a and b);

      d.    Supervised release for not less than 5 years nor more than life; and

      e.    Special Assessment Fee of $100 per count.

The Parties understand that the maximum statutory punishment that may be imposed for the crime of Possession of Child Pornography, in violation of Title 18, United States Code, Section 2252A(a)(5)(B), as charged in COUNT TWENTY-TWO, is:

      a.    Imprisonment for not more than 10 years;

      b.    A fine of not more than $250,000, or,

      c.    Both (a and b);

      d.    Supervised release for not less than 5 years nor more than life; and

      e.    Special Assessment Fee of $100 per count.

## II. FACTUAL BASIS FOR PLEA:

**The defendant hereby stipulates to the accuracy of the following information:**

The Alabama Department of Human Resources Assessment of Children at Risk officials received information and reported the same to the Cherokee County Sheriff's Office (CCSO), advising that Gary Steven Vasiloff had taken nude photographs of his stepdaughter (age 14) using a dildo and posing in other lewd and lascivious positions, and had downloaded the photos from his digital camera onto his personal computer. It was also alleged that the victim had been given alcoholic beverages before the pictures were taken.

On January 23, 2007, the CCSO executed a state search warrant at Vasiloff's residence. Vasiloff's computer was seized, along with other items of evidence, including a digital camera and a dildo. The CCSO utilized the computer analysis services of the Alabama Computer Forensic Lab to analyze Vasiloff's computer. Vasiloff's computer was analyzed and twenty-one images of child pornography depicting the victim were discovered. Seven additional images of the victim depicting breast nudity were also discovered. In numerous of these pictures, the victim can be seen consuming alcoholic beverages she says were given to her by Vasiloff. The images were produced by a Concord camera, which was manufactured in the People's Republic of

Παγε 3 οφ 11

China.

The FBI initiated its investigation into the matter after receiving investigative reports from the CCSO on July 17, 2007. On July 31, 2007, an examiner with the Alabama Computer Forensic Lab provided the FBI with a report of examination of Vasiloff's personal computer. The FBI reviewed the report on July 31, 2007, and confirmed that the images of child pornography were in fact of the victim in question.

On August 8, 2007, Vasiloff was arrested on a federal complaint charging him with Possession of Child Pornography. After waiving his rights pursuant to *Miranda*, he confessed to producing the images of child pornography depicting his step-daughter. He admitted that the images had been taken at a deceased relative's abandoned house in Cherokee County, Alabama, between the dates of June 23, 2006, and August 14, 2006. He also turned over the Concord camera used to produce the images.

## III. RECOMMENDED SENTENCE:

Pursuant to Rule 11(c)(1)(B), Fed.R.Crim.P., the government will recommend the following disposition:

> (a) That the defendant be sentenced within the advisory guideline range as that range is determined by the Court on the date sentence

is pronounced;

(b)     In calculating the advisory guideline range, the United States will recommend that the defendant receive the maximum credit for acceptance of responsibility for which he is eligible pursuant to U.S.S.G. § 3E1.1.

(c)     That the defendant pay a special assessment fee of $2200, said amount due and owing as of the date sentence is pronounced.

## IV. WAIVER OF RIGHT TO APPEAL AND POST-CONVICTION RELIEF:

As a term and condition of this Plea Agreement I, GARY STEVEN VASILOFF, hereby waive my right to appeal my conviction in this case, any fines, restitution, and/or sentence (including one for revocation of release) that the court might impose upon me, and the right to challenge any sentence so imposed or the manner in which the sentence was determined in any collateral attack, including, but not limited to, a motion brought under 28 U.S.C. § 2255, subject to the following limitations:

The defendant reserves the right to contest in an appeal or post-conviction proceeding:

(a)     Any sentence imposed in excess of the applicable statutory maximum sentence(s).

Παγε 5 οφ 11

The defendant acknowledges that before giving up these rights, he discussed the Federal Sentencing Guidelines and their application to his case with his attorney, who explained them to his satisfaction. The defendant further acknowledges and understands that the government retains its right to appeal where authorized by statute.

I, GARY STEVEN VASILOFF, hereby place my signature on the line directly below to signify that I fully understand the foregoing paragraphs, and that I am knowingly and voluntarily entering into this waiver.

GARY STEVEN VASILOFF

## V. UNITED STATES SENTENCING GUIDELINES:

Counsel has explained to the defendant, that in light of the United States Supreme Court's recent decision in United States v. Booker, 125 S.Ct. 738 (2005), the federal sentencing guidelines are **advisory** in nature. Sentencing is in the court's discretion and is no longer required to be within the guideline range. The defendant agrees that, pursuant to this agreement, the court may use facts it finds by a preponderance of the evidence to reach an advisory guideline range and defendant explicitly waives any right to have those facts found by a jury beyond a reasonable doubt.

## VI. AGREEMENT NOT BINDING ON COURT:

The Parties fully and completely understand and agree that it is the Court's duty to impose sentence upon the defendant and that any sentence recommended by the government is **NOT BINDING UPON THE COURT**, and that the Court need not accept the government's recommendation. Further, the defendant understands that if the Court does not accept the government's recommendation, he does not have the right to withdraw his plea.

## VII. VOIDING OF AGREEMENT:

The defendant understands that should he (a) violate any federal, state, or local law after entering into this Plea Agreement, (b) move the Court to accept his plea of guilty in accordance with, or pursuant to, the provisions of North Carolina v. Alford, 400 U.S. 25 (1970), or (c) tender a plea of *nolo contendere* to the charges, the agreement will become NULL and VOID, and the United States will not be bound by any of the terms, conditions, or recommendations, express or implied, which are contained therein.

## VIII. OTHER DISTRICTS AND JURISDICTIONS:

The parties understand and agree that this agreement **DOES NOT BIND** any other United States Attorney in any other district, or any other state or local authority.

## IX. TAX, FORFEITURE AND OTHER CIVIL/ADMINISTRATIVE PROCEEDINGS:

Παγε 7 οφ 11

Unless otherwise specified herein, the parties understand and acknowledge that this agreement does not apply to or in any way limit any pending or prospective proceedings related to defendant's **tax liabilities**, if any, or to any pending or prospective **forfeiture** or other **civil** or **administrative** proceedings.

## X. DEFENDANT'S UNDERSTANDING:

I have read and understand the provisions of this agreement consisting of eleven (11) pages. I have discussed the case and my constitutional and other rights with my lawyer. I am satisfied with my lawyer's representation in this case. I understand that by pleading guilty, I will be waiving and giving up my right to continue to plead not guilty, to a trial by jury, to the assistance of counsel at that trial, to confront, cross-examine, or compel the attendance of witnesses, to present evidence in my behalf, to maintain my privilege against self-incrimination, and to the presumption of innocence. I agree to enter my plea as indicated above on the terms and conditions set forth herein.

**NO OTHER PROMISES OR REPRESENTATIONS HAVE BEEN MADE TO ME BY THE PROSECUTOR, OR BY ANYONE ELSE, NOR HAVE ANY THREATS BEEN MADE OR FORCE USED TO INDUCE ME TO PLEAD GUILTY.**

I further have been advised, and understand, that under the Sex Offender

Παγε 8 οφ 11

Registration and Notification Act, a federal law, I must register and keep the registration current in each of the following jurisdictions: where I reside; where I am an employee; and where I am a student. I understand that the requirements for registration include providing my name, my residence address, and the names and addresses of any places where I am or will be an employee or a student, among other information. I further understand that the requirement to keep the registration current includes informing at least one jurisdiction in which I reside, am an employee, or am a student not later than three business days after any change of my name, residence, employment, or student status. I have been advised, and understand, that failure to comply with these obligations subjects me to prosecution for failure to register under federal law, 18, United States Code, Section 2250, which is punishable by a fine or imprisonment, or both.

I further state that I have not had any drugs, medication, or alcohol within the past 48 hours except as stated hereafter:

[                                                               ]
(if none, write "N/A")

I understand that this Plea Agreement will take effect and will be binding as to the Parties **only** after all necessary signatures have been affixed hereto.

I have personally and voluntarily placed my initials on every page of this

Παγε 9 οφ 11

Agreement and have signed the signature line below to indicate I have read and approve all of the previous paragraphs of this Agreement, and understand all of the provisions of this Agreement, both individually and as a total binding agreement.

Oct · 18, 07
DATE

GARY STEVEN VASILOFF
Defendant

## XI. COUNSEL'S ACKNOWLEDGMENT:

I have discussed this case with my client in detail and have advised him of his rights and all possible defenses. My client has conveyed to me that he understands this

Παγε 10 οφ 11

Agreement and consents to all its terms. I believe the plea and disposition set forth herein are appropriate under the facts of this case and are in accord with my best judgment. I concur in the entry of the plea as indicated above and on the terms and conditions set forth herein.

_10/18/04_
DATE

ROBERT TUTEN, ESQ.
Defendant's Counsel

## XII. **GOVERNMENT'S ACKNOWLEDGMENT**:

I have reviewed this matter and concur that the plea and disposition set forth herein are appropriate and are in the interests of justice.

ALICE H. MARTIN
United States Attorney

by:

_10-18-2007_
DATE

MARY STUART BURRELL
Assistant United States Attorney

**22**

FILED
2008 Jan-25 PM 02:31
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,

Vs.                                   CASE NO. 4:07-CR-337-VEH-PWG

GARY STEVEN VASILOFF,

       Defendant.

## NOTICE OF APPEAL

Comes now the Defendant, GARY STEVEN VASILOFF, by and through counsel, and appeals to the United States Court of Appeals for the Eleventh Circuit from the Judgment and Sentence in a Criminal Case decreed by the Honorable Virginia Emerson Hopkins at his sentencing on January 16, 2008.

Respectfully submitted this 25th day of January, 2008.

/S/ *Robert B. Tuten*

ROBERT B. TUTEN
Attorney for Defendant
223 East Side Square
Huntsville, AL 35801
Phone: (256) 536-6009
Fax: (256) 536-2501
E-Mail: federalct@tutenlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that I have this date electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the attorneys of record

This 25th day of January, 2008.

/s/ *Robert B. Tuten*
Robert B. Tuten

27

2008 Mar-06 AM 08:05
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ALABAMA

MIDDLE DIVISION


UNITED STATES OF AMERICA,          *
      Plaintiff,                  *
                       *  Case No. CR-07-VEH-0337-M
       v.                       *
                       *
GARY STEVEN VASILOFF,               *   Birmingham, Alabama
                       *   October 18, 2007
      Defendant.                  *      9:30 a.m.
**********************************


TRANSCRIPT OF PLEA HEARING
BEFORE THE HONORABLE VIRGINIA EMERSON HOPKINS
UNITED STATES DISTRICT JUDGE


Court Reporter:          Chanetta L. Sinkfield, RMR
                         325 United States Courthouse
                         1729 Fifth Avenue North
                         Birmingham, AL 35203

USCA11 Case: 14-10483  Document: 26  Date Filed: 07/13/2015  Page: 35 of 260
Case 4:07-cr-00337-VEH-SGC  Document 27  Filed 03/05/08  Page 2 of 30

2

```
 1                          APPEARANCES

 2

 3    FOR THE PLAINTIFF:      ALICE H. MARTIN
                             U.S. ATTORNEY'S OFFICE
 4                           Assistant U.S. Attorney,
                             MARY STUART BURRELL
 5                           400 Meridian Street, Suite 304
                             Huntsville, Alabama 35801
 6

 7    FOR THE DEFENDANT:      ROBERT B. TUTEN, ESQ.
                             TUTEN LAW OFFICES
 8                           223 East Side Square
                             Huntsville, Alabama 35801
 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23
      Court Reporter:        Chanetta L. Sinkfield, RMR
24                           325 United States Courthouse
                             1729 Fifth Avenue North
25                           Birmingham, Alabama 35203
```

USCA11 Case: 14-10483 vDocument 26 Date Filed: 07/13/2015 Page: 36 of 260
Case 4:07-cr-00337-VEH-SGC Document 27 Filed 03/05/08 Page 3 of 30

3

```
 1                    P R O C E E D I N G S
 2
 3           THE COURT:  Good morning.  Counsel, we're here today
 4   in the matter of the United States of America versus Gary
 5   Steven Vasiloff, case number 07-337.
 6        I am looking at the guilty plea advice of rights
 7   certification, and it's not certified by counsel for
 8   defendant.
 9           MR. TUTEN:  Sorry about that, Your Honor.  Let me do
10   that real quick.
11           THE COURT:  That will be fine.
12           MR. TUTEN:  We had some last minute revisions to the
13   plea agreement yesterday.  We were scrambling around trying to
14   get the material signed, and I just missed that one.  I'm
15   sorry about that.
16           THE COURT:  It's not a problem as long as you get it
17   done now.
18           MR. TUTEN:  Thank you, Your Honor.
19           THE COURT:  You're welcome.  All right.  I see that
20   Ms. Burrell is present and Mr. Tuten, T-u-t-e-n.
21           MR. TUTEN:  Yes, Your Honor.
22           THE COURT:  Mr. Vasiloff, before I can accept the
23   plea of guilty from you, I must inquire about certain matters,
24   and that inquiry will require that you be placed under an
25   oath.  I want to point out to you that while you are under
```

```
 1    that oath, I may ask you questions pertaining to the offense

 2    that you are pleading guilty to or other questions relating to

 3    matters relevant to your plea of guilty or to matters relevant

 4    to sentencing.  Any answers to my questions must be full,

 5    complete, and accurate because a false answer or false

 6    statement could be used against you as a basis for prosecuting

 7    you for perjury or false statement.  Do you understand?

 8              THE DEFENDANT:  Yes, ma'am.

 9              THE COURT:  Okay.  Will you speak a little louder,

10    please?

11              THE DEFENDANT:  Yes, ma'am.

12              THE COURT:  Thank you.

13         Ms. Berry, would you please administer the oath.

14              THE COURTROOM DEPUTY:  If you will stand and raise

15    your right hand, please.

16         Do you swear or affirm to speak the truth, the whole

17    truth, and nothing but the truth so help you God?

18              THE DEFENDANT:  Yes, ma'am.

19              THE COURTROOM DEPUTY:  You may be seated.

20              THE COURT:  Mr. Vasiloff, do you have in front of

21    you a copy of a document entitled Guilty Plea Advice of Rights

22    certification stamped filed October 18th, 2007?

23              THE DEFENDANT:  Yes, ma'am.

24              THE COURT:  Did you and your attorney fill out that

25    document?
```

 1          THE DEFENDANT:  Yes, ma'am.

 2          THE COURT:  Did you understand the information in

 3  that document?

 4          THE DEFENDANT:  Mostly, yes, ma'am.

 5          THE COURT:  What did you not understand?  Is there

 6  anything you want to go over with me?

 7          THE DEFENDANT:  No, ma'am.

 8          THE COURT:  Can you tell me any parts of it that you

 9  do not understand?

10          THE DEFENDANT:  It was just the way some of the

11  stuff was worded.  Yes, he helped me through it.

12          THE COURT:  Now that your lawyer has talked to you

13  about what's in the document, after his explanation, do you

14  understand the document?

15          THE DEFENDANT:  Yes, ma'am.

16          THE COURT:  Have you within the past 72 hours taken

17  or received any drugs, intoxicants, narcotics, or medication

18  including prescription medication of any kind?

19          THE DEFENDANT:  No, ma'am.

20          THE COURT:  Do you have any mental impairment that

21  may affect your ability to understand and respond to any

22  questions?

23          THE DEFENDANT:  No, ma'am.

24          THE COURT:  Do you have any problem understanding

25  the English language that may affect your ability to

1  understand and respond to any questions?

2            THE DEFENDANT:  No, ma'am.

3            THE COURT:  Mr. Vasiloff, if anything is said here

4  today or if anything takes place here today that you do not

5  fully understand, I want you to interrupt the proceedings and

6  tell me so.  Will you do so?

7            THE DEFENDANT:  Yes, ma'am.

8            THE COURT:  You can either ask me to clear the

9  matter up for you, or you can ask me to allow you to speak in

10  private with your attorney so that he can clear the matter up,

11  and I will permit either of those.  Do you understand?

12            THE DEFENDANT:  Yes, ma'am.

13            THE COURT:  Okay.  I have been informed that the

14  microphones aren't working.  So everybody just needs to know

15  that we need to speak up.

16      A plea of guilty is often offered in reliance upon some

17  plea bargain or plea agreement between the defendant and his

18  attorney and the U.S. Attorney's Office.  Recommended

19  sentences, plea bargains, and plea agreements are permissible,

20  but they are not binding on the court or the judge.  When a

21  plea agreement exist and where a defendant is entering his

22  plea of guilty in reliance upon a plea bargain or plea

23  agreement, the defendant and his attorney and the U.S.

24  Attorney's Office all have the obligation to disclose that

25  fact to the Court and to tell the Court the terms and

USCA11 Case: 14-10483    Document: 26    Date Filed: 07/13/2015    Page: 40 of 260
Case 4:07-cr-00337-VEH-SGC   Document 27   Filed 03/05/08   Page 9 of 30

7

```
 1    conditions of any plea bargain or plea agreement that the
 2    defendant might be relying on at the time he enters his plea
 3    of guilty.
 4        I have reviewed the plea agreement that has been entered
 5    in this case.  Do you have a copy in front of you, Mr.
 6    Vasiloff?
 7                THE DEFENDANT:  Yes, ma'am.
 8                THE COURT:  Did you sign that agreement?
 9                THE DEFENDANT:  Yes, ma'am.
10                THE COURT:  At this time, I am going to ask the
11    Assistant U.S. Attorney, Mary Stewart Burrell, to advise the
12    Court the extent of that office's knowledge of any recommended
13    sentence, plea bargain, or plea agreement upon which this
14    defendant might be relying here today.
15        You may proceed, Ms. Burrell.
16                MS. BURRELL:  Yes, ma'am.  Your Honor, the
17    defendant, Gary Steven Vasiloff, is going to plead guilty to
18    Counts 1 through 22 of this indictment and Count 23 of the
19    indictment which is a forfeiture allegation.  In exchange,
20    Your Honor, the government's going to recommend that the
21    defendant be sentenced within the advisory guideline range as
22    that range is determined by the Court on the date sentence is
23    pronounced.  In calculating the advisory guideline range, the
24    United States will recommend that the defendant receive the
25    maximum credit for acceptance of responsibility for which he
```

1    is eligible and that the defendant pay a special assessment
2    fee of $2,200. Said amount due and owing as of the date
3    sentence is pronounced.

4        And Your Honor, on pages 5 and 6 of this plea agreement,
5    the defendant, Gary Steven Vasiloff, has waived certain rights
6    to appeal.

7            THE COURT: All right. Mr. Vasiloff, the plea
8    agreement states the government will recommend the maximum
9    appropriate credit for acceptance of responsibility.

10       Mr. Tuten, does the written plea agreement that is in
11   front of you on the table contain everything that you are
12   aware of that your client relying on by way of a plea bargain
13   or plea agreement?

14           MR. TUTEN: Yes, Your Honor, it does.

15           THE COURT: Before your client signed the plea
16   agreement, did you have a sufficient opportunity to fully
17   discuss it with him?

18           MR. TUTEN: Yes, Your Honor. We did discuss it at
19   length. He had various questions about it which I answered.
20   Some of those questions actually resulted in revisions made to
21   some of the wording, especially in the factual rendition of
22   this case. The new agreement was reviewed with him again this
23   morning, and again I answered all the questions that he had
24   about it.

25           THE COURT: And do you feel that you were able to

USCA11 Case: 07-14837-VB Case 07-14837 Document 26 Document 27 Filed: 07/05/2015 Date Filed: 07/05/2015 Page: 9 Page 42 of 260

9

1    answer any questions that he had concerning the meaning of the

2    agreement or its operation or effect to his satisfaction?

3              MR. TUTEN:  Yes, Your Honor, I was.

4              THE COURT:  All right.  Thank you, Mr. Tuten.

5         Mr. Vasiloff, does the written plea agreement that is on

6    the table in front of you contain everything that you are

7    relying on at this time by way of a plea bargain or plea

8    agreement?

9              THE DEFENDANT:  Yes, ma'am.

10             THE COURT:  Before you signed the agreement, did you

11   have a sufficient opportunity to review it with your attorney,

12   Mr. Tuten?

13             THE DEFENDANT:  Yes, ma'am.

14             THE COURT:  Did you have any questions of Mr. Tuten

15   regarding the meaning of the agreement or how it might operate

16   that he did not answer to your satisfaction?

17             THE DEFENDANT:  No, ma'am, he answered all of my

18   questions.

19             THE COURT:  Mr. Vasiloff, the plea agreement that

20   you have entered contains language waiving some or all of your

21   rights to plea agreement the sentence to be imposed.  Under

22   certain circumstances, the defendant can waive his or her

23   right to appeal, and that type of a waiver may be enforceable.

24   However, if you believe that the waiver that is in your plea

25   agreement is not enforceable, you can appeal the sentence and

USCA11 Case: 14-10483 Document: 26 Date Filed: 07/13/2015 Page: 43 of 260
Case 4:07-cr-00337-VEH-SGC Document 27 Filed 03/05/08 Page 10 of 30

10

1    present that theory to the appellate court.

2        When you signed the plea agreement, did you understand

3    that you were giving up some or all of your rights to appeal?

4            THE DEFENDANT: Yes, ma'am.

5            THE COURT: Do you understand that the U.S.

6    Attorney's Office is required to comply with any obligations

7    imposed upon it by the plea agreement, but that the plea

8    agreement is not binding on the Court Or the Judge?

9            THE DEFENDANT: Yes, ma'am.

10           THE COURT: In other words, do you understand, Mr.

11   Vasiloff, that if I accept your plea of guilty, when I impose

12   a sentence, I could structure a sentence that is totally

13   consistent with the plea agreement or recommendations made by

14   the U.S. Attorney's Office, or I could structure a sentence

15   that could be viewed as substantially more severe or

16   substantially less severe than the contemplated sentence, and

17   yet you would have no right to withdraw the plea of guilty you

18   were in the process of entering? Do you fully understand

19   that?

20           THE DEFENDANT: Yes, ma'am.

21           THE COURT: Other than what is set forth in the plea

22   agreement, has anyone promised you anything to encourage you

23   to enter this plea of guilty?

24           THE DEFENDANT: No, ma'am.

25           THE COURT: Has anyone threatened you in anyway to

1   encourage you to enter this plea of guilty?

2          THE DEFENDANT:  No, ma'am.

3          THE COURT:  Do you understand that if the Court

4   accepts your plea of guilty, all that remains is for a

5   sentence to be imposed?

6          THE DEFENDANT:  Yes, ma'am.

7          THE COURT:  I am confident that your attorney has

8   discussed with you the charges asserted in the indictment and

9   the maximum penalties that you could face; however, part of my

10  responsibility today is to make sure that you do indeed

11  understand the charges against you, what the government would

12  have to prove at a trial, and the possible penalties that you

13  could face.  Therefore, I want to go over those matters with

14  you.

15      Do you understand that the maximum penalties include as

16  to Counts 1 through 21:  A fine of not more than $250,000.

17  And this applies to each count, so there's 21 counts.  So

18  that's 21 times $250,000.  Custody of not less than 15 years

19  and not more than 30 years; again that is each count.

20  Further, if you have a prior conviction of certain types of

21  related offenses, then the custodial term becomes not less

22  than 25 years and not more than 50 years.  And if you have two

23  prior convictions of certain related offenses, then the

24  custodial term becomes not less than 35 years and not more

25  than life.

1     There is no allegation that anyone died as a result of

2   anything that Mr. Vasiloff did?

3           MS. BURRELL:  No, Your Honor.

4           THE COURT:  All right.  Your supervised release

5   period following your term of custodial confinement under

6   Counts 1 through 21 for each count is any term of years not

7   less than five years and not more than life.  There is an

8   assessment fee of $100 for each count.  Restitution does

9   apply, and the guidelines also apply.

10     As to Count 22, the maximum penalty is a fine of not more

11   than $250,000.  The custodial term is not more than ten years,

12   however, if you had been convicted on one or more prior

13   instances of certain related offenses, then the maximum

14   penalty under Count 22 becomes not less than ten and not more

15   than 20 years.  Your custodial term would be followed by

16   supervised release term of any term of years not less than

17   five years and not more than life.  There is an assessment fee

18   of $100.  Restitution does apply, and the guidelines although

19   advisory also apply.

20     Count 23 is a forfeiture count, and I am going to ask you

21   if you understand the property that the government -- I'll ask

22   you later if you understand the property that the government

23   seeks forfeiture from you regarding.  We'll go over that

24   separately, but it is not a custodial count; it is a

25   forfeiture count where you would lose assets.  Assets would be

```
 1    taken from you.
 2         Do you understand the maximum penalties that I have just
 3    outlined?
 4              THE DEFENDANT:  Yes, ma'am.
 5              THE COURT:  Do you also understand that in
 6    determining a sentence, the Court must consider applicable
 7    sentencing guidelines but may depart from those guidelines?
 8              THE DEFENDANT:  Yes, ma'am.
 9              THE COURT:  Have you had sufficient opportunity and
10    time to discuss the guidelines and the fact that they are
11    merely advisory with your attorney?
12              THE DEFENDANT:  Yes, ma'am.
13              THE COURT:  Mr. Tuten, have you completely discussed
14    with and advised Mr. Vasiloff regarding the sentencing
15    guidelines and the fact that they're merely advisory, that is,
16    not binding on this Court?
17              MR. TUTEN:  Yes, Your Honor, I have.
18              THE COURT:  Thank you.
19         Mr. Vasiloff, do you also understand that you have a
20    right to insist upon a plea of not guilty?
21              THE DEFENDANT:  Yes, ma'am.
22              THE COURT:  Do you understand that if you plead not
23    guilty, the burden is upon the government to prove your guilt
24    to a jury beyond a reasonable doubt at a trial where you would
25    have the right to the assistance of a lawyer and the right not
```

 1    to be compelled to incriminate yourself or give evidence

 2    against yourself, but that with this plea of guilty, there

 3    will be no right to confront and cross-examine the witnesses

 4    and the evidence?  Do you understand that you are giving up

 5    all those rights and protections?

 6             THE DEFENDANT:  Yes, Your Honor.

 7             THE COURT:  Is there anything, Mr. Vasiloff that

 8    prevents you from understanding anything that I am saying to

 9    you at this time?

10             THE DEFENDANT:  No, Your Honor.

11             THE COURT:  Is there anything that prevents you from

12    understanding anything your attorney says to you when he

13    discusses this matter with you?

14             THE DEFENDANT:  No, Your Honor.

15             THE COURT:  Is there anything that prevents you from

16    understanding the nature of the charges against you?

17             THE DEFENDANT:  No, Your Honor.

18             THE COURT:  Is there anything that prevents you from

19    understanding the nature and purpose of these proceedings here

20    today?

21             THE DEFENDANT:  No, Your Honor.

22             THE COURT:  In the indictment in Counts 1 through

23    21, the grand jury charged that on or about a date between the

24    23rd day of June 2006 and the 14th day of August, 2006, in

25    Cherokee County within the Northern District of Alabama, the

```
 1    defendant, Gary Steven Vasiloff did employ, use, persuade,
 2    induce and entice a minor to engage in sexually explicit
 3    conduct for the purpose of producing a visual depiction of
 4    such conduct.  And I will go through specifically the items.
 5    Said visual depiction which was produced using materials that
 6    had been mailed, shipped, and transported in interstate and
 7    foreign commerce in violation of Title 18, United States Code
 8    Section 2251.  In Count 1, the visual depiction is a
 9    photograph that's referred to as Exhibit 1.  In Count 2, the
10    visual depiction is a photograph that's referred to as Exhibit
11    2.  In Count 3, the visual depiction is a photograph that is
12    referred to as Exhibit 3.  In Count 4, the visual depiction is
13    a photograph that's referred to as Exhibit 4.  In Count 5, the
14    visual depiction is a photograph that's referred to as Exhibit
15    5.  In Count 6, the visual depiction is a photograph that's
16    referred to as Exhibit 6.  In Count 7, the visual depiction is
17    a photograph referred to as Exhibit 7.  In Count 8, the visual
18    depiction is a photograph referred to as Exhibit 8.  In Count
19    9, the visual depiction is a photograph that's referred to as
20    Exhibit 9.  In Count 10, the visual depiction is a photograph
21    that's referred to as Exhibit 10.  In Count 11, the visual
22    depiction is a photograph referred to as Exhibit 11.  In Count
23    12, the visual depiction is a photograph that's referred to as
24    Exhibit 12.  In Count 13, the visual depiction is a photograph
25    that's referred to as Exhibit 13.  In Count 14, the visual
```

 1   depiction is a photograph that's referred to as Exhibit 14.

 2   In Count 15, the visual depiction is a photograph that's

 3   referred to as Exhibit 15.  In Count 16, the visual depiction

 4   is a photograph that's referred to as Exhibit 16.  In Count

 5   17, the visual depiction is a photograph that's referred to as

 6   Exhibit 17.  In Count 18, the visual depiction is a photograph

 7   referred to as Exhibit 18.  In Count 19, the visual depiction

 8   is a photograph referred to as Exhibit 19.  In Count 20, the

 9   visual depiction is a photograph referred to as Exhibit 20.

10   In Count 21, the visual depiction is a photograph referred to

11   as Count 21.

12        Have you seen all of those exhibits?

13             THE DEFENDANT:  Yes, ma'am.

14             THE COURT:  In Count 21 -- I'm sorry.  In Count 22,

15   the grand jury charged that on or about the 23rd day of

16   January 2007, in Cherokee County within the Northern District

17   of Alabama, the defendant, Gary Steven Vasiloff, did knowingly

18   possess material that contained images of child pornography

19   that was produced using materials that had been mailed,

20   shipped, and transported in interstate and foreign commerce in

21   violation of Title 18, United States Code Section

22   2252A(a)(5)(B).  In Count 23, the grand jury refers to the

23   allegations of Counts 1 through 22 and states that you are

24   being notified that upon conviction of the offenses listed in

25   Counts 1 and 2 of the indictment, the government is seeking

1  forfeiture of any real or personal property used or intended

2  to be used to promote or commit the commission -- to promote

3  the commission of or to commit the offense alleged in either

4  Count 1 or Count 2 or both.

5      Further, you are notified that if the property that they

6  seek forfeiture of as a result of any act or omission by you

7  can't be located, has been transferred, has been placed beyond

8  the jurisdiction of the Court, has been substantially

9  diminished in value or has been commingled with other party or

10 property which cannot be divided without difficulty, the

11 United States intends to seek forfeiture of any other property

12 that is yours up to the value of the forfeitable property.

13     Before there could be a conviction under Counts 1 through

14 22 and forfeiture under 23 as charged, were those charges to

15 go to a trial, the government would have the burden of proving

16 beyond a reasonable doubt the following:  Title 18, United

17 States Code Section 2251(a) makes it a federal crime or

18 offense for any person to knowingly employ, use, persuade,

19 induce, entice, or coerce any minor to engage in any sexually

20 explicit conduct for the purpose of producing a visual

21 depiction of such conduct when the visual depiction was

22 produced using materials that had been mailed, shipped, and

23 transported in interstate or foreign commerce by any means.

24 You are charged with an offense under 18 U.S.C. Section

25 2251(a) in Counts 1 through 21 inclusive.  You can be found

1    guilty of the offenses charged in Counts 1 through 21

2    inclusive or any of them only if all of the following facts

3    are proved beyond a reasonable doubt.

4        First, that you knowingly employed, used, persuaded,

5    induced, enticed, or coerced any minor to engage in any

6    sexually explicit conduct as charged; second, that you did so

7    for the purpose of producing a visual depiction of such

8    conduct as charged; and third, that the visual depiction was

9    produced using materials that had been mailed, shipped, and

10   transported in interstate or foreign commerce as charged.  And

11   again, the visual depictions are the exhibits that are listed

12   in each count, and you said you had seen those exhibits.

13           THE DEFENDANT:  Yes, ma'am.

14           THE COURT:  The term "minor" means any person under

15   the age of 18 years.  The term "sexually explicit conduct"

16   means actual simulated sexual intercourse whether between

17   persons of the same or opposite sex.  Bestiality,

18   masturbation, sadistic or masochistic abuse, lascivious,

19   exhibition of the genitals or pubic area of any person.  The

20   term "producing" means producing, directing, manufacturing,

21   issuing, publishing, or advertising.  The term "visual

22   depiction" includes but is not limited to undeveloped film and

23   videotape and data stored on computer disk or by electronic

24   means which is capable of conversion into a visual image.

25       The term "interstate or foreign commerce" means movement

1  of property from one state to another state or from one state

2  to another state.  The term "state" includes any state of the

3  United States, District of Columbia, and any commonwealth,

4  territory, or possession of the United States.  The word

5  "knowingly" means that the act had to be done voluntarily and

6  intentionally and not because of a mistake or an accident.

7       In Counts 22, you are charged with violating 18 U.S.C.

8  Section 2252A(a)(5)(B).

9       (Pause.)

10          THE COURT:  Title 18, United States Code Section

11  2252A(a)(5)(B), makes it a federal crime or offense for any

12  person to knowingly possess any book, magazine, periodical,

13  film, videotape, computer disk, or any other material that

14  contains an image of child pornography that has been mailed or

15  shipped or transported in interstate or foreign commerce by

16  any means including by computer or that was produced using

17  materials that had been mailed or shipped or transported in

18  interstate or foreign commerce by any means including by

19  computer.

20       You can be found guilty of that offense only if all of

21  the following facts are proved beyond a reasonable doubt.

22  That you knowingly possessed an item or items of child

23  pornography as charged; that such items of child pornography

24  had been transported or shipped or mailed in interstate or

25  foreign commerce including by computer as charged; and that at

1    the time of such possession you believed that such items

2    constituted or contained child pornography.

3         I have already explained interstate or foreign commerce.

4    The term "child pornography" means any visual depiction

5    including any photograph, film, video, picture, or computer or

6    computer-generated image or picture whether mailed, produced

7    by electronic, mechanical, or other means of sexual explicit

8    conduct where the production of such visual depiction involves

9    use of minor engaging in sexually explicit conduct, or such

10   visual depiction has been created, adapted, or modified to

11   appear that an identifiable minor engaged in sexually explicit

12   conduct.  I have explained the term "minor."  I don't think we

13   have an identifiable minor issue.

14        MS. BURRELL:  No, Your Honor, we do not.

15        THE COURT:  I have explained visual depiction.  I

16   have explained sexually explicit conduct, and I have explained

17   knowingly.  The same explanation applies.

18        MS. BURRELL:  Your Honor?

19        THE COURT:  Yes.

20        MS. BURRELL:  May I clarify the question that you

21   just asked me?  We do know who the minor was in these

22   pictures.

23        THE COURT:  Right.  So there's not a charge of

24   having created, adapted, or modified a visual depiction to

25   appear that an identifiable minor.  The charge is there is an

 1    actual minor engaging in sexually explicit conduct.

 2            MS. BURRELL:  That's right, Your Honor.

 3            THE COURT:  Right.  18 U.S.C. Section 2253 which

 4    relates to Count 23 is the forfeiture count, and this title

 5    provides that a person who is convicted of an offense

 6    including the offenses that are listed in Counts 1 and 2 of

 7    the complaint, I'm sorry, the indictment, is subject to the

 8    forfeiture of certain property, specifically the visual

 9    depictions or any book, magazine, periodical, film, videotape

10    or other matters which contains any such visual depiction

11    which was produced, transported, mailed, shipped or received

12    in violation of the law; any property real or personal

13    constituting or traceable to gross profits or other proceeds

14    obtained from such offense; and any property real or personal

15    used or intended to be used to commit or promote the

16    commission of such an offense or any property traceable to

17    such property.

18        Mr. Vasiloff, do you understand the charges against you?

19            THE DEFENDANT:  Yes, ma'am.

20            THE COURT:  Have you had sufficient time to discuss

21    these charges with your attorney, Mr. Tuten?

22            THE DEFENDANT:  Yes, Your Honor.

23            THE COURT:  Are you satisfied with your attorney and

24    the work he has done for you?

25            THE DEFENDANT:  Yes, Your Honor.

1            THE COURT:  Now I need to ask Mr. Tuten.  Mr.

2    Tuten, are you satisfied that Mr. Vasiloff fully understands

3    the charges against him and the consequences of his entering a

4    plea of guilty to those charges?

5            MR. TUTEN:  Yes, Your Honor, I am.

6            THE COURT:  Are you also satisfied that he's

7    knowingly and voluntarily entering his plea of guilty?

8            MR. TUTEN:  Yes, Your Honor, I am so satisfied he

9    does understand that.  We had several opportunities to discuss

10   the indictment.  During those discussions Mr. Vasiloff asked

11   some very good questions which revealed to me that he

12   understood our discussions and was able to contemplate not

13   only the meaning but also the consequences of a guilty plea

14   related in those charges, and upon answering his questions, he

15   told me that he did understand everything that we had

16   discussed.

17           THE COURT:  All right.  Did you just say whether or

18   not you were satisfied that he is knowingly and voluntarily

19   entering his plea of guilty?

20           MR. TUTEN:  Yes, Your Honor.

21           THE COURT:  All right.  Have you had sufficient time

22   to investigate the charges against Mr. Vasiloff, to consider

23   any possible defenses he might have to those charges, and

24   generally to give him counsel and advice?

25           MR. TUTEN:  Yes, I have, Judge.

USCA11 Case: 14-00483 Document: 26 Date Filed: 03/09/2015 Page: 56 of 260
Case 4:07-cr-00337-VEH Document 27 Filed 03/08/2015 Page 23 of 30

23

 1          THE COURT:  All right.  Mr. Vasiloff, I want you to
 2   listen carefully to what the Assistant U.S. Attorney is about
 3   to say because she is now going to outline for you and for me
 4   some of the evidence she would offer to a jury if this case
 5   were to go to a trial.  If she says anything that you do not
 6   think is true or that you do not think she can prove, I want
 7   you to interrupt her and tell me so.  Do you understand?
 8          THE DEFENDANT:  Yes, Your Honor.
 9          THE COURT:  You may raise your hand or you may have
10   your attorney, Mr. Tuten, let me know what you feel Ms.
11   Burrell has said that is not true, is incorrect, that you
12   disagree with or that you do not believe the government can
13   prove.  Now, listen very closely.
14       Ms. Burrell, what would the government expect to prove
15   were this case to proceed to trial?
16          MS. BURRELL:  Your Honor, had we gone to trial, the
17   government would have proven that the Alabama Department of
18   Human Resources Assessment of Children at Risk Officials
19   received information and reported the same to the Cherokee
20   County Sheriff's Office, which I will refer to as CCSO,
21   advising that Gary Steve Vasiloff had taken nude photographs
22   of his stepdaughter, age 14, using a dildo and posing in other
23   rude and lascivious positions and had downloaded the photos
24   from his digital camera onto his personal computer.  It was
25   also alleged that the victim had been given alcoholic

1    beverages before the pictures were taken.

2        On January 23rd, 2007, the CCSO executed a state search

3    warrant at Vasiloff's residence.  Vasiloff's computer was

4    seized along with other items of evidence including a digital

5    camera and a dildo.  The CCSO utilized the computer analysis

6    services of the Alabama Computer Forensic Lab to analyze

7    Vasiloff's computer.  Vasiloff's computer was analyzed and 21

8    images of child pornography depicting the victim were

9    discovered.  Seven additional images of the victim depicting

10   breast nudity were also discovered.  In numerous of these

11   pictures, the victim can be seen consuming alcoholic

12   beverages, which she says and would have testified to were

13   given to her by Vasiloff.  The images were produced by a

14   camera which was manufactured in the People's Republic of

15   China.

16       The FBI initiated its investigation into the matter after

17   receiving investigating reports from the CCSO on July 17th of

18   2007.  On July 31st, 2007, an examiner with the Alabama

19   Computer Forensic Lab provided the FBI with a report of

20   examination of Vasiloff's personal computer.  The FBI reviewed

21   the report on July 31st, 2007 and confirmed that the images of

22   child pornography were in fact of the victim in question.

23       On August 8th of 2007, Vasiloff was arrested on a federal

24   complaint charging him with possession of child pornography.

25   After waiving his rights pursuant to Miranda, he confessed to

 1    producing the images of a child, depicting his stepdaughter.

 2    He admitted that the images had been taken at a deceased

 3    relative's abandoned house in Cherokee County, Alabama,

 4    between the dates of June 23rd, 2006 and August 14th of 2006.

 5    He also turned over the camera used to produce the images.

 6              THE COURT:  Mr. Vasiloff, you have heard Ms. Burrell

 7    outline briefly certain of the facts the government would

 8    expect to prove at trial.  Are these facts substantially

 9    correct?

10              THE DEFENDANT:  Yes, Your Honor.

11              THE COURT:  She said that you made some confessions

12    and admissions after you were arrested and after you had

13    waived your rights pursuant to Miranda versus Arizona.  Did

14    you, before you confessed to producing the images and admitted

15    the images had been taken at a deceased relative's abandoned

16    house, were you advised of your rights under that case?

17              THE DEFENDANT:  Yes, Your Honor.

18              THE COURT:  And did you waive those rights?

19              THE DEFENDANT:  Yes, Your Honor.

20              THE COURT:  Were any threats or promises associated

21    with the statements that you made after you were arrested

22    relating to your confessions and admissions?

23              THE DEFENDANT:  No, Your Honor.

24              THE COURT:  Gary Steven Vasiloff, how do you plead?

25              THE DEFENDANT:  Guilty.

1          THE COURT:  Did you do the things the Assistant U.S.

2     Attorney said you did?

3          THE DEFENDANT:  Yes, Your Honor.

4          THE COURT:  Mr. Vasiloff, do you understand that you

5     are not required to enter a plea of guilty and you are free at

6     this time, but this would be the last time you will be free to

7     withdraw your plea of guilty and reinstate your earlier plea

8     of not guilty?  Do you understand that?

9          THE DEFENDANT:  Yes, Your Honor.

10          THE COURT:  Have you heard anything here today that

11     causes you to want to reconsider your decision to enter a plea

12     of guilty?

13          THE DEFENDANT:  No, Your Honor.

14          THE COURT:  Do you still desire to enter a plea of

15     guilty?

16          THE DEFENDANT:  Yes, Your Honor.

17          THE COURT:  Mr. Vasiloff, how do you plead to Count

18     1 of the indictment as charged?

19          THE DEFENDANT:  Guilty.

20          THE COURT:  How do you plead to Count 2 of the

21     indictment as charged?

22          THE DEFENDANT:  Guilty.

23          THE COURT:  How do you plead to Count 3 of the

24     indictment as charged?

25          THE DEFENDANT:  Guilty.

```
 1              THE COURT:  How do you plead to Count 4 of the
 2   indictment as charged?
 3              THE DEFENDANT:  Guilty.
 4              THE COURT:  How do you plead to Count 5 of the
 5   indictment as charged?
 6              THE DEFENDANT:  Guilty.
 7              THE COURT:  How do you plead to Count 6 of the
 8   indictment as charged?
 9              THE DEFENDANT:  Guilty.
10              THE COURT:  How do you plead to Count 7 of the
11   indictment as charged?
12              THE DEFENDANT:  Guilty.
13              THE COURT:  How do you plead to Count 8 of the
14   indictment as charged?
15              THE DEFENDANT:  Guilty.
16              THE COURT:  How do you plead to Count 9 of the
17   indictment as charged?
18              THE DEFENDANT:  Guilty.
19              THE COURT:  How do you plead to Count 10 of the
20   indictment as charged?
21              THE DEFENDANT:  Guilty.
22              THE COURT:  How do you plead to Count 11 of the
23   indictment as charged?
24              THE DEFENDANT:  Guilty.
25              THE COURT:  How do you plead to Count 12 of the
```

USCA11 Case: 14-10483 - Document: 26 - Date Filed: 07/13/2015 - Page: 61 of 260
Case 4:07-cr-00337-VEH-PSGC Document 27 Filed 03/05/08 Page 28 of 30

28

```
 1      indictment as charged?

 2              THE DEFENDANT:  Guilty.

 3              THE COURT:  How do you plead to Count 13 of the

 4      indictment as charged?

 5              THE DEFENDANT:  Guilty.

 6              THE COURT:  How do you plead to Count 14 of the

 7      indictment as charged?

 8              THE DEFENDANT:  Guilty.

 9              THE COURT:  How do you plead to Count 15 of the

10      indictment as charged?

11              THE DEFENDANT:  Guilty.

12              THE COURT:  How do you plead to Count 16 of the

13      indictment as charged?

14              THE DEFENDANT:  Guilty.

15              THE COURT:  How do you plead to Count 17 of the

16      indictment as charged?

17              THE DEFENDANT:  Guilty.

18              THE COURT:  How do you plead to Count 18 of the

19      indictment as charged?

20              THE DEFENDANT:  Guilty.

21              THE COURT:  How do you plead to Count 19 of the

22      indictment as charged?

23              THE DEFENDANT:  Guilty.

24              THE COURT:  How do you plead to Count 20 of the

25      indictment as charged?
```

USCA11 Case: 14-00483-VEP Document 26 Date Filed: 03/03/2015 Page: 62 of 260
Case 8:07-cr-00337-VEP Document 27 Filed 08/09/08 Page 29 of 30

29

1           THE DEFENDANT:  Guilty.

2           THE COURT:  How do you plead to Count 21 of the

3    indictment as charged?

4           THE DEFENDANT:  Guilty.

5           THE COURT:  How do you plead to Count 22 of the

6    indictment as charged?

7           THE DEFENDANT:  Guilty.

8           THE COURT:  Do you consent to the forfeiture under

9    Count 23?

10          THE DEFENDANT:  Yes, Your Honor.

11          THE COURT:  The Court finds that the defendant's

12   plea of guilty is freely, voluntarily, understandingly, and

13   knowingly offered by him, and that the requisite factual basis

14   for the plea does exist.  The plea of guilty is accepted by

15   the Court as to Counts 1 through 22 inclusive, and the

16   defendant's consent to forfeiture under Count 23 is accepted

17   by the Court.

18       The probation office will was probably need eight weeks

19   to complete the presentence investigation report.  The

20   defendant and his attorney are then allowed 35 days to review

21   that report.  I will enter an order setting sentencing

22   approximately ninety days from today.  Actually, I can give

23   you the exact date:  January 16th, 2008 at 9:30.

24       I will now call your attention to the fact that my

25   written order will require you to file any objections to the

USCA11 Case: 14-10483   Document: 26   Date Filed: 07/13/2015   Page: 63 of 260
Case 4:07-cr-00337-VEH-SGC   Document 27   Filed 03/05/08   Page 30 of 30

30

1    presentence report in writing with the Clerk of Court and
2    serve the probation office with a copy within 14 calendar days
3    from the date you receive the report.  The same deadlines
4    apply to the government.  I will not consider any objections
5    not filed in advance as ordered unless you can provide me with
6    a good reason for not complying with my order.  You should
7    receive the order setting sentencing today.
8        Mr. Vasiloff, you are remanded to the custody of the
9    United States Marshal.  That concludes this hearing.
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

**28**

FILED

2008 Mar-06  AM 08:09
U.S. DISTRICT COURT
N.D. OF ALABAMA



UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ALABAMA

MIDDLE DIVISION

```
UNITED STATES OF AMERICA,        *
        Plaintiff,               *
                                 *  Case No. CR-07-VEH-0337-M
           v.                    *
                                 *
GARY STEVEN VASILOFF,            *     Birmingham, Alabama
                                 *      January 16, 2008
        Defendant.               *        9:30 a.m.
*********************************
```

TRANSCRIPT OF SENTENCING HEARING
BEFORE THE HONORABLE VIRGINIA EMERSON HOPKINS
UNITED STATES DISTRICT JUDGE

```
Court Reporter:          Chanetta L. Sinkfield, RMR
                         325 United States Courthouse
                         1729 Fifth Avenue North
                         Birmingham, AL 35203
```

USCA11 Case: 14-10431    Document: 26    Date Filed: 07/13/2015    Page: 66 of 260
Case 4:07-cr-00337-VEH-SGC   Document 28   Filed 03/05/08   Page 2 of 25

2

```
 1                              APPEARANCES
 2

 3
      FOR THE PLAINTIFF:     ALICE H. MARTIN
 4                           U.S. ATTORNEY'S OFFICE
                             Assistant U.S. Attorney,
 5                           MARY STUART BURRELL
                             400 Meridian Street, Suite 304
 6                           Huntsville, Alabama 35801

 7
      FOR THE DEFENDANT:     ROBERT B. TUTEN, ESQ.
 8                           TUTEN LAW OFFICES
                             223 East Side Square
 9                           Huntsville, Alabama 35801

10

11

12

13

14

15

16

17

18

19

20

21

22

23
      Court Reporter:        Chanetta L. Sinkfield, RMR
24                           325 United States Courthouse
                             1729 Fifth Avenue North
25                           Birmingham, Alabama 35203
```

1

P R O C E E D I N G S

2

3       THE COURT:  Good morning.  The matter before the

4   court is the case of the United States of America versus Gary

5   Steven Vasiloff, case number 07-337.  Would counsel please

6   identify yourselves for the record?

7       MS. BURRELL:  Mary Stewart Burrell with the U.S.

8   Attorney's Office.

9       MR. TUTEN:  Robert Tuten from Huntsville, Alabama

10  for Mr. Vasiloff.

11      THE COURT:  Mr. Tuten, have you and your client had

12  35 days in which to review the presentence report?

13      MR. TUTEN:  We have, Your Honor.

14      THE COURT:  Do you have any objections to any of the

15  content of the report?

16      MR. TUTEN:  No, Your Honor.  The report is thorough

17  and complete as usual.

18      THE COURT:  In compliance with Justice Breyer's

19  majority opinion in United States versus Booker, this Court,

20  while not bound to apply the guidelines has consulted them and

21  has taken them into account on the issue of the appropriate

22  range of sentence to be imposed in this case.  In that regard,

23  the Court notes that in his plea agreement, the defendant

24  admitted certain facts that bear upon the computation of his

25  offense level under the guidelines.

USCA11 Case: 14-10483   Document: 26   Date Filed: 07/13/2015   Page: 68 of 260
Case 7:07-cr-00037-VEH-SGC   Document 28   Filed 03/05/08   Page 4 of 25

4

1       I am sure you haven't seen it, Mr. Tuten, because it

2   wasn't filed until yesterday and I didn't sign it until this

3   morning, but I did grant the government's motion for

4   preliminary order of forfeiture.

5       MR. TUTEN:  Yes, Your Honor.  I was anticipating

6   that and Ms. Burrell and I had spoken about that.  I did not

7   see it, but she did inform me of it and showed me those

8   pleadings this morning.  We were anticipating that and Mr.

9   Vasiloff consented to the forfeiture, Your Honor.  There's

10   really not an issue, but I appreciate you bringing that to our

11   attention.

12       THE COURT:  Well, it will become final at this

13   sentencing.

14       MR. TUTEN:  Yes, Your Honor.

15       THE COURT:  All right.  There being no objections,

16   the Court adopts the factual statements contained in the

17   presentence report and makes specific findings that the

18   guidelines offense level is 43, the criminal history category

19   is 1, and the advisory guideline imprisonment term is life.

20   However, the defendant will be sentenced within the statutory

21   limitations set forth in U.S. Sentencing Guidelines Section

22   5G1.2(d).  Further, the supervised release period is any term

23   of years not less than five years up to life, and the fine

24   range is from $25,000 to $250,000.  Restitution is not being

25   sought in this case.  Are there any motions for departure?

1          MS. BURRELL:  None from the government, Your Honor.

2          MR. TUTEN:  Judge, yes, for Mr. Vasiloff.

3          THE COURT:  I am also going to ask if there are

4    motions for variance.  And a motion for a departure is when

5    you ask me to go up or down, and since you represent the

6    defendant it will be down, for a reason that it's a

7    guidelines-based reason.  A variance would be when you ask me

8    to go down based simply on the reasonableness of the sentence.

9          MR. TUTEN:  That's correct, Your Honor.  And I think

10   our position would be more in the area of a variance than a

11   departure.

12         THE COURT:  That's what I was anticipating.  What I

13   am going to do is ask you if you have anything to say in

14   mitigation or otherwise, all of you, and then I am going to

15   ask if there are any motions for a variance.  Or perhaps you

16   want to argue your motion for variance as part of your

17   mitigation statement, and that would be fine.

18         MR. TUTEN:  Yes, ma'am.

19         THE COURT:  Mr. Tuten, do you have anything to say

20   in mitigation or otherwise before the Court pronounces

21   sentence in this case?

22         MR. TUTEN:  I do, Your Honor, and Mr. Vasiloff, as

23   well would like to make a statement to the Court at the

24   appropriate time.  But I guess primarily he is concerned that

25   the Court understands his remorse of what has happened here.

1    It's certainly very serious.  He acknowledges that and he

2    knows that this is something that he never should have done,

3    but unfortunately it has happened, and we now have to deal

4    with it, and he is prepared to do so.

5         But Judge, there are certain things about the facts of

6    this case and I think would suggest to the Court a more

7    lenient sentence than what the guidelines suggest and possibly

8    what other things about the case might suggest.  First of all,

9    Your Honor, Mr. Vasiloff has virtually no adult criminal

10   record.  I think the only thing probation was able to find was

11   a driver's license violation some years ago.  Now he himself

12   admitted to the probation department that he had had a

13   juvenile offense many, many years ago regarding some sort of

14   stolen automobile.  And they were not able to confirm or

15   verify that, of course, maybe one because it was a juvenile

16   case, but also because of how long ago that may have happened.

17   But he readily admitted that to the Court, Your Honor, and to

18   the probation department.

19        He is over 50 years old.  It is very unlikely that he is

20   going to be in any more trouble, certainly, not be before a

21   court again.  He has accepted the responsibility for what he's

22   done in this case.  He did that from the very beginning, long

23   before the federal government was involved in the

24   investigation.

25        I have not been able to get anyone from the government to

1    confirm or deny this one way or the other, but Mr. Vasiloff

2    states that the photographs that were seized and recovered by

3    the investigators had been deleted some time before this

4    investigation even began.  Now, I don't understand the

5    computer science behind it, Your Honor, but apparently when

6    you hit the delete button on a computer and erase something

7    from the random access memory of the computer, it doesn't

8    necessarily wipe it off the hard drive.  And about the only

9    way that would ever happen if the memory of the hard drive of

10    that computer is filled up with other matter.

11        Now, I guess that the investigators don't see a

12    difference there and from their standpoint maybe there's not,

13    but I think it's as mitigating for this Court to realize that

14    he had deleted these and did not intend to save them whether

15    they were still in the recesses of the computer memory or not.

16    He wasn't intending to trade, sell, distribute, or keep these.

17    And they had been deleted when they were recovered by the

18    computer lab off of that computer.

19        Now, further, Your Honor, this is an extraordinary family

20    situation, and I guess it's possible that the family situation

21    may have contributed to these offenses having occurred.  But

22    as you know from reading this report, Mr. Vasiloff's wife is

23    in very poor health.  She's been in and out of the hospital a

24    lot and apparently was in the hospital when he was arrested.

25    Now, I understand that she was to be back in the hospital very

1    recently within the last few weeks for more surgery.  I don't
2    know the details of that, but you know the family was
3    disintegrating.  Mr. Vasiloff apparently quit various
4    employment in order to stay home and take care of his wife and
5    during that time is when these offenses occurred.

6         But again, Judge, I don't think Mr. Vasiloff had any
7    specific criminal intent in taking these pictures to do
8    anything illegal other than take the pictures, of course, and
9    I'm sure if he had realized the criminality of that at the
10   time he was doing it, he would not have done it.  But he was
11   not intending to distribute these.  He was not intending to
12   sell them.  And quite frankly, he can't explain why he did it.
13   And you know I asked him what he was thinking, and he simply
14   replied, you know, I don't guess I was thinking.  But you know
15   there are some extraordinary circumstances here, Your Honor,
16   and we would simply call the Court's sentence of what is fair
17   and just when you decide what to do here.

18        Now, in Mr. Vasiloff throwing himself on the mercy of the
19   Court, other than a sentence of fairness, the only thing I can
20   really come up with that might help the Court in this matter
21   is a recent case of U.S. versus McBride from the appeal number
22   if 06-00012, which was decided recently by the 11th Circuit,
23   and I'm sorry, I do not have a more specific cite to that.
24   But in this case, the defendant had been charged with
25   possessing 981 images and 45 separate videos involving child

```
 1   pornography, but also distribution, and the Court in that
 2   case, Judge, saw fit to be lenient.  The judge's decision was
 3   apparently appealed by the United States, but the judge was
 4   affirmed, and I think that at least gives a basis for this
 5   Court to use some discretion; to see this case for what it
 6   really is and to be lenient with Mr. Vasiloff.
 7               THE COURT:  Do you have a copy of that case?
 8               MR. TUTEN:  No, Your Honor.  I merely have the cite
 9   to it, Your Honor.  I was not able to retrieve the full cite.
10               THE COURT:  All right.  Mr. Vasiloff, do you have
11   anything to say before the Court pronounces sentence in this
12   case?
13               THE DEFENDANT:  Yes, ma'am.  I wrote a statement.  I
14   just wish to apologize to this Court and my friends and
15   family, especially my wife and my daughter and my mother for
16   embarrassing them and shaming the family name.  And I wanted
17   the Court to know that I did realize that I had done a
18   terrible thing.  And being that the computer was hooked up to
19   the internet, I was worried about electronic theft, and that
20   was the reason I deleted that, and what I had done was
21   terrible.  I had deleted it from the computer so it wouldn't
22   be stolen and posted on the internet on sites.  And if the
23   Court will just give me another chance to make things right,
24   and my family that might forgive me later on.
25               THE COURT:  Thank you, Mr. Vasiloff.
```

1    All right.  Does the government have anything it would
2    like to say at this time?
3         MS. BURRELL:  Your Honor, we would just like to
4    briefly respond to some of the things that Mr. Tuten said
5    because of the government's version of what happened in this
6    case is greatly different from the things that Mr. Tuten has
7    said.  And I have got a witness here that could testify to
8    this.  This is special agent Ed Sims of the FBI that
9    investigated the case, and if the Court would indulge me, I
10   would just assume just make a proffer to the Court of what our
11   investigation in this case showed.
12        THE COURT:  That's fine.
13        MS. BURRELL:  Your Honor, Mr. Tuten began by saying
14   that Mr. Vasiloff was very remorseful for the things that he
15   had done.  Mr. Vasiloff might be remorseful now, but he was
16   not remorseful even up until the time that he was questioned
17   by the FBI.  Now, Mr. Tuten says that . . .
18        THE COURT:  Okay.  Why do you say that?
19        MS. BURRELL:  I am about to tell you, Your Honor.
20        THE COURT:  Okay.
21        MS. BURRELL:  Mr. Tuten says that Mr. Vasiloff
22   accepted responsibility even before the police questioned him
23   about that.  That is not so, Your Honor.  Mr. Vasiloff -- well
24   let me back up.  This child was his 14-year-old stepdaughter,
25   but she -- It was really more like a father-daughter

USCA Case 17-00483-VE Doc Court Document 26 Date Filed 03/03/2015 Page 75 of 260

1  relationship in that this was the only father that she had

2  ever known.

3       Your Honor, she was removed from the home at some point

4  because of these allegations, and when she was removed from

5  the home, she told a person who was acting as her foster

6  mother what her stepfather had been doing to her, and she

7  alleged that he had given her a dildo and taught her how to

8  use it; had taken pictures of her; had given her alcoholic

9  beverages.  She also alleges that he gave her controlled

10  substances when this was happening and fully disclosed the

11  activities that had been going on in the house.  Well, DHR was

12  immediately contacted and a series of court appearances began

13  in an effort to take this child away from the family; to get

14  her somewhere that she would be safe.  Well, she was appointed

15  a guardian ad litem, and I had personally spoke to the

16  guardian ad litem, and it was related to me that during these

17  hearings, Mr. Vasiloff would come to the hearings and relate

18  that the child was a habitual liar and said that -- gave a

19  bunch of different reasons about why she had fabricated these

20  stories.  He said that she had a mental illness.  He said that

21  she had had a physical illness wherein she had gotten a really

22  high fever and it caused her to hallucinate and she had

23  hallucinated these things.  He said that she had been taking

24  medication and even produced the medication in court at one

25  point; said that one of the side effects of the medication was

USCA11 Case: 14-10483    Document: 26    Date Filed: 07/13/2015    Page: 76 of 260
Case 4:07-cr-00337-VEH-SGC    Document 28    Filed 03/03/08    Page 12 of 25

12

1    that it made her hallucinate and make up things and be a
2    habitual liar.  So not only did he sexually abuse this child
3    by taking these horrendous pictures -- Your Honor, I have got
4    the pictures, and I would ask that before you make a decision
5    you look at them so that you know what we're talking about.
6    Not only did he sexually abuse this child by taking these
7    horrendous pictures, he also again abused the child when they
8    would go to court and make these allegations about her lying
9    about these activities and given all of these bizarre reasons
10   about why she was lying.  So Your Honor, he didn't accept
11   responsibility until the FBI came and laid the pictures out in
12   front of him and said the child is not lying.  We found the
13   pictures.  That was the point when he admitted what he had
14   done and began to accept responsibility and probably feel
15   remorse.

16       Your Honor, I will tell you this, when they initially
17   talked to Vasiloff, when the agent initially talked to
18   Vasiloff, until he was confronted and shown the pictures, he
19   continued to admit that the pictures didn't exist.  It was not
20   until he was shown the pictures that he broke down and
21   admitted what he had done.  So that's the reason, Your Honor,
22   that we say that he didn't accept responsibility until he was
23   confronted with the actual evidence, and that is probably when
24   he began to feel remorse.  If he had felt remorse before that,
25   he would have admitted long before this what he had done to

1   this child and not put that child through all the DHR custody

2   hearings and allege that she was, all the things that he had

3   alleged and that she was making this up.

4      Your Honor, we would ask that you take a minute and look

5   at the pictures, please.

6        THE COURT:  I am always willing to look at pictures

7   because I think --

8        MS. BURRELL:  May I approach?

9        THE COURT:  -- because I think both the defendant

10   and the victim deserve my doing that.  It's not something I

11   want to do, but I will do it.  You may approach.

12        MS. BURRELL:  Thank you.

13        MR. TUTEN:  May I briefly respond?

14        THE COURT:  Mr. Tuten, do you deny that any of these

15   pictures are pictures that were taken from -- have you seen

16   the pictures?

17        MR. TUTEN:  Yes, Your Honor, I have, and we do not

18   deny those, Your Honor.

19        THE COURT:  Okay.  I will let you respond, but I

20   think I will look at the picture first, and then I will let

21   you respond.

22        MR. TUTEN:  Yes, ma'am.

23        THE COURT:  I don't know that Ms. Burrell was --

24   were you through?

25        MS. BURRELL:  I am through, Your Honor.  Thank you.

1           THE COURT:  Okay.

2      (Pause.)

3           THE COURT:  Mr. Tuten, you can respond.

4           MR. TUTEN:  Judge, let me first say that if I have

5  misstated any facts, then I humbly apologize to the Court and

6  to the prosecutor, but I believe what I said was that Mr.

7  Vasiloff had deleted these photos long before the federal

8  investigators became involved.  And certainly from that point,

9  he did accept responsibility.

10     Now, as far as the DHR case goes, Your Honor, I was not

11  involved in that.  Likewise, I have talked to various other

12  attorneys that were involved.  It's my understanding that Mr.

13  Vasiloff was not a party to any of those; only being the

14  stepfather of the children that were involved in that.  And

15  that there were numerous other issues other than some of the

16  things that may have been the basis for the federal

17  investigation leading to the seizure of these pictures.  But

18  other than that, I still stand by what I told you earlier.

19     Oh, one other thing, Your Honor, that Mr. Vasiloff asked

20  me to tell you and that is that this young lady did have viral

21  encephalitis and was in the hospital with that for a number of

22  days during the time of some of this investigation.  And I

23  believe she was in the hospital at the time that she made some

24  of the disclosure about the photos.

25     (Long pause.)

USCA11 Case: 14-10483    Document: 26    Date Filed: 07/13/2015    Page: 79 of 260
Case 4:07-cr-00337-VEH-SGC    Document 26    Filed 03/05/08    Page 15 of 25

15

 1              THE COURT:  First of all, there's been no motion for
 2    departure, but the Court expressly notes that even without a
 3    motion, the Court has the authority to impose the sentence
 4    other than that recommended by the advisory guidelines.
 5    However, the Court finds no reason to depart from the sentence
 6    called for by application of the guidelines inasmuch as the
 7    facts found are the kind contemplated by the Sentencing
 8    Commission.  In the absence of a motion for a departure
 9    indicates to me that counsel are in agreement with the fact
10    that the only argument that the defendant is making is that
11    the sentence -- that the guidelines calculation is not
12    reasonable under the facts and circumstances of this case.
13              MR. TUTEN:  Yes, Your Honor.  That's correct.
14              THE COURT:  All right.  Now, the way the guideline
15    sentence was determined is based on statutory minimums for
16    Counts 1 through 21 stacked, and then the statutory maximum
17    for Count 22 is also stacked or made to run consecutively.
18    And so you're saying that it's just inappropriate to stack in
19    this case or that that number is just excessive in this case?
20              MR. TUTEN:  Your Honor, I think it is under the
21    facts and circumstances of this case and that this particular
22    situation is probably not exactly what those guidelines
23    contemplated when those were initially enacted.
24              THE COURT:  But wouldn't you agree with me that I
25    can't go below the statutory -- You are saying I should just

1  impose one statutory minimum or something less than all the
2  statutory minimums?

3  MR. TUTEN:  Yes, Your Honor.

4  THE COURT:  What you're objecting to is the stacking
5  of the statutory minimums.

6  MR. TUTEN:  Yes, Your Honor.

7  THE COURT:  All right.  I don't see any reason to
8  vary in this case.  It is an extraordinarily long sentence.
9  It's 3,900 months is what it comes to, which is 325 years,
10  which is just basically another way of saying life.

11  The fact that Mr. Vasiloff used his position as the
12  stepfather or surrogate father -- and by surrogate father, I
13  mean more than stepfather.  There was a close relationship
14  where the child looked on Mr. Vasiloff as the person who had
15  been in the role of her father makes this worst.  Although any
16  child should not go through what this child went through, but
17  the fact that Mr. Vasiloff was through all intensive purposes
18  her father makes this worst.  The fact that the mother was in
19  the hospital just gave Mr. Vasiloff more access to his
20  stepdaughter without any fear of discovery by his wife.

21  I am sympathetic to the fact that his wife may need him
22  to help take care of her, especially if her leg is amputated,
23  which the presentence report indicates.  We don't know whether
24  that's going to happen or not.  People do live with
25  amputations, and the only time so far that I have varied based

USCA11 Case: 14-00483-V Document: 26 Date Filed: 03/08/2015 Page: 81 of 260
Case 4:07-cr-00387-VEH Document 26 Filed 03/08/08 Page 2 of 25

17

1  on a family situation is where the defendant was the only

2  caregiver and he had a child who the government conceded would

3  die if the child didn't have around-the-clock care and it was

4  a situation involving unlicensed sale of firearms, which is

5  certainly a serious offense, but the child wasn't, whose life

6  was being saved, was not the victim in the case.

7      Now, I'm aware that the child has been removed from the

8  home and her brother has been removed from the home.  So this

9  defendant will have no access assuming he were released to

10  this child unless the maternal great-grandmother is totally

11  nuts.

12      But because of the relationship between Mr. Vasiloff and

13  this particular child, it's not only, you know, the production

14  of child pornography or sexual exploitation of a child, but

15  it's sexual exploitation of a child who in everything but a

16  biological sense was the daughter of the perpetrator, and so

17  it's incestuous type.  Well, although I guess technically

18  incest.  It's just that type of violation.  And the level

19  of -- I mean, I am not a psychologist or psychiatrist, but the

20  level of the impact on the victim, in my experience with these

21  cases coming before me, is exacerbated when there is an

22  incestuous type exploitation.  It's extreme in every case.

23  But it seems in my admittedly short experiences exacerbated

24  when it's an incestuous type.

25      So, now I do note that the photographs were taken within

USCA11 Case: 14-10483  Document: 26  Date Filed: 07/13/2015  Page: 82 of 260
Case: 4:07-cr-00337-VEH-SGC  Document: 28  Filed: 03/03/08  Page: 18 of 25

18

1    a relatively short period of time; two months, I think, sixty

2    days.  So it's not like a case which I have had where there

3    was sexual exploitation of children that went on until each

4    child, you know, from a very early age, as early as three

5    until each child turned about ten, then the next younger

6    sibling would become the victim.

7         So I have considered the fact that it was over a short

8    period of time, and that may lessen the damage to the

9    stepdaughter.  I hope.  I hope so.  I would assume that a

10   shorter period of time would be easier to recover from then

11   years of abuse and exploitation.  But he didn't just take

12   pictures of his stepdaughter, he got her to perform sex acts,

13   and they weren't sex acts on him or with him; they were with a

14   dildo.  So I have considered that.  Therefore, I am not going

15   to vary.  And pursuant to the Sentencing Reform Act of 1984,

16   it is the judgment of the Court that the defendant, Gary

17   Steven Vasiloff, is hereby committed to custody of the Bureau

18   of Prisons to be in prison for a term of 360 months for Counts

19   1 through 21, each count, separately, and 120 months as to

20   Count 22 separately with each count to be served consecutively

21   to the other.  The total sentence imposed is 3,900 months

22   pursuant to the U.S. Sentencing Guidelines Section 5G1.2(b).

23   The reason I am imposing the sentence is all the reasons I

24   gave that I am not varying, plus -- Well, it's all the reasons

25   that I am not varying.

1    (Pause.)

2        THE COURT: All right. The probation office has

3    just pointed out to me that I did the math wrong because what

4    I am imposing is the statutory minimum as to Counts 1 through

5    21, and the statutory maximum as to Count 22, and that the end

6    result is 3,900 months. So that's 180 months, which is the

7    statutory minimum as to Counts 1 through 21 separately and 120

8    months as to Count 22, which is the statutory maximum

9    separately with each count to be served consecutively to the

10   other. Total sentence imposed is 3,900 months. So I am not

11   changing the total. I am just, I misstated how I got to the

12   total.

13       Count 23 is a forfeiture count which needs to be

14   addressed. We kind of brought it up in the beginning. Mr.

15   Tuten, I think you said that your client knows about the

16   forfeiture order and has no objection to it becoming final.

17       MR. TUTEN: That's correct, Your Honor. Yes, ma'am.

18       THE COURT: All right. The forfeiture order is

19   final. Having considered the guideline computations and

20   having taken them under advisement, the Court finds that the

21   sentence imposed is sufficient but not greater than necessary

22   to comply with the statutory purposes of sentencing.

23   Furthermore, the sentence is reasonable when considering the

24   following sentencing factors found at 18 U.S.C. 3553(a), the

25   nature and circumstances of the offense -- and I have talked

1    about that in terms of, well, I may not have specifically

2    mentioned that the child was 14 at the time, but I considered

3    that; her relationship with Mr. Vasiloff.  I also considered

4    the fact that Mr. Vasiloff doesn't have any real prior

5    criminal history.  I also considered the fact that the sexual

6    exploitation involved causing the child to perform sex acts on

7    herself, specifically, to penetrate herself with a dildo, in

8    addition to the photographing of her.  To reflect the

9    seriousness of the offense; to promote respect for the law;

10   and to provide just punishment for the offense; sexual

11   exploitation of children -- the avoidance of that, the

12   prohibition of that, and therefore the punishment of that to

13   deter it by others -- certainly Mr. Vasiloff is not going to

14   have an opportunity to do it again -- is about as important as

15   the core value as I think this country has.  And so the

16   offense is extremely serious, and it's reflected in the

17   sentence, and I think that the sentence does provide just

18   punishment for the offense under all the facts and

19   circumstances of this case.

20       As I said, Mr. Tuten, I know that you felt like these

21   were mitigating factors.  I really felt like they were

22   exacerbating factors.  I have also considered the need to

23   promote respect for the law, but given Mr. Vasiloff's prior

24   history, I don't think he is a person who, you know, is just

25   routinely disrespectful of the law.  I have considered the

 1    need to avoid adequate deterrence to criminal conduct by

 2    others.  Certainly, a lower sentence of at least 50 years

 3    would have protected the public from further crimes of this

 4    defendant given his age, but this sentence also will

 5    accomplish that goal.  I have considered the need to avoid

 6    unwarranted sentence disparities among defendants.

 7    Restitution is not an issue.  I am not imposing a fine due to

 8    the defendant's inability to pay.  It is further ordered that

 9    the defendant shall pay the United States a special assessment

10    of $2,200.  The assessment fee is due immediately.

11        If defendant is released from imprisonment, the defendant

12    shall be placed on supervised release for a term of life.

13    While on supervised release, the defendant shall comply with

14    the standard conditions of supervised release of record in

15    this court and the following special conditions.  Due to the

16    information contained in the mental health section of the

17    presentence report, the defendant shall participate in a

18    mental health program under the administrative supervision of

19    the probation officer.  The defendant shall contribute to the

20    cost of mental health treatment unless the probation officer

21    determines that the defendant does not have the ability to do

22    so.

23        Due to the nature of the offenses, the following six

24    conditions are also imposed while on supervised release:  The

25    defendant shall participate under the administrative

1    supervision of the probation officer and the probation
2    officer's computer restriction monitoring program or
3    comparable program in the district of supervision.  The
4    defendant shall not have any unsupervised one-to-one contact
5    with any children under the age of 18 other than his own
6    children.  The defendant shall not engage in the occupation,
7    employment, or voluntary activities which would place him in a
8    position of trust of children under the age of 18.  The
9    defendant shall register and comply with all community
10   notification and requirements and any then applicable local,
11   state, or federal laws to monitoring of those victim
12   sexually-related offenses.  The defendant shall allow the
13   probation officer access to photographs and/or video
14   recordings he may possess.  The defendant, being a felon and
15   being required to register with the sex offender registration
16   notification act, shall suspend its person and any property,
17   house, residence, vehicle, papers, computers, or other
18   electronic communications, other storage devices or media and
19   effects to search any time with or without a warrant by any
20   law enforcement or probation officer with reasonable suspicion
21   concerning a violation of a condition of supervised release or
22   unlawful conduct by the person and by any probation officer in
23   the lawful discharge of the office's supervision or function.
24   The defendant shall participate in an approved mental health
25   treatment program specializing in sex offender treatment under

1    the administrative supervision of the probation officer.  This
2    program may include a psychosexual evaluation, family approved
3    and/or individual counseling, and psychological and clinical
4    polygraph testing.  Results of the polygraph examinations may
5    not be used as evidence in court for the purpose of revocation
6    of supervision that may be considered in the hearing to modify
7    conditions of release.  While participating in treatment, the
8    defendant shall abide by all rules and requirements of the
9    program.  The defendant shall contribute to the cost of
10   treatment and polygraph testing unless the probation officer
11   determines that the defendant does not have the ability to do
12   so.

13       Is there any objection from any party as to the findings
14   of fact, the calculations, the sentence, or the manner in
15   which the sentence was pronounced or imposed other than those
16   previously stated for the record?

17               MS. BURRELL:  None from the government, Your Honor.
18               MR. TUTEN:  None other than previously stated, Your
19   Honor.

20               THE COURT:  All right.  Mr. Vasiloff, you have the
21   right to appeal the sentence imposed within ten days if you
22   believe that the sentence is in violation of the law.
23   However, you did enter into a plea agreement that contains a
24   waiver of some or all of your rights to appeal the conviction
25   and sentence and to appeal collaterally.  The type of waiver

USCA Case #14-00483-VEP Document 26 Document Date Filed 03/05/2015 Page Page of 325 of 260

```
 1   that is in your plea agreement is generally enforceable.
 2   However, if you believe that the particular waiver in your
 3   plea agreement is unenforceable, you can appeal and present
 4   that theory to the appellate court.  With a few exceptions,
 5   any notice of appeal must be filed within ten days of judgment
 6   being entered in your case.  If you are unable to pay the
 7   costs, you may apply for leave to appeal in forma pauperis and
 8   for the appointment of counsel.  If you are allowed by the
 9   Court to proceed on appeal in forma pauperis, upon your
10   request, the Clerk of Court will assist you in preparing and
11   filing a notice of appeal.
12        Are there any requests regarding recommendations to the
13   Bureau of Prisons?  Typical requests might include being sent
14   to a facility where he could get counseling regarding sexual
15   offenses.  Another typical request might be that he be
16   incarcerated at the appropriate facility closest to the place
17   where his wife resides so that he won't lose all contact with
18   his wife.
19             MR. TUTEN:  Judge, he certainly would appreciate
20   being in facilities close to home.  I sort of thought that was
21   generally a given, but he certainly would ask for that, and he
22   will certainly avail himself of any available programs or
23   other such things that may be available to him at any present
24   facility where he is.
25             THE COURT:  I think there's only two in the country
```

 1  that have sex offender treatment programs, and I don't know if

 2  he would qualify, and they are not in Alabama.  And the reason

 3  I don't know whether he would qualify is because his sentence

 4  is so lengthy, and there's a need for these programs, and they

 5  might give priority.  I don't think they might give priority

 6  of when they are going to be released.  The other thing, it

 7  would take him out of Alabama to do that.  So if I were him, I

 8  would prefer to be closest to his wife given the length of his

 9  sentence.

10          MR. TUTEN:  Yes, Your Honor.

11          THE COURT:  I'm sorry.  Where does your wife reside?

12          THE DEFENDANT:  Leesburg, Cherokee County.

13          THE COURT:  I am aware that your wife will suffer

14  from your being not with her when she has these medical

15  conditions, but I find that often the family, almost always

16  the family, and not just your stepdaughter, is a victim of any

17  crime that the person chooses to commit.  But I just want you

18  to know that I do regret the fact that her life is going to be

19  harder because of what you did.  I do regret that.

20     The defendant is remanded to the custody of the United

21  States Marshal.

22

23

24

25

**34**

Case 4:07-cr-00337-VEH-SGC Document 34 Filed 08/08/08 Page 1 of 3

FILED

# IN THE UNITED STATES COURT OF APPEALS

08 AUG -9 PM 3: 06
**FOR THE ELEVENTH CIRCUIT**
U.S. DISTRICT COURT
N.D. OF ALABAMA

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT

AUG 0 7 2008

THOMAS K. KAHN
CLERK

08-10412-EE

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

GARY STEVEN VASILOFF,

Defendant-Appellant.

--------------------------
On Appeal from the United States District Court for the
Northern District of Alabama
--------------------------

BEFORE: ANDERSON, HULL and HILL, Circuit Judges

BY THE COURT:

The Government's motion to dismiss this appeal based on the valid and
enforceable sentence appeal waiver in Appellant's plea agreement is GRANTED.

A True Copy
Attested:
Clerk U.S. Court of Appeals, Eleventh Circuit
By: _____
Deputy Clerk Atlanta, Ga

# United States Court of Appeals

Eleventh Circuit
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

**Thomas K. Kahn**
Clerk

For rules and forms visit
www.ca11.uscourts.gov

August 07, 2008

Sharon Harris
Clerk, U.S. District Court
1729 5TH AVE N STE 140
BIRMINGHAM AL 35203-2050



**Appeal Number: 08-10412-EE**
Case Style: USA v. Gary Steven Vasiloff
District Court Number: 07-00337 CR-4-VEH-PWG

The enclosed certified copy of this Court's Order of Dismissal is issued as the mandate of this court. See 11th Cir. R. 41-4. Counsel and pro se parties are advised that pursuant to 11th Cir. R. 27-2, "a motion to reconsider, vacate, or modify an order must be filed within 21 days of the entry of such order. No additional time shall be allowed for mailing."

The district court clerk is requested to acknowledge receipt on the copy of this letter enclosed to the clerk.

Sincerely,

THOMAS K. KAHN, Clerk

Reply To: Andrea Ware (404) 335-6218

Encl.

DIS-4 (3-2005)

Sharon Harris
Clerk, U.S. District Court
1729 5TH AVE N STE 140
BIRMINGHAM AL 35203-2050

_____

August 07, 2008

**Appeal Number: 08-10412-EE**
Case Style: USA v. Gary Steven Vasiloff
District Court Number: 07-00337 CR-4-VEH-PWG

TO:    Sharon Harris

CC:    Robert B. Tuten

CC:    Ramona C. Albin

CC:    Joyce White Vance

CC:    Administrative File

CC:    Administrative File

# 4:10-cv-08001-VEH-SGC

1

FILED

2010 Jan-14 PM 04:18
U.S. DISTRICT COURT
N.D. OF ALABAMA

CV-10-HS-8001-M

Page 2

**MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT
SENTENCE BY A PERSON IN FEDERAL CUSTODY**

| United States District Court | District N. D. ALABAMA, Mid. Div. |
|---|---|

| Name (under which you were convicted) Gary Steven Vasiloff | Docket or Case No.: |
|---|---|

| Place of Confinement: USP-TUCSON, ARIZONA | Prisoner No.: 26486-001 |
|---|---|

| UNITED STATES OF AMERICA | Movant (include name under which you were convicted) |
|---|---|
| v. | Gary Steven Vasiloff |

### MOTION

1. (a) Name and location of court that entered the judgment of conviction you are challenging: _____

   Northern District of Alabama, Middle Division, Hugo L. Black Courthouse

   1729 Fifth Avenue North, Birmingham, AL 35203

   (b) Criminal docket or case number (if you know): 4:07-cr-337-VEJ-PWG

2. (a) Date of the judgment of conviction (if you know): January 17, 2008

   (b) Date of sentencing: January 16, 2008

3. Length of sentence: 3,900 Months

4. Nature of crime (all counts):

   1) Sexual Expoitation of a Minor 18 U.S.C. §2251(a) (counts 1-21)

   2) Possession of Child Pornography 18 U.S.C. §2252A(a)(5)(B) (count 22)

   3) Criminal Forfeiture 18 U.S.C. §2253 (count 23)

5. (a) What was your plea? (Check one)

   (1) Not guilty ☐          (2) Guilty ☒          (3) Nolo contendere (no contest) ☐

   (b) If you entered a guilty plea to one count or indictment, and a not guilty plea to another count
   or indictment, what did you plead guilty to and what did you plead not guilty to? N/A

6. If you went to trial, what kind of trial did you have? (Check one)          Jury ☐          Judge only ☐   N/A

Page 3

7. Did you testify at a pretrial hearing, trial, or post-trial hearing?　　Yes ☐　　No ☒

8. Did you appeal from the judgment of conviction?　　Yes ☒　　No ☐

9. If you did appeal, answer the following:

(a) Name of court: __United States Court of Appeals, Eleventh Circuit__

(b) Docket or case number (if you know): __08-10412-EE__

(c) Result: __Appeal dismissed.__

(d) Date of result (if you know): __August 7, 2008__

(e) Citation to the case (if you know): _____

(f) Grounds raised: _____

1) Sentence was far outside the sentencing guidline range.

2) Court of Appeals is required to review sentence to determine reasonableness.

3) Sentencing Court did not consider alternative (kinds of) sentences available.

(g) Did you file a petition for certiorari in the United States Supreme Court?　　Yes ☒　　No ☐

If "Yes," answer the following:

(1) Docket or case number (if you know): __08-7623__

(2) Result: __Certiorari denied__

(3) Date of result (if you know): __January 12, 2009__

(4) Citation to the case (if you know): __129 S. Ct. 966, 173 L.Ed. 2d 156__

(5) Grounds raised: _____

1) Is an appeal waiver valid when the plea contract is void due to lack of benefit/consideration, i.e. a reasonable sentence. Because same sentence could have been received with a blind plea.

2) Resolve the circuit split where appeal waivers preclude I.A.C. Claims, especially those involving the plea agreement.

10. Other than the direct appeals listed above, have you previously filed any other motions, petitions, or applications concerning this judgment of conviction in any court?

Yes ☐　　No ☒

11. If your answer to Question 10 was "Yes," give the following information:

(a) (1) Name of court: _____

(2) Docket or case number (if you know): _____

(3) Date of filing (if you know): _____

(4) Nature of the proceeding: _____

(5) Grounds raised: _____

_____

_____

_____

_____

_____

_____

_____

_____

(6) Did you receive a hearing where evidence was given on your motion, petition, or application?    Yes ☐  No ☐

(7) Result: _____

(8) Date of result (if you know): _____

(b) If you filed any second motion, petition, or application, give the same information:

(1) Name of court: _____

(2) Docket or case number (if you know): _____

(3) Date of filing (if you know): _____

(4) Nature of the proceeding: _____

(5) Grounds raised: _____

_____

_____

_____

_____

_____

_____

_____

(6) Did you receive a hearing where evidence was given on your motion, petition, or application?    Yes ☐  No ☐

(7) Result: _____

(8) Date of result (if you know): _____

(c) Did you appeal to a federal appellate court having jurisdiction over the action taken on your motion, petition, or application?

(1) First petition:    Yes ☐   No ☐

(2) Second petition:    Yes ☐   No ☐

Page 5

(d) If you did not appeal from the action on any motion, petition, or application, explain briefly
why you did not: _____

_____

_____

12  For this motion, state every ground on which you claim that you are being held in violation of the
Constitution, laws, or treaties of the United States. Attach additional pages if you have more
than four grounds. State the <u>facts</u> supporting each ground.

GROUND ONE:  Ineffective assistance of counsel ["IAC"] in negotiating
an appeal waiver without securing a true/actual benefit.

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim ):
Recommended sentence in this case was "LIFE" (and the actual
sentence was many multiples of any human's lifespan). All facts and
guidelines used to derive this recommendation were well-known prior
to the appeals waiver being signed, yet both attornies let me sign it--
knowing my sentence would far exceed my lifetime. A "blind plea" (with
no appeals waiver) would not have resulted in an EFFECTIVELY worse
situation and would have offered the benefit of a review on appeal of
both the sentence and the conviction.

_____

_____

_____

(b) Direct Appeal of Ground One:

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes ☐  No ☒

(2) If you did not raise this issue in your direct appeal, explain why:  IAC not usually
brought up on direct appeal.  Attorney did not raise issue in
the direct appeal.

(c) Post-Conviction Proceedings:

(1) Did you raise this issue in any post-conviction motion, petition, or application?

Yes ☐  No ☒

(2) If your answer to Question (c)(1) is "Yes," state:

Type of motion or petition: _____

Name and location of the court where the motion or petition was filed: _____

_____

Page 6

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

(3) Did you receive a hearing on your motion, petition, or application?

    Yes ❑  No ❑

(4) Did you appeal from the denial of your motion, petition, or application?

    Yes ❑  No ❑

(5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal?

    Yes ❑  No ❑

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue: _____

_____

_____

_____

_____

GROUND TWO: Compulsion, by ineffective counsel, with knowing complicity of other parties, to waive all my constitutional rights, (based on an unrealistic, unspoken promise.)

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim):

Any rational person -- if aware that the sentence would effectively be the same (i.e. life in prison) -- would take a case to trial (or at least actively contest the sentence). I was unaware that all parties believed, at the time I signed the plea bargain, that "life" was the appropriate sentence IN THIS CASE. If this was explicitly explained, I would not have pled guilty -- or at least would not have waived my appeal rights.

Page 7

(b) Direct Appeal of Ground Two:

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes ☐   No ☒

(2) If you did not raise this issue in your direct appeal, explain why: <u>IAC not usually</u> <u>brought up on direct appeal.  Attorney did not raise issue</u> <u>in the direct appeal.</u>

(c) Post-Conviction Proceedings:

(1) Did you raise this issue in any post-conviction motion, petition, or application?

Yes ☐   No ☒

(2) If your answer to Question (c)(1) is "Yes," state:

Type of motion or petition: _____

Name and location of the court where the motion or petition was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

(3) Did you receive a hearing on your motion, petition, or application?

Yes ☐   No ☐

(4) Did you appeal from the denial of your motion, petition, or application?

Yes ☐   No ☐

(5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal?

Yes ☐   No ☐

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

Page 8

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue: _____
_____
_____
_____
_____

GROUND THREE: Inefective counsel never requested proof of the USPO-asserted "production dates" used to "group" the offense resulting in an incorrect sentencing enhancement (and inappropriately compelled me to waive this issue).

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

As an unsophisticated prisoner I was able to request proof of the "production dates" of the various charged photos and learned neither the FBI nor the US Attorney had any. A layman's analysis of the photos suggests that the alleged groupings are unreasonable. If the grouping evidence was challenged, then all the photos would be placed in a sigle (U.S.S.G. §3D1.1) group -- removing the four point §3D1.4 enhancement. _____
_____
_____
_____
_____

(b) Direct Appeal of Ground Three:

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes ❑  No ☒

(2) If you did not raise this issue in your direct appeal, explain why: IAC not usually brought up on direct appeal. Attorney did not raise issue in the direct appeal.

(c) Post-Conviction Proceedings:

(1) Did you raise this issue in any post-conviction motion, petition, or application?

Yes ❑  No ☒

(2) If your answer to Question (c)(1) is "Yes," state:

Type of motion or petition: _____

Name and location of the court where the motion or petition was filed: _____
_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Page 9

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

(3) Did you receive a hearing on your motion, petition, or application?

    Yes ❑  No ❑

(4) Did you appeal from the denial of your motion, petition, or application?

    Yes ❑  No ❑

(5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal?

    Yes ❑  No ❑

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or

raise this issue: _____

_____

_____

_____

_____

GROUND FOUR: Ineffective counsel never requested proof of "multiple photo shoot
dates" -- and compelled me to waiver this arguement -- resulting in an inappropriate
five-level sentence enhancement, for pattern of Conduct.
(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):
    The U.S.S.G. §2G2.2(b)(5) "pattern of conduct" enhancement would
NOT be applied in this case if there was only one "group" (see, Ground
Three). Therefore a direct consequence of my attorney's failing to
document or argue that the government could not prove the photos
were taken on multiple days this enhancement. An effective attorney
would have won this arguement. _____

_____

_____

USCA11 Case: 16-10488-1 Document: 26 Date Filed: 07/13/2015 Page: 104 of 260
Case 4:16-cv-08001-VEH-SGC Document 1 Filed 01/14/2015 Page 9 of 104

Page 10

(b) Direct Appeal of Ground Four:

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes ☐ No ☒

(2) If you did not raise this issue in your direct appeal, explain why: IAC not usually brought up on direct appeal. Attorney did not raise issue in direct appeal.

(c) Post-Conviction Proceedings:

(1) Did you raise this issue in any post-conviction motion, petition, or application?

Yes ☐ No ☒

(2) If your answer to Question (c)(1) is "Yes," state:

Type of motion or petition: _____

Name and location of the court where the motion or petition was filed: _____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

(3) Did you receive a hearing on your motion, petition, or application?

Yes ☐ No ☐

(4) Did you appeal from the denial of your motion, petition, or application?

Yes ☐ No ☐

(5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal?

Yes ☐ No ☐

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

GROUND FIVE:

The "providing alcohol to a minor making them
vulnerable" enhancement [3A1.1(b)(1)] argument only succeeded
because of IAC who then improperly compelled me to waive the
argument.

FACTS:

In this Circuit, the Appeals Court and others have
ruled that providing alcohol to a minor who then fully
undresses in public, for video and print recordings, is NOT a
crime. In this case, there is no evidence the liquid in the
beer bottle was alcohol -- it easily could have been a "prop",
like in the movies. Also, if similar photos were willing posed
for before (groups one and two) and after (group five) the
alleged provision/consumption of alcohol (group three and
four), then clearly the alcohol did not induce or contribute
to the performance -- making the enhancement improper --
something any reasonable attorney would challenge.

GROUND SIX:

It is multiplicitous -- causing this Court to lose
jurisdiction -- when more than one "production" count is
charged for a single "photo-shoot". (Also IAC not to
argue/appeal this fact).

FACTS:

Whether, as the government contends (without
presenting evidence) that there were multiple photo-shoots or
as Petitioner claims that there was but one, it is undisputed

USCA11 Case: 14-10480-1 Document: 36 Date Filed: 07/13/2015 Page: 106 of 260
Case 4:10-cv-08001-VEH-SGC Document 1 Filed 01/14/10 Page 12 of 96

Page 12

that Petitioner was charged and allowed to plead to multiple
counts for production (18 U.S.C. 2251(a)) for an incident that
occurred at a single photo-shoot. The fact that the trial (and
appeals) attornies never questioned or disputed this fact
deprived me of my right to (effective assistance of) counsel
as an attorney should have disputed this Court's lack of
jurisdiction on multiplicitous counts -- which resulted in a
higher prison sentence (and a larger Special Assessment).


GROUND SEVEN:

        Constitutional and legal errors render this conviction
invalid.


FACTS:

        A review of the facts in this case show the conviction
was unlawful in light of prevailing law and/or the
Constitution.


GROUND EIGHT:

        Constitutional and legal errors render this sentence
invalid.

FACTS:

        A review of facts in this case show the guideline
calculation and/or sentence was unlawful in light of
prevailing law and/or the Constitution.


GROUND NINE:

        Cumulative Error causes the conviction and/or sentence
to be invalid.

Page 13

FACTS:

Taken as a whole, even if any of the errors
individually are not sufficient to overturn the conviction
and/or sentence, together, the errors are sufficient to
warrant granting of this Motion.


GROUND TEN:

My Constitutional right to "due process" and freedom
from "cruel and unusual punishment" was violated by my lengthy
sentence.


FACTS:

Persons sentenced for much "worse" crimes (in this
Circuit and across the U.S.) received much lower sentences,
making my sentence unreasonable. Also, I was made to plead to
a much greater and severe number of crimes (increasing my
sentence) than many other defendants with similar or worse
facts in their case.


GROUND ELEVEN:

Offense level 43 (or 44) should NOT be "mandatory
Life" but instead should be a "range" (as are levels 1-42 at
Criminal History I).


FACTS:

Chief USDC Judge Roettger (in this Circuit), and a
self-proclaimed "hanging Judge", has stated (and supported his
argument) in published rulings that Levels above 42 (Criminal

USCA11 Case: 14-10881 Document: 26 Date Filed: 07/13/2015 Page: 108 of 260
Case 4:10-cv-08001-VEH-SGC Document 1 Filed 01/14/2015 Page 13 of 17

Page 14

History I) should have "sentencing ranges" as do those of 42
and below. He lists the ranges and if I was sentenced in that
fashion, my sentence would be SUBSTANTIALLY less. Therefore,
his principles should have been considered by this Court at my
sentencing. One cause of the failure to consider them is IAC,
which produced the prejudice of them not being brought to this
Court's attention or considered.


GROUND TWELVE:

        "Appeal Waiver" (if not plea agreement itself) should
be invalidated due to contract principles of "Lack of
consideration" or "Mutual Mistake".


FACTS:

        As calculated in the PSIR (and unchallenged by either
defense counsel or the government) the expected Offense Level
was 44, yielding a mandatory "LIFE" sentence. If the
government knew this when negotiating the plea agreement --
and associated "appeals waiver"-- then because Defendant reaps
no BENEFIT (i.e. with or without the agreement the Defendant
would get "life", the only difference being that WITH the
agreement he would also lose his Constitutional and legal
appeals rights) the agreement -- or at least the "appeals
waiver" -- should be abrogated for lack of consideration (as
contract law applies in this situation). If both parties were
UNAWARE of the "expected" LIFE sentence, then due to the
contract principle of "mutual mistake" the plea agreement --
or at least the "appeals waiver" -- should be abrogated.

USCA11 Case: 14-10483    Document: 26    Date Filed: 07/13/2015    Page: 109 of 260
Case 4:10-cv-08001-VEH-SGC   Document 1   Filed 01/14/10   Page 14 of 17

Page 14 15

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue: _____
_____
_____
_____

13. Is there any ground in this motion that you have <u>not</u> previously presented in some federal court? If so, which ground or grounds have not been presented, and state your reasons for not presenting them: ____I.A.C. not normally presented on direct appeal._____
_____
_____
_____
_____
_____

14. Do you have any motion, petition, or appeal <u>now pending</u> (filed and not decided yet) in any court for the judgment you are challenging?    Yes ☐  No ☒
If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the issues raised. _____
_____
_____
_____

15. Give the name and address, if known, of each attorney who represented you in the following stages of the judgment you are challenging:
(a) At preliminary hearing: Mr. Robert B. Tuten_____
TUTEN LAW OFFICES, 223 East Side Square, Huntsville, AL 35801

(b) At arraignment and plea: _____SAME_____

(c) At trial: ___SAME_____

(d) At sentencing: ___SAME_____

(e) On appeal:    SAME --Robert B. Tuten  and Mickey J. Gentle
917F Merchants Walk, Huntsville, AL 35801

(f) In any post-conviction proceeding.    N/A

(g) On appeal from any ruling against you in a post-conviction proceeding:    N/A

16.  Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at the same time?    Yes ☒ No ☐

17.  Do you have any future sentence to serve after you complete the sentence for the judgment that you are challenging?    Yes ☐ No ☒

(a)  If so, give name and location of court that imposed the other sentence you will serve in the future. _____

(b)  Give the date the other sentence was imposed: _____

(c)  Give the length of the other sentence: _____

(d)  Have you filed, or do you plan to file, any motion, petition, or application that challenges the judgment or sentence to be served in the future?    Yes ☐   No ☐    N/A

18. TIMELINESS OF MOTION: If your judgment of conviction became final over one year ago, you must explain why the one-year statute of limitations as contained in 28 U.S.C. § 2255 does not bar your motion.*  N/A

---

\* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2255, paragraph 6, provides in part that:

A one-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of —

  (1) the date on which the judgment of conviction became final;

  (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making such a motion by such governmental action;

  (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

  (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

Page 14 18

Therefore, movant asks that the Court grant the following relief: Grant Petitioner's

and/or vacate his conviction

waiver/nullification of his "appeal waiver" and/or vacate his sentence

(for proper re-sentencing)[and any and all additional relief to which

he is entitled.] or any other relief to which movant may be entitled

_____

Signature of Attorney (if any)

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct
and that this Motion under 28 U.S.C. § 2255 was placed in the prison mailing system on January
11, 2010 (month, date, year).

Executed (signed) on January 11, 2010(date).

_____

Signature of Movant

If the person signing is not movant, state relationship to movant and explain why movant is not
signing this motion. _____

_____

_____

IN FORMA PAUPERIS DECLARATION

_____

[Insert appropriate court]

. . . . .

**6**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF ALABAMA

MIDDLE DIVISION

GARY STEVEN VASILOFF      )
                               )

v.                       )    4:10-CV-8001-VEH-PWG
                               )    (4:07-CR-0337-VEH-PWG )

UNITED STATES OF AMERICA   )

MOTION TO DISMISS §2255 MOTION

Comes now the United States by and through Joyce White Vance, United States Attorney, and Mary Stuart Burrell, Assistant United States Attorney and respectfully requests that the Court dismiss the pending "Motion Under 28 U.S.C. §2255" in this matter. In support of its motion, the United States refers the Court to Vasiloff's plea agreement with the United States (Attachment A) and the transcript of the colloquy at his change of plea hearing (Attachment B), in which the district judge confirmed Vasiloff's understanding of and agreement to the waiver provision of the plea agreement.

The plea agreement, in a provision labeled "Waiver of Right to Appeal and Post-Conviction Relief," provided that:

1

## WAIVER OF RIGHT TO APPEAL AND POST-CONVICTION RELIEF:

As a term and condition of this Plea Agreement I, GARY STEVEN VASILOFF, hereby waive my right to appeal my conviction in this case, any fines, restitution, and/or sentence (including one for revocation of release) that the court might impose upon me, and the right to challenge any sentence so imposed or the manner in which the sentence was determined in any collateral attack, including, but not limited to, a motion brought under 28 U.S.C. § 2255, subject to the following limitations:

The defendant reserves the right to contest in an appeal or post-conviction proceeding:

(a)     Any sentence imposed in excess of the applicable statutory maximum sentence(s).

The defendant acknowledges that before giving up these rights, he discussed the Federal Sentencing Guidelines and their application to his case with his attorney, who explained them to his satisfaction. The defendant further acknowledges and understands that the government retains its right to appeal where authorized by statute.

I, GARY STEVEN VASILOFF, hereby place my signature on the line directly below to signify that I fully understand the foregoing paragraphs, and

2

**that I am knowingly and voluntarily entering into this waiver.**

_____

**GARY STEVEN VASILOFF**

(Attachment A at pg. 5-6). Vasiloff signed his name on the line labeled with his name indicating that he understood the above provision.

At the change of plea hearing, the court discussed the waiver provision with Vasiloff. The following occurred:

> THE COURT: Mr. Vasiloff, does the written plea agreement that is on the table in front of you contain everything that you are relying on at this time by way of a plea bargain or plea agreement?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: Before you signed the agreement, did you have a sufficient opportunity to review it with your attorney, Mr. Tuten?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: Did you have any questions of Mr. Tuten regarding the meaning of the agreement or how it might operate that he did not answer to your satisfaction?
>
> THE DEFENDANT: No, ma'am, he answered all of my questions.

3

> THE COURT: Mr. Vasiloff, the plea agreement that
>
> you have entered contains language waiving some or all
>
> of your rights to plea agreement the sentence to be
>
> imposed. Under certain circumstances, the defendant
>
> can waive his or her right to appeal, and that type of
>
> waiver may be enforceable. However, if you believe that
>
> the waiver that is in your plea agreement is not
>
> enforceable, you can appeal the sentence and present that
>
> theory to the appellate court.
>
> When you signed the plea agreement, did you understand
>
> that you were giving up some or all of your rights to
>
> appeal?
>
> THE DEFENDANT: Yes, ma'am.

(Attachment B at pg. 9-10).

A §2255 motion waiver provision is enforceable if the waiver is made knowingly and voluntarily. *United States v. Bushert*, 997 F.2d 1343, 1350-51 (11th Cir. 1993). To establish the waiver's validity, the United States must show either that (1) the district court specifically questioned the defendant about the provision during the plea colloquy, or (2) it is manifestly clear from the record that the defendant fully

4

understood the significance of the waiver. *United States v. Weaver*, 275 F.3d 1320, 1333 (11th Cir. 2001); *Bushert*, 997 F.2d at 1350-51.

The court satisfied the first condition in *Bushert* in this case, in compliance with the procedure set forth in *United States v. Buchanan*, 131 F.3d 1005,1008-1009 (11th Cir. 1997). Vasiloff clearly evidenced a knowing and voluntary intent to enter into the waiver agreement as a part of his plea bargain.

The plea agreement and the transcript of the plea hearing are also sufficient to establish the second option under *Bushert*--that it is manifestly clear from the record that Vasiloff understood the significance of the waiver. As stated above, the waiver provision in the plea agreement has an internal signature provision that Vasiloff signed. He attested that he understood the appeal waiver provision and that he knowingly and voluntarily waived his appeal rights. Vasiloff also stated at the plea hearing that he understood he was giving up some or all of his appeal rights. Additionally, Vasiloff's counsel, Robert Tuten, stated that he fully discussed the plea agreement with Vasiloff at length prior to Vasiloff signing the agreement. (Attachment B at pg. 8).

The record in Attachment B reflects that the underlying plea of guilty was entered into knowingly and voluntarily as well. The district court conducted a thorough Rule 11 colloquy. The record shows that Vasiloff was aware of the charges

against him and the consequences of his plea. Defense counsel stated he was satisfied that Vasiloff knowingly and voluntarily entered his plea of guilty. (Attachment B at pg. 22). And, the court found that Vasiloff's plea of guilty was knowing and voluntary. (Attachment B at pg. 29).

Vasiloff, who was convicted of 21 Counts of Production of Child Pornography and a single count of Possession of Child Pornography, raises eleven issues in his §2255 motion, all of which were waived. This §2255 motion falls within the waiver Vasiloff agreed to in his plea agreement. Knowing and voluntary waivers that fall within the ambit of the contractual agreement between the United States and a defendant, such as this one, have been repeatedly enforced by the Eleventh Circuit Court of Appeals. *See, e.g. United States v. Pease,* 240 F.3d 938, 942 (11th Cir. 2001); *United States v. Benitez-Zapata*, 131 F.3d 1444, 1446 (11th Cir. 1997).

Indeed, the Eleventh Circuit Court of Appeals has enforced the waiver Vasiloff agreed to in his plea agreement when Vasiloff attempted a direct appeal in his case following the entry of judgment against him. The Court of Appeals rejected the appeal based upon its determination that there was "a valid and enforceable... appeal waiver contained in [Vasiloff's] plea agreement ..." Order dismissing appeal dated August 7, 2008 (Attachment C). Similarly, because the written plea agreement also included a waiver of Vasiloff's "right to challenge any conviction or sentence

6

[pursuant to] 28 U.S.C. § 2255," the current petition should be dismissed.

To put it another way, just as the Court of Appeals first resolved the validity of the appeal waiver before considering the merits of the issue raised on appeal, this Court should first resolve the validity of the §2255 waiver before considering the merits of Vasiloff's petition. *See, e.g.*, *United States v. Howle*, 166 F.3d 1166, 1169 (11th Cir. 1999) ("honor[ing the plea] agreement" – and the waiver of the right to appeal included within that agreement – "by not reaching the merits of [the] appeal"); *Buchanan*, 131 F.3d at 1008; *Pease*, 240 F.3d at 942. The United States respectfully requests that the §2255 motion in this case be dismissed, Vasiloff having knowingly and voluntarily waived his right to appeal in his plea agreement with the United States.

In the event the Court denies this Motion, the United States requests that it be granted sufficient additional time to respond to the substantive issues raised by Vasiloff in his §2255 motion.

Respectfully submitted this the 1st day of April, 2010.

JOYCE WHITE VANCE
United States Attorney

*Mary Stuart Burrell*

MARY STUART BURRELL
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the

Court using the CM/ECF system and served a copy on the defendant by placing a

copy of the same in the United States Mail, first class postage prepaid, this the 1st day

of April, 2010.

Gary Steven Vasiloff
Reg. No. 26486-001
USP-Tucson
P.O. Box 24550
Tucson, AZ 85734

*Mary Stuart Burrell*

MARY STUART BURRELL
Assistant United States Attorney

8

FILED
2007 Oct-03  PM 08:28
U.S. DISTRICT COURT
N.D. OF ALABAMA

**F I L E D**

**OCT 1 8 2007**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF ALABAMA

### MIDDLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 4:07-CR-0337-VEH-PWG |
| | ) | |
| GARY STEVEN VASILOFF | ) | |

## PLEA AGREEMENT

The United States of America and defendant GARY STEVEN VASILOFF

hereby acknowledge the following plea agreement in this case:

## PLEA

The defendant agrees to plead guilty to **COUNTS ONE through TWENTY-**

**TWO** and confess **COUNT TWENTY-THREE** of the Indictment filed in the above

numbered and captioned matter. In exchange, the United States Attorney, acting on

behalf of the United States and through the undersigned Assistant United States

Attorney, agrees to recommend the disposition specified below.

## TERMS OF THE AGREEMENT

## I. MAXIMUM PUNISHMENT:

The Parties understand that the maximum statutory punishment that may be imposed for the crime of Production of Child Pornography, in violation of Title 18, United States Code, Section 2251(a), as charged in COUNTS ONE through TWENTY-ONE, is:

      a.     Imprisonment for not less than 15 years nor more than 30 years;

      b.     A fine of not more than $250,000, or,

      c.     Both (a and b);

      d.     Supervised release for not less than 5 years nor more than life; and

      e.     Special Assessment Fee of $100 per count.

The Parties understand that the maximum statutory punishment that may be imposed for the crime of Possession of Child Pornography, in violation of Title 18, United States Code, Section 2252A(a)(5)(B), as charged in COUNT TWENTY-TWO, is:

      a.     Imprisonment for not more than 10 years;

      b.     A fine of not more than $250,000, or,

      c.     Both (a and b);

      d.     Supervised release for not less than 5 years nor more than life; and

      e.     Special Assessment Fee of $100 per count.

## II. **FACTUAL BASIS FOR PLEA**:

**The defendant hereby stipulates to the accuracy of the following information:**

The Alabama Department of Human Resources Assessment of Children at Risk officials received information and reported the same to the Cherokee County Sheriff's Office (CCSO), advising that Gary Steven Vasiloff had taken nude photographs of his stepdaughter (age 14) using a dildo and posing in other lewd and lascivious positions, and had downloaded the photos from his digital camera onto his personal computer. It was also alleged that the victim had been given alcoholic beverages before the pictures were taken.

On January 23, 2007, the CCSO executed a state search warrant at Vasiloff's residence. Vasiloff's computer was seized, along with other items of evidence, including a digital camera and a dildo. The CCSO utilized the computer analysis services of the Alabama Computer Forensic Lab to analyze Vasiloff's computer. Vasiloff's computer was analyzed and twenty-one images of child pornography depicting the victim were discovered. Seven additional images of the victim depicting breast nudity were also discovered. In numerous of these pictures, the victim can be seen consuming alcoholic beverages she says were given to her by Vasiloff. The images were produced by a Concord camera, which was manufactured in the People's Republic of

Παγε 3 οφ 11

China.

The FBI initiated its investigation into the matter after receiving
investigative reports from the CCSO on July 17, 2007. On July 31, 2007, an
examiner with the Alabama Computer Forensic Lab provided the FBI with a
report of examination of Vasiloff's personal computer. The FBI reviewed the
report on July 31, 2007, and confirmed that the images of child pornography
were in fact of the victim in question.

On August 8, 2007, Vasiloff was arrested on a federal complaint
charging him with Possession of Child Pornography. After waiving his rights
pursuant to *Miranda*, he confessed to producing the images of child
pornography depicting his step-daughter. He admitted that the images had
been taken at a deceased relative's abandoned house in Cherokee County,
Alabama, between the dates of June 23, 2006, and August 14, 2006. He also
turned over the Concord camera used to produce the images.

### III. RECOMMENDED SENTENCE:

Pursuant to Rule 11(c)(1)(B), Fed.R.Crim.P., the government will recommend
the following disposition:

> (a) That the defendant be sentenced within the advisory guideline
> range as that range is determined by the Court on the date sentence

is pronounced;

(b)     In calculating the advisory guideline range, the United States will recommend that the defendant receive the maximum credit for acceptance of responsibility for which he is eligible pursuant to U.S.S.G. § 3E1.1.

(c)     That the defendant pay a special assessment fee of $2200, said amount due and owing as of the date sentence is pronounced.

## IV. WAIVER OF RIGHT TO APPEAL AND POST-CONVICTION RELIEF:

As a term and condition of this Plea Agreement I, GARY STEVEN VASILOFF, hereby waive my right to appeal my conviction in this case, any fines, restitution, and/or sentence (including one for revocation of release) that the court might impose upon me, and the right to challenge any sentence so imposed or the manner in which the sentence was determined in any collateral attack, including, but not limited to, a motion brought under 28 U.S.C. § 2255, subject to the following limitations:

The defendant reserves the right to contest in an appeal or post-conviction proceeding:

(a)     Any sentence imposed in excess of the applicable statutory maximum sentence(s).

The defendant acknowledges that before giving up these rights, he discussed the Federal Sentencing Guidelines and their application to his case with his attorney, who explained them to his satisfaction. The defendant further acknowledges and understands that the government retains its right to appeal where authorized by statute.

I, GARY STEVEN VASILOFF, hereby place my signature on the line directly below to signify that I fully understand the foregoing paragraphs, and that I am knowingly and voluntarily entering into this waiver.

_____
GARY STEVEN VASILOFF

## V. __UNITED STATES SENTENCING GUIDELINES__:

Counsel has explained to the defendant, that in light of the United States Supreme Court's recent decision in United States v. Booker, 125 S.Ct. 738 (2005), the federal sentencing guidelines are **advisory** in nature. Sentencing is in the court's discretion and is no longer required to be within the guideline range. The defendant agrees that, pursuant to this agreement, the court may use facts it finds by a preponderance of the evidence to reach an advisory guideline range and defendant explicitly waives any right to have those facts found by a jury beyond a reasonable doubt.

## VI. AGREEMENT NOT BINDING ON COURT:

The Parties fully and completely understand and agree that it is the Court's duty to impose sentence upon the defendant and that any sentence recommended by the government is **NOT BINDING UPON THE COURT**, and that the Court need not accept the government's recommendation. Further, the defendant understands that if the Court does not accept the government's recommendation, he does not have the right to withdraw his plea.

## VII. <u>VOIDING OF AGREEMENT</u>:

The defendant understands that should he (a) violate any federal, state, or local law after entering into this Plea Agreement, (b) move the Court to accept his plea of guilty in accordance with, or pursuant to, the provisions of <u>North Carolina v. Alford</u>, 400 U.S. 25 (1970), or (c) tender a plea of *nolo contendere* to the charges, the agreement will become NULL and VOID, and the United States will not be bound by any of the terms, conditions, or recommendations, express or implied, which are contained therein.

## VIII. <u>OTHER DISTRICTS AND JURISDICTIONS</u>:

The parties understand and agree that this agreement **DOES NOT BIND** any other United States Attorney in any other district, or any other state or local authority.

## IX.  <u>TAX, FORFEITURE AND OTHER CIVIL/ADMINISTRATIVE</u> <u>PROCEEDINGS</u>:

Unless otherwise specified herein, the parties understand and acknowledge that this agreement does not apply to or in any way limit any pending or prospective proceedings related to defendant's **tax liabilities**, if any, or to any pending or prospective **forfeiture** or other **civil** or **administrative** proceedings.

## X. DEFENDANT'S UNDERSTANDING:

I have read and understand the provisions of this agreement consisting of eleven (11) pages. I have discussed the case and my constitutional and other rights with my lawyer. I am satisfied with my lawyer's representation in this case. I understand that by pleading guilty, I will be waiving and giving up my right to continue to plead not guilty, to a trial by jury, to the assistance of counsel at that trial, to confront, cross-examine, or compel the attendance of witnesses, to present evidence in my behalf, to maintain my privilege against self-incrimination, and to the presumption of innocence. I agree to enter my plea as indicated above on the terms and conditions set forth herein.

**NO OTHER PROMISES OR REPRESENTATIONS HAVE BEEN MADE TO ME BY THE PROSECUTOR, OR BY ANYONE ELSE, NOR HAVE ANY THREATS BEEN MADE OR FORCE USED TO INDUCE ME TO PLEAD GUILTY.**

I further have been advised, and understand, that under the Sex Offender

Παγε 8 οφ 11

Registration and Notification Act, a federal law, I must register and keep the registration current in each of the following jurisdictions: where I reside; where I am an employee; and where I am a student. I understand that the requirements for registration include providing my name, my residence address, and the names and addresses of any places where I am or will be an employee or a student, among other information. I further understand that the requirement to keep the registration current includes informing at least one jurisdiction in which I reside, am an employee, or am a student not later than three business days after any change of my name, residence, employment, or student status. I have been advised, and understand, that failure to comply with these obligations subjects me to prosecution for failure to register under federal law, 18, United States Code, Section 2250, which is punishable by a fine or imprisonment, or both.

I further state that I have not had any drugs, medication, or alcohol within the past 48 hours except as stated hereafter:

[        N/A                                                      ]
(if none, write "N/A")

I understand that this Plea Agreement will take effect and will be binding as to the Parties **only** after all necessary signatures have been affixed hereto.

I have personally and voluntarily placed my initials on every page of this

Agreement and have signed the signature line below to indicate I have read and approve all of the previous paragraphs of this Agreement, and understand all of the provisions of this Agreement, both individually and as a total binding agreement.

*Oct - 18, 01*

DATE

GARY STEVEN VASILOFF

Defendant

## XI. COUNSEL'S ACKNOWLEDGMENT:

I have discussed this case with my client in detail and have advised him of his rights and all possible defenses. My client has conveyed to me that he understands this

Παγε 10 οφ 11

Agreement and consents to all its terms. I believe the plea and disposition set forth herein are appropriate under the facts of this case and are in accord with my best judgment. I concur in the entry of the plea as indicated above and on the terms and conditions set forth herein.

_10/18/04_
DATE

_____
ROBERT TUTEN, ESQ.
Defendant's Counsel

## XII. GOVERNMENT'S ACKNOWLEDGMENT:

I have reviewed this matter and concur that the plea and disposition set forth herein are appropriate and are in the interests of justice.

ALICE H. MARTIN
United States Attorney

by:

_10-16-2007_
DATE

_____
MARY STUART BURRELL
Assistant United States Attorney

1

2                    UNITED STATES DISTRICT COURT

3                   NORTHERN DISTRICT OF ALABAMA

4                         MIDDLE DIVISION

5

6   UNITED STATES OF AMERICA,        *
            Plaintiff,               *
7                                    *  Case No. CR-07-VEH-0337-M
                                     *
            v.                       *
8                                    *
   GARY STEVEN VASILOFF,             *    Birmingham, Alabama
9                                    *     October 18, 2007
            Defendant.               *        9:30 a.m.
10  ********************************

11

12                  TRANSCRIPT OF PLEA HEARING
       BEFORE THE HONORABLE VIRGINIA EMERSON HOPKINS
13               UNITED STATES DISTRICT JUDGE

14

15

16

17

18

19

20

21

22

23   Court Reporter:         Chanetta L. Sinkfield, RMR
                             325 United States Courthouse
24                           1729 Fifth Avenue North
                             Birmingham, AL 35203
25

USCA11 Case: 14-10483  Document: 26  Date Filed: 07/13/2015  Page: 134 of 260
Case 4:10-cv-08001-VEH-SGC  Document 6-2  Filed 07/01/2015  Page 2 of 34
Case 4:07-cr-00337-VEH-PWG  Document 27 (Court only)  Filed 03/05/08  Page 2 of 30
2

```
 1                              APPEARANCES

 2

 3   FOR THE PLAINTIFF:      ALICE H. MARTIN
                            U.S. ATTORNEY'S OFFICE
 4                          Assistant U.S. Attorney,
                            MARY STUART BURRELL
 5                          400 Meridian Street, Suite 304
                            Huntsville, Alabama 35801
 6

 7   FOR THE DEFENDANT:     ROBERT B. TUTEN, ESQ.
                            TUTEN LAW OFFICES
 8                          223 East Side Square
                            Huntsville, Alabama 35801
 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23   Court Reporter:        Chanetta L. Sinkfield, RMR
                            325 United States Courthouse
24                          1729 Fifth Avenue North
                            Birmingham, Alabama 35203
25
```

USCA11 Case: 10-10801   Document: 26   Date Filed: 07/30/2015   Page: 3 of 31
Case 4:07-cr-00337-VEH-PWG   Document 27 (Court only)   Filed 03/05/08   Page 3 of 30

3

```
 1                      P R O C E E D I N G S
 2

 3              THE COURT:  Good morning.  Counsel, we're here today

 4    in the matter of the United States of America versus Gary

 5    Steven Vasiloff, case number 07-337.

 6         I am looking at the guilty plea advice of rights

 7    certification, and it's not certified by counsel for

 8    defendant.

 9              MR. TUTEN:  Sorry about that, Your Honor.  Let me do

10    that real quick.

11              THE COURT:  That will be fine.

12              MR. TUTEN:  We had some last minute revisions to the

13    plea agreement yesterday.  We were scrambling around trying to

14    get the material signed, and I just missed that one.  I'm

15    sorry about that.

16              THE COURT:  It's not a problem as long as you get it

17    done now.

18              MR. TUTEN:  Thank you, Your Honor.

19              THE COURT:  You're welcome.  All right.  I see that

20    Ms. Burrell is present and Mr. Tuten, T-u-t-e-n.

21              MR. TUTEN:  Yes, Your Honor.

22              THE COURT:  Mr. Vasiloff, before I can accept the

23    plea of guilty from you, I must inquire about certain matters,

24    and that inquiry will require that you be placed under an

25    oath.  I want to point out to you that while you are under
```

USCA11 Case: 14-14800 Date Filed: 07/03/2015 Page: 136 of 260
Case 4:07-cr-00337-VEH-PWG Document 27 (Court only) Filed 03/05/08 Page 4 of 30

4

1 that oath, I may ask you questions pertaining to the offense

2 that you are pleading guilty to or other questions relating to

3 matters relevant to your plea of guilty or to matters relevant

4 to sentencing.  Any answers to my questions must be full,

5 complete, and accurate because a false answer or false

6 statement could be used against you as a basis for prosecuting

7 you for perjury or false statement.  Do you understand?

8     THE DEFENDANT:  Yes, ma'am.

9     THE COURT:  Okay.  Will you speak a little louder,

10 please?

11     THE DEFENDANT:  Yes, ma'am.

12     THE COURT:  Thank you.

13  Ms. Berry, would you please administer the oath.

14     THE COURTROOM DEPUTY:  If you will stand and raise

15 your right hand, please.

16  Do you swear or affirm to speak the truth, the whole

17 truth, and nothing but the truth so help you God?

18     THE DEFENDANT:  Yes, ma'am.

19     THE COURTROOM DEPUTY:  You may be seated.

20     THE COURT:  Mr. Vasiloff, do you have in front of

21 you a copy of a document entitled Guilty Plea Advice of Rights

22 certification stamped filed October 18th, 2007?

23     THE DEFENDANT:  Yes, ma'am.

24     THE COURT:  Did you and your attorney fill out that

25 document?

USCA11 Case: 14-10801 Document: 36 Date Filed: 07/02/2015 Page: 137 of 260
Case 4:07-cr-00337-VEH-PWG Document 27 (Court only) Filed 03/05/08 Page 5 of 30

5

```
 1              THE DEFENDANT:  Yes, ma'am.

 2              THE COURT:  Did you understand the information in

 3    that document?

 4              THE DEFENDANT:  Mostly, yes, ma'am.

 5              THE COURT:  What did you not understand?  Is there

 6    anything you want to go over with me?

 7              THE DEFENDANT:  No, ma'am.

 8              THE COURT:  Can you tell me any parts of it that you

 9    do not understand?

10              THE DEFENDANT:  It was just the way some of the

11    stuff was worded.  Yes, he helped me through it.

12              THE COURT:  Now that your lawyer has talked to you

13    about what's in the document, after his explanation, do you

14    understand the document?

15              THE DEFENDANT:  Yes, ma'am.

16              THE COURT:  Have you within the past 72 hours taken

17    or received any drugs, intoxicants, narcotics, or medication

18    including prescription medication of any kind?

19              THE DEFENDANT:  No, ma'am.

20              THE COURT:  Do you have any mental impairment that

21    may affect your ability to understand and respond to any

22    questions?

23              THE DEFENDANT:  No, ma'am.

24              THE COURT:  Do you have any problem understanding

25    the English language that may affect your ability to
```

USCA11 Case: 104-cv-0800-VEH Document: 26 Date Filed 07/04/2015 Page: 138 of 260
Case 4:07-cr-00337-VEH-PWG   Document 27 (Court only)   Filed 03/05/08   Page 6 of 30

6

1    understand and respond to any questions?

2              THE DEFENDANT:  No, ma'am.

3              THE COURT:  Mr. Vasiloff, if anything is said here

4    today or if anything takes place here today that you do not

5    fully understand, I want you to interrupt the proceedings and

6    tell me so.  Will you do so?

7              THE DEFENDANT:  Yes, ma'am.

8              THE COURT:  You can either ask me to clear the

9    matter up for you, or you can ask me to allow you to speak in

10   private with your attorney so that he can clear the matter up,

11   and I will permit either of those.  Do you understand?

12             THE DEFENDANT:  Yes, ma'am.

13             THE COURT:  Okay.  I have been informed that the

14   microphones aren't working.  So everybody just needs to know

15   that we need to speak up.

16        A plea of guilty is often offered in reliance upon some

17   plea bargain or plea agreement between the defendant and his

18   attorney and the U.S. Attorney's Office.  Recommended

19   sentences, plea bargains, and plea agreements are permissible,

20   but they are not binding on the court or the judge.  When a

21   plea agreement exist and where a defendant is entering his

22   plea of guilty in reliance upon a plea bargain or plea

23   agreement, the defendant and his attorney and the U.S.

24   Attorney's Office all have the obligation to disclose that

25   fact to the Court and to tell the Court the terms and

USCA11 Case: 14-10461    Document: 36    Date Filed: 04/02/2015    Page: 139 of 260
Case 4:07-cr-00337-VEH-PWG   Document 27 (Court only)   Filed 03/05/08   Page 7 of 30

7

```
 1    conditions of any plea bargain or plea agreement that the
 2    defendant might be relying on at the time he enters his plea
 3    of guilty.
 4         I have reviewed the plea agreement that has been entered
 5    in this case.  Do you have a copy in front of you, Mr.
 6    Vasiloff?
 7              THE DEFENDANT:  Yes, ma'am.
 8              THE COURT:  Did you sign that agreement?
 9              THE DEFENDANT:  Yes, ma'am.
10              THE COURT:  At this time, I am going to ask the
11    Assistant U.S. Attorney, Mary Stewart Burrell, to advise the
12    Court the extent of that office's knowledge of any recommended
13    sentence, plea bargain, or plea agreement upon which this
14    defendant might be relying here today.
15         You may proceed, Ms. Burrell.
16              MS. BURRELL:  Yes, ma'am.  Your Honor, the
17    defendant, Gary Steven Vasiloff, is going to plead guilty to
18    Counts 1 through 22 of this indictment and Count 23 of the
19    indictment which is a forfeiture allegation.  In exchange,
20    Your Honor, the government's going to recommend that the
21    defendant be sentenced within the advisory guideline range as
22    that range is determined by the Court on the date sentence is
23    pronounced.  In calculating the advisory guideline range, the
24    United States will recommend that the defendant receive the
25    maximum credit for acceptance of responsibility for which he
```

USCA11 Case: 14-10431 Document 36 Date Filed: 07/13/2015 Page: 8 of 40 of 260
Case 4:07-cr-00337-VEH-PWG Document 27 (Court only) Filed 03/05/08 Page 8 of 30

8

```
 1   is eligible and that the defendant pay a special assessment
 2   fee of $2,200.  Said amount due and owing as of the date
 3   sentence is pronounced.

 4        And Your Honor, on pages 5 and 6 of this plea agreement,
 5   the defendant, Gary Steven Vasiloff, has waived certain rights
 6   to appeal.

 7             THE COURT:  All right.  Mr. Vasiloff, the plea
 8   agreement states the government will recommend the maximum
 9   appropriate credit for acceptance of responsibility.

10        Mr. Tuten, does the written plea agreement that is in
11   front of you on the table contain everything that you are
12   aware of that your client relying on by way of a plea bargain
13   or plea agreement?

14             MR. TUTEN:  Yes, Your Honor, it does.

15             THE COURT:  Before your client signed the plea
16   agreement, did you have a sufficient opportunity to fully
17   discuss it with him?

18             MR. TUTEN:  Yes, Your Honor.  We did discuss it at
19   length.  He had various questions about it which I answered.
20   Some of those questions actually resulted in revisions made to
21   some of the wording, especially in the factual rendition of
22   this case.  The new agreement was reviewed with him again this
23   morning, and again I answered all the questions that he had
24   about it.

25             THE COURT:  And do you feel that you were able to
```

```
 1    answer any questions that he had concerning the meaning of the
 2    agreement or its operation or effect to his satisfaction?
 3              MR. TUTEN:  Yes, Your Honor, I was.
 4              THE COURT:  All right.  Thank you, Mr. Tuten.
 5         Mr. Vasiloff, does the written plea agreement that is on
 6    the table in front of you contain everything that you are
 7    relying on at this time by way of a plea bargain or plea
 8    agreement?
 9              THE DEFENDANT:  Yes, ma'am.
10              THE COURT:  Before you signed the agreement, did you
11    have a sufficient opportunity to review it with your attorney,
12    Mr. Tuten?
13              THE DEFENDANT:  Yes, ma'am.
14              THE COURT:  Did you have any questions of Mr. Tuten
15    regarding the meaning of the agreement or how it might operate
16    that he did not answer to your satisfaction?
17              THE DEFENDANT:  No, ma'am, he answered all of my
18    questions.
19              THE COURT:  Mr. Vasiloff, the plea agreement that
20    you have entered contains language waiving some or all of your
21    rights to plea agreement the sentence to be imposed.  Under
22    certain circumstances, the defendant can waive his or her
23    right to appeal, and that type of a waiver may be enforceable.
24    However, if you believe that the waiver that is in your plea
25    agreement is not enforceable, you can appeal the sentence and
```

```
 1    present that theory to the appellate court.
 2          When you signed the plea agreement, did you understand
 3    that you were giving up some or all of your rights to appeal?
 4                THE DEFENDANT:  Yes, ma'am.
 5                THE COURT:  Do you understand that the U.S.
 6    Attorney's Office is required to comply with any obligations
 7    imposed upon it by the plea agreement, but that the plea
 8    agreement is not binding on the Court Or the Judge?
 9                THE DEFENDANT:  Yes, ma'am.
10                THE COURT:  In other words, do you understand, Mr.
11    Vasiloff, that if I accept your plea of guilty, when I impose
12    a sentence, I could structure a sentence that is totally
13    consistent with the plea agreement or recommendations made by
14    the U.S. Attorney's Office, or I could structure a sentence
15    that could be viewed as substantially more severe or
16    substantially less severe than the contemplated sentence, and
17    yet you would have no right to withdraw the plea of guilty you
18    were in the process of entering?  Do you fully understand
19    that?
20                THE DEFENDANT:  Yes, ma'am.
21                THE COURT:  Other than what is set forth in the plea
22    agreement, has anyone promised you anything to encourage you
23    to enter this plea of guilty?
24                THE DEFENDANT:  No, ma'am.
25                THE COURT:  Has anyone threatened you in anyway to
```

1    encourage you to enter this plea of guilty?

2            THE DEFENDANT:  No, ma'am.

3            THE COURT:  Do you understand that if the Court

4    accepts your plea of guilty, all that remains is for a

5    sentence to be imposed?

6            THE DEFENDANT:  Yes, ma'am.

7            THE COURT:  I am confident that your attorney has

8    discussed with you the charges asserted in the indictment and

9    the maximum penalties that you could face; however, part of my

10   responsibility today is to make sure that you do indeed

11   understand the charges against you, what the government would

12   have to prove at a trial, and the possible penalties that you

13   could face.  Therefore, I want to go over those matters with

14   you.

15       Do you understand that the maximum penalties include as

16   to Counts 1 through 21:  A fine of not more than $250,000.

17   And this applies to each count, so there's 21 counts.  So

18   that's 21 times $250,000.  Custody of not less than 15 years

19   and not more than 30 years; again that is each count.

20   Further, if you have a prior conviction of certain types of

21   related offenses, then the custodial term becomes not less

22   than 25 years and not more than 50 years.  And if you have two

23   prior convictions of certain related offenses, then the

24   custodial term becomes not less than 35 years and not more

25   than life.

USCA11 Case: 10-14881-VE Document: 26 Date Filed: 07/13/2015 Page: 144 of 260
Case 4:07-cr-00337-VEH-PWG Document 27 (Court only) Filed 03/05/08 Page 12 of 30

12

1    There is no allegation that anyone died as a result of

2 anything that Mr. Vasiloff did?

3         MS. BURRELL:  No, Your Honor.

4         THE COURT:  All right.  Your supervised release

5 period following your term of custodial confinement under

6 Counts 1 through 21 for each count is any term of years not

7 less than five years and not more than life.  There is an

8 assessment fee of $100 for each count.  Restitution does

9 apply, and the guidelines also apply.

10    As to Count 22, the maximum penalty is a fine of not more

11 than $250,000.  The custodial term is not more than ten years,

12 however, if you had been convicted on one or more prior

13 instances of certain related offenses, then the maximum

14 penalty under Count 22 becomes not less than ten and not more

15 than 20 years.  Your custodial term would be followed by

16 supervised release term of any term of years not less than

17 five years and not more than life.  There is an assessment fee

18 of $100.  Restitution does apply, and the guidelines although

19 advisory also apply.

20    Count 23 is a forfeiture count, and I am going to ask you

21 if you understand the property that the government -- I'll ask

22 you later if you understand the property that the government

23 seeks forfeiture from you regarding.  We'll go over that

24 separately, but it is not a custodial count; it is a

25 forfeiture count where you would lose assets.  Assets would be

USCA11 Case: 14-10483   Document: 26   Date Filed: 04/03/2015   Page: 145 of 260
Case 4:10-cv-08001-VEH-SGC   Document 2   Filed 04/03/2015   Page 145 of 260
Case 4:07-cr-00337-VEH-PWG   Document 27 (Court only)   Filed 03/05/08   Page 13 of 30

13

```
 1    taken from you.

 2        Do you understand the maximum penalties that I have just

 3    outlined?

 4              THE DEFENDANT:  Yes, ma'am.

 5              THE COURT:  Do you also understand that in

 6    determining a sentence, the Court must consider applicable

 7    sentencing guidelines but may depart from those guidelines?

 8              THE DEFENDANT:  Yes, ma'am.

 9              THE COURT:  Have you had sufficient opportunity and

10    time to discuss the guidelines and the fact that they are

11    merely advisory with your attorney?

12              THE DEFENDANT:  Yes, ma'am.

13              THE COURT:  Mr. Tuten, have you completely discussed

14    with and advised Mr. Vasiloff regarding the sentencing

15    guidelines and the fact that they're merely advisory, that is,

16    not binding on this Court?

17              MR. TUTEN:  Yes, Your Honor, I have.

18              THE COURT:  Thank you.

19        Mr. Vasiloff, do you also understand that you have a

20    right to insist upon a plea of not guilty?

21              THE DEFENDANT:  Yes, ma'am.

22              THE COURT:  Do you understand that if you plead not

23    guilty, the burden is upon the government to prove your guilt

24    to a jury beyond a reasonable doubt at a trial where you would

25    have the right to the assistance of a lawyer and the right not
```

```
 1    to be compelled to incriminate yourself or give evidence
 2    against yourself, but that with this plea of guilty, there
 3    will be no right to confront and cross-examine the witnesses
 4    and the evidence?  Do you understand that you are giving up
 5    all those rights and protections?
 6              THE DEFENDANT:  Yes, Your Honor.
 7              THE COURT:  Is there anything, Mr. Vasiloff that
 8    prevents you from understanding anything that I am saying to
 9    you at this time?
10              THE DEFENDANT:  No, Your Honor.
11              THE COURT:  Is there anything that prevents you from
12    understanding anything your attorney says to you when he
13    discusses this matter with you?
14              THE DEFENDANT:  No, Your Honor.
15              THE COURT:  Is there anything that prevents you from
16    understanding the nature of the charges against you?
17              THE DEFENDANT:  No, Your Honor.
18              THE COURT:  Is there anything that prevents you from
19    understanding the nature and purpose of these proceedings here
20    today?
21              THE DEFENDANT:  No, Your Honor.
22              THE COURT:  In the indictment in Counts 1 through
23    21, the grand jury charged that on or about a date between the
24    23rd day of June 2006 and the 14th day of August, 2006, in
25    Cherokee County within the Northern District of Alabama, the
```

USCA11 Case: 14-10483-VEH Document 26 Date Filed: 04/08/2005 Page: 147 of 260
Case 4:07-cr-00337-VEH-PWG   Document 27 (Court only)   Filed 03/05/08   Page 15 of 30

15

```
 1   defendant, Gary Steven Vasiloff did employ, use, persuade,
 2   induce and entice a minor to engage in sexually explicit
 3   conduct for the purpose of producing a visual depiction of
 4   such conduct.  And I will go through specifically the items.
 5   Said visual depiction which was produced using materials that
 6   had been mailed, shipped, and transported in interstate and
 7   foreign commerce in violation of Title 18, United States Code
 8   Section 2251.  In Count 1, the visual depiction is a
 9   photograph that's referred to as Exhibit 1.  In Count 2, the
10   visual depiction is a photograph that's referred to as Exhibit
11   2.   In Count 3, the visual depiction is a photograph that is
12   referred to as Exhibit 3.  In Count 4, the visual depiction is
13   a photograph that's referred to as Exhibit 4.  In Count 5, the
14   visual depiction is a photograph that's referred to as Exhibit
15   5.   In Count 6, the visual depiction is a photograph that's
16   referred to as Exhibit 6.  In Count 7, the visual depiction is
17   a photograph referred to as Exhibit 7.  In Count 8, the visual
18   depiction is a photograph referred to as Exhibit 8.  In Count
19   9, the visual depiction is a photograph that's referred to as
20   Exhibit 9.  In Count 10, the visual depiction is a photograph
21   that's referred to as Exhibit 10.  In Count 11, the visual
22   depiction is a photograph referred to as Exhibit 11.  In Count
23   12, the visual depiction is a photograph that's referred to as
24   Exhibit 12.  In Count 13, the visual depiction is a photograph
25   that's referred to as Exhibit 13.  In Count 14, the visual
```

 1    depiction is a photograph that's referred to as Exhibit 14.
 2    In Count 15, the visual depiction is a photograph that's
 3    referred to as Exhibit 15.  In Count 16, the visual depiction
 4    is a photograph that's referred to as Exhibit 16.  In Count
 5    17, the visual depiction is a photograph that's referred to as
 6    Exhibit 17.  In Count 18, the visual depiction is a photograph
 7    referred to as Exhibit 18.  In Count 19, the visual depiction
 8    is a photograph referred to as Exhibit 19.  In Count 20, the
 9    visual depiction is a photograph referred to as Exhibit 20.
10    In Count 21, the visual depiction is a photograph referred to
11    as Count 21.
12         Have you seen all of those exhibits?
13              THE DEFENDANT:  Yes, ma'am.
14              THE COURT:  In Count 21 -- I'm sorry.  In Count 22,
15    the grand jury charged that on or about the 23rd day of
16    January 2007, in Cherokee County within the Northern District
17    of Alabama, the defendant, Gary Steven Vasiloff, did knowingly
18    possess material that contained images of child pornography
19    that was produced using materials that had been mailed,
20    shipped, and transported in interstate and foreign commerce in
21    violation of Title 18, United States Code Section
22    2252A(a)(5)(B).  In Count 23, the grand jury refers to the
23    allegations of Counts 1 through 22 and states that you are
24    being notified that upon conviction of the offenses listed in
25    Counts 1 and 2 of the indictment, the government is seeking

USCA11 Case: 14-10031   Document: 36   Date Filed: 07/13/2015   Page: 149 of 260
Case 4:07-cr-00337-VEH-PWG   Document 27 (Court only)   Filed 03/05/08   Page 17 of 30

17

1   forfeiture of any real or personal property used or intended

2   to be used to promote or commit the commission -- to promote

3   the commission of or to commit the offense alleged in either

4   Count 1 or Count 2 or both.

5       Further, you are notified that if the property that they

6   seek forfeiture of as a result of any act or omission by you

7   can't be located, has been transferred, has been placed beyond

8   the jurisdiction of the Court, has been substantially

9   diminished in value or has been commingled with other party or

10   property which cannot be divided without difficulty, the

11   United States intends to seek forfeiture of any other property

12   that is yours up to the value of the forfeitable property.

13       Before there could be a conviction under Counts 1 through

14   22 and forfeiture under 23 as charged, were those charges to

15   go to a trial, the government would have the burden of proving

16   beyond a reasonable doubt the following:  Title 18, United

17   States Code Section 2251(a) makes it a federal crime or

18   offense for any person to knowingly employ, use, persuade,

19   induce, entice, or coerce any minor to engage in any sexually

20   explicit conduct for the purpose of producing a visual

21   depiction of such conduct when the visual depiction was

22   produced using materials that had been mailed, shipped, and

23   transported in interstate or foreign commerce by any means.

24   You are charged with an offense under 18 U.S.C. Section

25   2251(a) in Counts 1 through 21 inclusive.  You can be found

1    guilty of the offenses charged in Counts 1 through 21

2    inclusive or any of them only if all of the following facts

3    are proved beyond a reasonable doubt.

4         First, that you knowingly employed, used, persuaded,

5    induced, enticed, or coerced any minor to engage in any

6    sexually explicit conduct as charged; second, that you did so

7    for the purpose of producing a visual depiction of such

8    conduct as charged; and third, that the visual depiction was

9    produced using materials that had been mailed, shipped, and

10   transported in interstate or foreign commerce as charged.  And

11   again, the visual depictions are the exhibits that are listed

12   in each count, and you said you had seen those exhibits.

13              THE DEFENDANT:  Yes, ma'am.

14              THE COURT:  The term "minor" means any person under

15   the age of 18 years.  The term "sexually explicit conduct"

16   means actual simulated sexual intercourse whether between

17   persons of the same or opposite sex.  Bestiality,

18   masturbation, sadistic or masochistic abuse, lascivious,

19   exhibition of the genitals or pubic area of any person.  The

20   term "producing" means producing, directing, manufacturing,

21   issuing, publishing, or advertising.  The term "visual

22   depiction" includes but is not limited to undeveloped film and

23   videotape and data stored on computer disk or by electronic

24   means which is capable of conversion into a visual image.

25        The term "interstate or foreign commerce" means movement

USCA11 Case: 14-10483 Document: 26 Date Filed: 07/01/2015 Page: 151 of 260
Case 4:10-cv-08001-VEH-PWG Document 32-2 Filed 07/01/2015 Page: 151 of 260
Case 4:07-cr-00337-VEH-PWG Document 27 (Court only) Filed 03/05/08 Page 19 of 30
19

 1   of property from one state to another state or from one state
 2   to another state.  The term "state" includes any state of the
 3   United States, District of Columbia, and any commonwealth,
 4   territory, or possession of the United States.  The word
 5   "knowingly" means that the act had to be done voluntarily and
 6   intentionally and not because of a mistake or an accident.

 7        In Counts 22, you are charged with violating 18 U.S.C.
 8   Section 2252A(a)(5)(B).

 9        (Pause.)

10             THE COURT:   Title 18, United States Code Section
11   2252A(a)(5)(B), makes it a federal crime or offense for any
12   person to knowingly possess any book, magazine, periodical,
13   film, videotape, computer disk, or any other material that
14   contains an image of child pornography that has been mailed or
15   shipped or transported in interstate or foreign commerce by
16   any means including by computer or that was produced using
17   materials that had been mailed or shipped or transported in
18   interstate or foreign commerce by any means including by
19   computer.

20        You can be found guilty of that offense only if all of
21   the following facts are proved beyond a reasonable doubt.
22   That you knowingly possessed an item or items of child
23   pornography as charged; that such items of child pornography
24   had been transported or shipped or mailed in interstate or
25   foreign commerce including by computer as charged; and that at

USCA Case: 01-14-01401-V Document 26 Date Filed 04/8/2005 Page 20 of 521 of 260
Case 4:07-cr-00337-VEH-PWG   Document 27 (Court only)   Filed 03/05/08   Page 20 of 30

20

1    the time of such possession you believed that such items

2    constituted or contained child pornography.

3        I have already explained interstate or foreign commerce.

4    The term "child pornography" means any visual depiction

5    including any photograph, film, video, picture, or computer or

6    computer-generated image or picture whether mailed, produced

7    by electronic, mechanical, or other means of sexual explicit

8    conduct where the production of such visual depiction involves

9    use of minor engaging in sexually explicit conduct, or such

10   visual depiction has been created, adapted, or modified to

11   appear that an identifiable minor engaged in sexually explicit

12   conduct.  I have explained the term "minor."  I don't think we

13   have an identifiable minor issue.

14            MS. BURRELL:  No, Your Honor, we do not.

15            THE COURT:  I have explained visual depiction.  I

16   have explained sexually explicit conduct, and I have explained

17   knowingly.  The same explanation applies.

18            MS. BURRELL:  Your Honor?

19            THE COURT:  Yes.

20            MS. BURRELL:  May I clarify the question that you

21   just asked me?  We do know who the minor was in these

22   pictures.

23            THE COURT:  Right.  So there's not a charge of

24   having created, adapted, or modified a visual depiction to

25   appear that an identifiable minor.  The charge is there is an

1     actual minor engaging in sexually explicit conduct.

2              MS. BURRELL:  That's right, Your Honor.

3              THE COURT:  Right.  18 U.S.C. Section 2253 which

4     relates to Count 23 is the forfeiture count, and this title

5     provides that a person who is convicted of an offense

6     including the offenses that are listed in Counts 1 and 2 of

7     the complaint, I'm sorry, the indictment, is subject to the

8     forfeiture of certain property, specifically the visual

9     depictions or any book, magazine, periodical, film, videotape

10    or other matters which contains any such visual depiction

11    which was produced, transported, mailed, shipped or received

12    in violation of the law; any property real or personal

13    constituting or traceable to gross profits or other proceeds

14    obtained from such offense; and any property real or personal

15    used or intended to be used to commit or promote the

16    commission of such an offense or any property traceable to

17    such property.

18         Mr. Vasiloff, do you understand the charges against you?

19              THE DEFENDANT:  Yes, ma'am.

20              THE COURT:  Have you had sufficient time to discuss

21    these charges with your attorney, Mr. Tuten?

22              THE DEFENDANT:  Yes, Your Honor.

23              THE COURT:  Are you satisfied with your attorney and

24    the work he has done for you?

25              THE DEFENDANT:  Yes, Your Honor.

USCA11 Case: 14-10461    Document 26    Date Filed: 04/02/2015    Page: 22 of 260
Case 4:07-cr-00337-VEH-PWG    Document 27 (Court only)    Filed 03/05/08    Page 22 of 30

22

1          THE COURT:  Now I need to ask Mr. Tuten.  Mr.

2    Tuten, are you satisfied that Mr. Vasiloff fully understands

3    the charges against him and the consequences of his entering a

4    plea of guilty to those charges?

5          MR. TUTEN:  Yes, Your Honor, I am.

6          THE COURT:  Are you also satisfied that he's

7    knowingly and voluntarily entering his plea of guilty?

8          MR. TUTEN:  Yes, Your Honor, I am so satisfied he

9    does understand that.  We had several opportunities to discuss

10   the indictment.  During those discussions Mr. Vasiloff asked

11   some very good questions which revealed to me that he

12   understood our discussions and was able to contemplate not

13   only the meaning but also the consequences of a guilty plea

14   related in those charges, and upon answering his questions, he

15   told me that he did understand everything that we had

16   discussed.

17         THE COURT:  All right.  Did you just say whether or

18   not you were satisfied that he is knowingly and voluntarily

19   entering his plea of guilty?

20         MR. TUTEN:  Yes, Your Honor.

21         THE COURT:  All right.  Have you had sufficient time

22   to investigate the charges against Mr. Vasiloff, to consider

23   any possible defenses he might have to those charges, and

24   generally to give him counsel and advice?

25         MR. TUTEN:  Yes, I have, Judge.

 1          THE COURT:  All right.  Mr. Vasiloff, I want you to
 2     listen carefully to what the Assistant U.S. Attorney is about
 3     to say because she is now going to outline for you and for me
 4     some of the evidence she would offer to a jury if this case
 5     were to go to a trial.  If she says anything that you do not
 6     think is true or that you do not think she can prove, I want
 7     you to interrupt her and tell me so.  Do you understand?

 8          THE DEFENDANT:  Yes, Your Honor.

 9          THE COURT:  You may raise your hand or you may have
10     your attorney, Mr. Tuten, let me know what you feel Ms.
11     Burrell has said that is not true, is incorrect, that you
12     disagree with or that you do not believe the government can
13     prove.  Now, listen very closely.

14        Ms. Burrell, what would the government expect to prove
15     were this case to proceed to trial?

16          MS. BURRELL:  Your Honor, had we gone to trial, the
17     government would have proven that the Alabama Department of
18     Human Resources Assessment of Children at Risk Officials
19     received information and reported the same to the Cherokee
20     County Sheriff's Office, which I will refer to as CCSO,
21     advising that Gary Steve Vasiloff had taken nude photographs
22     of his stepdaughter, age 14, using a dildo and posing in other
23     rude and lascivious positions and had downloaded the photos
24     from his digital camera onto his personal computer.  It was
25     also alleged that the victim had been given alcoholic

USCA11 Case: 14-10481 Document: 26 Date Filed: 07/13/2015 Page: 156 of 260
Case 4:10-cv-08001-VEH-SGC Document 6-2 Filed 04/01/10 Page 24 of 91
Case 4:07-cr-00337-VEH-PWG Document 27 (Court only) Filed 03/05/08 Page 24 of 30
24

1    beverages before the pictures were taken.

2         On January 23rd, 2007, the CCSO executed a state search

3    warrant at Vasiloff's residence.  Vasiloff's computer was

4    seized along with other items of evidence including a digital

5    camera and a dildo.  The CCSO utilized the computer analysis

6    services of the Alabama Computer Forensic Lab to analyze

7    Vasiloff's computer.  Vasiloff's computer was analyzed and 21

8    images of child pornography depicting the victim were

9    discovered.  Seven additional images of the victim depicting

10   breast nudity were also discovered.  In numerous of these

11   pictures, the victim can be seen consuming alcoholic

12   beverages, which she says and would have testified to were

13   given to her by Vasiloff.  The images were produced by a

14   camera which was manufactured in the People's Republic of

15   China.

16        The FBI initiated its investigation into the matter after

17   receiving investigating reports from the CCSO on July 17th of

18   2007.  On July 31st, 2007, an examiner with the Alabama

19   Computer Forensic Lab provided the FBI with a report of

20   examination of Vasiloff's personal computer.  The FBI reviewed

21   the report on July 31st, 2007 and confirmed that the images of

22   child pornography were in fact of the victim in question.

23        On August 8th of 2007, Vasiloff was arrested on a federal

24   complaint charging him with possession of child pornography.

25   After waiving his rights pursuant to Miranda, he confessed to

USCA11 Case: 14-10483 Document 26 Date Filed: 07/01/2015 Page: 25 of 57
Case 4:10-cv-08001-VEH-SGC Document 2-2 Filed 04/01/2015 Page 25 of 57
Case 4:07-cr-00337-VEH-PWG Document 27 (Court only) Filed 03/05/08 Page 25 of 30
25

1    producing the images of a child, depicting his stepdaughter.

2    He admitted that the images had been taken at a deceased

3    relative's abandoned house in Cherokee County, Alabama,

4    between the dates of June 23rd, 2006 and August 14th of 2006.

5    He also turned over the camera used to produce the images.

6          THE COURT:  Mr. Vasiloff, you have heard Ms. Burrell

7    outline briefly certain of the facts the government would

8    expect to prove at trial.  Are these facts substantially

9    correct?

10          THE DEFENDANT:  Yes, Your Honor.

11          THE COURT:  She said that you made some confessions

12    and admissions after you were arrested and after you had

13    waived your rights pursuant to Miranda versus Arizona.  Did

14    you, before you confessed to producing the images and admitted

15    the images had been taken at a deceased relative's abandoned

16    house, were you advised of your rights under that case?

17          THE DEFENDANT:  Yes, Your Honor.

18          THE COURT:  And did you waive those rights?

19          THE DEFENDANT:  Yes, Your Honor.

20          THE COURT:  Were any threats or promises associated

21    with the statements that you made after you were arrested

22    relating to your confessions and admissions?

23          THE DEFENDANT:  No, Your Honor.

24          THE COURT:  Gary Steven Vasiloff, how do you plead?

25          THE DEFENDANT:  Guilty.

USCA11 Case: 14-10483 - Document: 26 - Date Filed: 07/01/2015 - Page: 158 of 260
Case: 4:10-cv-08001-VEH-SGC Document 2-2 Filed 04/01/2015 Page 26 of 30
Case 4:07-cr-00337-VEH-PWG Document 27 (Court only) Filed 03/05/08 Page 26 of 30
26

1     THE COURT:  Did you do the things the Assistant U.S.

2  Attorney said you did?

3     THE DEFENDANT:  Yes, Your Honor.

4     THE COURT:  Mr. Vasiloff, do you understand that you

5  are not required to enter a plea of guilty and you are free at

6  this time, but this would be the last time you will be free to

7  withdraw your plea of guilty and reinstate your earlier plea

8  of not guilty?  Do you understand that?

9     THE DEFENDANT:  Yes, Your Honor.

10    THE COURT:  Have you heard anything here today that

11  causes you to want to reconsider your decision to enter a plea

12  of guilty?

13    THE DEFENDANT:  No, Your Honor.

14    THE COURT:  Do you still desire to enter a plea of

15  guilty?

16    THE DEFENDANT:  Yes, Your Honor.

17    THE COURT:  Mr. Vasiloff, how do you plead to Count

18  1 of the indictment as charged?

19    THE DEFENDANT:  Guilty.

20    THE COURT:  How do you plead to Count 2 of the

21  indictment as charged?

22    THE DEFENDANT:  Guilty.

23    THE COURT:  How do you plead to Count 3 of the

24  indictment as charged?

25    THE DEFENDANT:  Guilty.

```
1              THE COURT:  How do you plead to Count 4 of the
2    indictment as charged?
3              THE DEFENDANT:  Guilty.
4              THE COURT:  How do you plead to Count 5 of the
5    indictment as charged?
6              THE DEFENDANT:  Guilty.
7              THE COURT:  How do you plead to Count 6 of the
8    indictment as charged?
9              THE DEFENDANT:  Guilty.
10             THE COURT:  How do you plead to Count 7 of the
11   indictment as charged?
12             THE DEFENDANT:  Guilty.
13             THE COURT:  How do you plead to Count 8 of the
14   indictment as charged?
15             THE DEFENDANT:  Guilty.
16             THE COURT:  How do you plead to Count 9 of the
17   indictment as charged?
18             THE DEFENDANT:  Guilty.
19             THE COURT:  How do you plead to Count 10 of the
20   indictment as charged?
21             THE DEFENDANT:  Guilty.
22             THE COURT:  How do you plead to Count 11 of the
23   indictment as charged?
24             THE DEFENDANT:  Guilty.
25             THE COURT:  How do you plead to Count 12 of the
```

```
 1      indictment as charged?

 2                THE DEFENDANT:  Guilty.

 3                THE COURT:  How do you plead to Count 13 of the

 4      indictment as charged?

 5                THE DEFENDANT:  Guilty.

 6                THE COURT:  How do you plead to Count 14 of the

 7      indictment as charged?

 8                THE DEFENDANT:  Guilty.

 9                THE COURT:  How do you plead to Count 15 of the

10      indictment as charged?

11                THE DEFENDANT:  Guilty.

12                THE COURT:  How do you plead to Count 16 of the

13      indictment as charged?

14                THE DEFENDANT:  Guilty.

15                THE COURT:  How do you plead to Count 17 of the

16      indictment as charged?

17                THE DEFENDANT:  Guilty.

18                THE COURT:  How do you plead to Count 18 of the

19      indictment as charged?

20                THE DEFENDANT:  Guilty.

21                THE COURT:  How do you plead to Count 19 of the

22      indictment as charged?

23                THE DEFENDANT:  Guilty.

24                THE COURT:  How do you plead to Count 20 of the

25      indictment as charged?
```

USCA11 Case: 14-10483-VE Document: 26  Date Filed: 07/10/2015  Page: 161 of 260
Case 4:07-cr-00337-VEH-PWG  Document 27 (Court only)  Filed 03/05/08  Page 29 of 30

29

```
 1              THE DEFENDANT:  Guilty.

 2              THE COURT:  How do you plead to Count 21 of the

 3   indictment as charged?

 4              THE DEFENDANT:  Guilty.

 5              THE COURT:  How do you plead to Count 22 of the

 6   indictment as charged?

 7              THE DEFENDANT:  Guilty.

 8              THE COURT:  Do you consent to the forfeiture under

 9   Count 23?

10              THE DEFENDANT:  Yes, Your Honor.

11              THE COURT:  The Court finds that the defendant's

12   plea of guilty is freely, voluntarily, understandingly, and

13   knowingly offered by him, and that the requisite factual basis

14   for the plea does exist.  The plea of guilty is accepted by

15   the Court as to Counts 1 through 22 inclusive, and the

16   defendant's consent to forfeiture under Count 23 is accepted

17   by the Court.

18       The probation office will was probably need eight weeks

19   to complete the presentence investigation report.  The

20   defendant and his attorney are then allowed 35 days to review

21   that report.  I will enter an order setting sentencing

22   approximately ninety days from today.  Actually, I can give

23   you the exact date:  January 16th, 2008 at 9:30.

24       I will now call your attention to the fact that my

25   written order will require you to file any objections to the
```

USCA11 Case: 14-10601   Document: 36   Date Filed: 07/13/2015   Page: 162 of 260
Case 4:07-cr-00337-VEH-PWG   Document 27 (Court only)   Filed 03/05/08   Page 30 of 30

30

1    presentence report in writing with the Clerk of Court and

2    serve the probation office with a copy within 14 calendar days

3    from the date you receive the report.  The same deadlines

4    apply to the government.  I will not consider any objections

5    not filed in advance as ordered unless you can provide me with

6    a good reason for not complying with my order.  You should

7    receive the order setting sentencing today.

8         Mr. Vasiloff, you are remanded to the custody of the

9    United States Marshal.  That concludes this hearing.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

FILED

2008 Mar-06  AM 08:05
U.S. DISTRICT COURT
N.D. OF ALABAMA

1

2

3

4

5

6

7

8

9

10

11

12                    C E R T I F I C A T E

13        0

14

15           I hereby certify that the foregoing is a correct

16     transcript from the record of proceedings in the

17     above-referenced matter.

18

19

20

21

22

23     _Chanetta L. Sinkfield_____

24        Chanetta L. Sinkfield, RMR          March 4, 2008

25

FILED

08 AUG -9 PM 3: 06
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES COURT OF APPEALS

## FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT

AUG 0 7 2008

THOMAS K. KAHN
CLERK

08-10412-EE

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

GARY STEVEN VASILOFF,

Defendant-Appellant.

-------------------------

On Appeal from the United States District Court for the
Northern District of Alabama

----------------------------

BEFORE: ANDERSON, HULL and HILL, Circuit Judges

BY THE COURT:

The Government's motion to dismiss this appeal based on the valid and
enforceable sentence appeal waiver in Appellant's plea agreement is GRANTED.

A True Copy
Attested:
Clerk U.S. Court of Appeals, Eleventh Circuit
By: _____
Deputy Clerk Atlanta, Ga.

# United States Court of Appeals

Eleventh Circuit
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

**Thomas K. Kahn**
Clerk

For rules and forms visit
www.ca11.uscourts.gov

August 07, 2008

Sharon Harris
Clerk, U.S. District Court
1729 5TH AVE N STE 140
BIRMINGHAM AL 35203-2050



**Appeal Number: 08-10412-EE**
Case Style: USA v. Gary Steven Vasiloff
District Court Number: 07-00337 CR-4-VEH-PWG

The enclosed certified copy of this Court's Order of Dismissal is issued as the mandate of this court. <u>See</u> 11th Cir. R. 41-4. Counsel and pro se parties are advised that pursuant to 11th Cir. R. 27-2, "a motion to reconsider, vacate, or modify an order must be filed within 21 days of the entry of such order. No additional time shall be allowed for mailing."

The district court clerk is requested to acknowledge receipt on the copy of this letter enclosed to the clerk.

Sincerely,

THOMAS K. KAHN, Clerk

Reply To: Andrea Ware (404) 335-6218

Encl.

DIS-4 (3-2005)

Sharon Harris
Clerk, U.S. District Court
1729 5TH AVE N STE 140
BIRMINGHAM AL 35203-2050

August 07, 2008

**Appeal Number: 08-10412-EE**
Case Style: USA v. Gary Steven Vasiloff
District Court Number: 07-00337 CR-4-VEH-PWG

TO:   Sharon Harris

CC:   Robert B. Tuten

CC:   Ramona C. Albin

CC:   Joyce White Vance

CC:   Administrative File

CC:   Administrative File

**19**

FILED

2012 Sep-04 PM 02:12
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | |
|---|---|
| GARY STEVEN VASILOFF, | ) |
| | ) |
| Movant/Defendant, | ) |
| | ) |
| v. | )    4:10-cv-8001-VEH-PWG |
| | )    (4:07-cr-0337-VEH-PWG) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |

### MAGISTRATE JUDGE'S FINDINGS & RECOMMENDATION

Gary Steven Vasiloff is serving a sentence of 3,900 months imposed by this court, following his plea of guilty to 21counts of sexual exploitation of a child, in violation of 18 U.S.C. § 2251(a), and one count of possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B). He initiated this action by filing a *pro se* motion pursuant to 28 U.S.C. § 2255 to vacate, set aside or correct his federal sentence. (Civ. Doc. 1; Crim. Doc. 38 )[1]. The Government has filed a motion to dismiss, based on the sole ground that all of the claims set forth in Vasiloff's § 2255 motion are subject to a waiver in his plea agreement that precludes him from collaterally attacking his conviction or sentence, except to the extent that his sentence exceeds the statutory maximum. (Civ. Doc. 6). The Government's motion to dismiss is before the undersigned magistrate judge for findings and a recommendation pursuant to 28 U.S.C. § 636(b); Rule 72, Fed. R. Civ. P.; and LR 72.1(b)(3)(B). Upon consideration, it is recommended that the Government's motion to dismiss is

---

[1]Citations to "Civ. Doc(s) ___" are to the document numbers assigned by the clerk to the pleadings in the court file of this § 2255 "civil" case, 4:10-cv-8001-VEH-PWG, as reflected on the docket sheet. Citations to "Crim. Doc. ___" are to the document numbers in the underlying "criminal" case, 4:07-cr-338-VEH-PWG.

due to be denied and that the Government be given an opportunity to file a response addressing the

merits of Vasiloff's § 2255 claims.

In *Williams v. United States*, 396 F.3d 1340, 1342 (11th Cir. 2005), the Eleventh Circuit

Court of Appeals held that a

> valid sentence-appeal waiver precludes a defendant from attempting to attack his
> sentence through a claim of ineffective assistance of counsel during sentencing. The
> court recognized, however:
>
> > [T]here may be a distinction between a § 2255 claim of ineffective assistance
> > in entering or negotiating the plea versus a claim of ineffectiveness at sentencing or
> > a claim challenging the validity of the plea or agreement. *See, e.g., United States v.
> > Pruitt*, 32 F.3d 431, 433 (9th Cir. 1994) (determining that because defendant's
> > ineffectiveness claim under § 2255 did not relate to the plea or plea agreement but
> > related only to the alleged mishandling of sentencing, the court did not need to decide
> > whether a defendant could in fact waive a claim of ineffective assistance); see also
> > [*United States v.*] *White*, 307 F.3d [336, 343 (5th Cir. 2002)] ("[A]n ineffective
> > assistance of counsel argument survives a waiver of appeal only when the claimed
> > assistance directly affected the validity of that waiver or the plea itself."); [United
> > States v.] Cockerham, 237 F.3d [1179] at 1191 [(10th Cir. 2001)](holding that
> > ineffective-assistance-of-counsel claim survives express waiver of right to bring
> > collateral attack on sentence "where it challenges the validity of the plea or waiver").
> > Because Williams's claims assert ineffectiveness at sentencing and do not concern
> > representation relating to the validity of the plea or waiver, we need not, and do not,
> > reach the other situation.

*Williams*, 396 F.3d at 1342, n.2. Further, in *United States v. Copeland*, 381 F.3d 1101, 1105 (11th

Cir. 2004), the Eleventh Circuit held, in the context of a direct appeal, that the defendant's

sentence-appeal waiver which specifically applied only to the sentence imposed did not waive the

defendant's claim that the plea agreement was breached but rather waived only his right to appeal

sentencing issues. *Copeland*, 381 F.3d at 1105.

In *Cowart v. United States*, 139 Fed. App'x 206, 207-208 (11th Cir. 2005), the Court relied

upon the footnote language in *Williams* and upon *Copeland* in holding that issues related to the

validity of the plea or waiver itself are not precluded by the sentence-appeal waiver. The Court

stated:

> As in *Copeland*, the language of Cowart's sentence appeal waiver provided that she
> waived her right "to collaterally attack her sentence," and did not mention a waiver
> of the right to attack her plea or the plea agreement itself. *See Copeland*, 381 F.3d
> at 1105. Therefore, Cowart's valid sentence-appeal waiver does not preclude these
> issues, which relate to the validity of the plea or waiver itself.

139 Fed. App'x at 208. Likewise, in *Patel v. United States*, 252 Fed. App'x 970, 974-975 (11th Cir.

2007), the court expressly held that plea agreement waiver, even if valid, could not preclude

consideration of § 2255 claims contesting the validity of the guilty plea or the plea agreement based

on counsel's alleged ineffective assistance.

This case is similar to *Cowart* and *Patel* in that the waiver providing that Vasiloff waived

his right to challenge in any collateral attack the sentence imposed, the manner in which the sentence

was imposed, and any fines or special assessments. The waiver did not mention a waiver of his right

to attack the plea or plea agreement itself. Any sentencing issues may ultimately be precluded based

upon the waiver; however, under Eleventh Circuit precedent, a challenge to the validity of the plea

or plea agreement based on events leading up to the plea or plea agreement (such as the

ineffectiveness of counsel) would not be precluded by the waiver in this case.

Based on the foregoing, the magistrate judge RECOMMENDS that the Government's

Motion to Dismiss (Civ. Doc. 6) be DENIED and that the Government be given an opportunity to

file a response addressing Vasiloff's § 2255 claims on the merits.

### Notice of Right to Object

Any party who objects to this report and recommendation must, within 14 days of the date

on which it is entered, file specific written objections with the clerk of this court. Failure to do so

will bar any later challenge or review of the factual findings of the magistrate judge. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140 (1985); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982) (en banc). In order to challenge the findings of the magistrate judge, a party must file with the clerk of the court written objections which shall specifically identify the portions of the proposed findings and recommendation to which objection is made and the specific basis for objection. A copy of the objections must be served upon all other parties to the action.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge shall make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the magistrate judge. The district judge, however, need conduct a hearing only in his discretion or if required by law, and may consider the record developed before the magistrate judge, making his own determination on the basis of that record. The district judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Objections not meeting the specificity requirement set out above will not be considered by a district judge. A party may not appeal a magistrate judge's recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a district judge.

As to the foregoing it is SO ORDERED this the 4th day of September, 2012.

_____
PAUL W. GREENE
CHIEF MAGISTRATE JUDGE

4

**22**

FILED
2012 Oct-30 PM 02:43
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | |
|---|---|
| **GARY STEVEN VASILOFF,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **CIVIL ACTION NO.:** |
| | ) **4: 10-CV-8001-VEH-MHH** |
| | ) **(4:07-CR-337-VEH-MHH)** |
| **UNITED STATES OF AMERICA,** | ) |
| | ) |
| **Defendant.** | ) |

## O R D E R

On September 4, 2012, the magistrate judge's report and recommendation was entered and the plaintiff was allowed therein fourteen (14) days in which to file objections to the recommendations made by the magistrate judge. No objections have been filed by the plaintiff.

After careful consideration of the record in this case and the magistrate judge's report and recommendation, the court hereby **ADOPTS** the report of the magistrate judge. The Government's Motion to Dismiss (Doc. 6) if **DENIED** and the Government has twenty-one (21) days in which to file any response addressing Vasiloff's § 2255 claims on the merits.

This matter is **REFERRED** back to the magistrate judge.

      **DONE** this the 30th day of October, 2012.

                                    **VIRGINIA EMERSON HOPKINS**
                                    United States District Judge

**25**

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF ALABAMA

### MIDDLE DIVISION

| | | |
|---|---|---|
| **GARY STEVEN VASILOFF** | ) | |
| | ) | |
| **v.** | ) | **4:10-CV-08001-VEH-MHH** |
| | ) | |
| **UNITED STATES OF AMERICA** | ) | |

### UNITED STATES RESPONSE TO § 2255 MOTION

COMES NOW the United States of America, by and through its attorneys,

Joyce White Vance, United States Attorney for the Northern District of Alabama, and

Mary Stuart Burrell, Assistant United States Attorney, and, in compliance with this

Court's order to show cause, responds to Petitioner Gary Steven Vasiloff's Motion

Under § 2255 to Vacate, Set Aside, Or Correct Sentence By a Person In Federal

Custody, as follows:

**I.**      **Vasiloff's Claims Under 28 U.S.C. § 2255 Have No Merit.**

Vasiloff's Motion (Document 5) and his subsequent Clarification of Movant's

Prior Request (Document 20) allege that his trial counsel rendered ineffective

assistance of counsel by recommending that he enter into a plea agreement with the

government wherein he waived, with limited exceptions, his right to appeal any

1

sentence that the court might impose upon him. He asserts that the appeal waiver is invalid because it was the product of ineffective assistance of counsel. More specifically, he argues that a plea agreement is essentially a contract, he gave up his right to appeal in "exchange for nothing." (Doc. 5 at p. 9.)

"The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To prove an ineffective-assistance claim, Vasiloff must show "both incompetence and prejudice: (1) [Vasiloff] must show that counsel's representation fell below an objective standard of reasonableness, and (2) [Vasiloff] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Chandler v. United States*, 218 F.3d 1305, 1312-13 (11th Cir. 2000) (*en banc*) (quotations omitted).

    **A.    Deficient Performance.** "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. Specifically, "the defendant must show that counsel's representation fell below an objective standard of

2

reasonableness." *Strickland* at 688; *see also id.* ("The proper measure of attorney performance remains simply reasonableness under prevailing professional norms."); *Chandler*, 218 F.3d at 1315 ("The reasonableness of a counsel's performance is an objective inquiry."). The defendant must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment," and the court must then determine "whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690; *Chandler*, 218 F.3d at 1314. In other words, "a petitioner must establish that *no competent counsel* would have taken the action that his counsel did take." *Chandler*, 218 F.3d at 1315 (emphasis added). Vasiloff bears the burden "to prove, by a preponderance of competent evidence, that counsel's performance was unreasonable." *Id.* at 1313.

Of course, "[j]udicial scrutiny of counsel's performance must be highly deferential," and "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689; *Chandler*, 218 F.3d at 1314.[1] "A fair assessment of attorney performance

---

[1] "[W]here the record is incomplete or unclear about counsel's actions, [a court] will presume that he did what he should have done, and that he exercised reasonable professional judgment." *Chandler*, 218 F.3d at 1314 n.15 (quotations omitted). The presumption of reasonable performance is even stronger when the court reviews the performance of "experienced trial counsel." *Id.* at 1316.

3

requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. Given the strong presumption that counsel's performance was reasonable, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994);[2] *see Chandler*, 218 F.3d at 1313.

Robert B. Tuten, the trial attorney in this case, prepared an affidavit which is attached to this response as Attachment A. Contrary to Vasiloff's assertion that he gave up his right to appeal in "exchange for nothing," Mr. Tuten recalls the circumstances surrounding the signing of the plea agreement differently. According to Mr. Tuten, Vasiloff never denied his participation in this crime[3] and even discussed with his attorney information which, if ever discovered, would have led to additional charges. "The reasonableness of counsel's actions may be determined or substantially

---

[2] Although *Rogers* is a Section 2254 case, "the principles developed in habeas cases also apply to § 2255 motions." *Gay v. United States*, 816 F.2d 614, 616 n.1 (11th Cir. 1987) (*per curiam*); *see Conaway v. United States*, 184 Fed. Appx. 890, 891 (11th Cir. 2006) (unpublished) (*per curiam*) ("the principles developed in § 2254 proceedings likewise apply to motions under § 2255").

[3] Indeed, Vasiloff admits at page 8 of Document 5 that he caused the illicit photographs to be created.

4

influenced by the defendant's own statements or actions." *Strickland*, 466 U.S. at 691.

In an effort to stop the investigative process, the defendant and the government began

plea negotiations.  After assurances from the government that the investigation

would be closed and no further charges were forthcoming if the defendant pleaded

guilty, the defendant signed the plea agreement. Mr. Tuten states that Vasiloff agreed

to the terms knowing that "numerous sentencing enhancements . . . could and would

be applied to his sentence" and that "his ultimate sentence would be severe."

Attachment A. Certainly this negates a showing that Mr. Tuten's performance was

objectively unreasonable.

    **B.**   **Prejudice.**  Even if a defendant can demonstrate that his counsel's

performance was objectively unreasonable, "the defendant must show that the

deficient performance prejudiced the defense. This requires showing that counsel's

errors were so serious as to deprive the defendant of a fair trial, a trial whose result

is reliable." *Id.* at 687; *see also id.* at 692 ("[a]ny deficiencies in counsel's

performance must be prejudicial to the defense in order to constitute ineffective

assistance under the Constitution"). "It is not enough for the defendant to show that

the errors had some *conceivable* effect on the outcome of the proceeding"; rather,

"[t]he defendant must show that there is a reasonable probability that, but for

counsel's unprofessional errors, the result of the proceeding would have been

different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 693-94 (emphasis added); *see also Cross v. United States*, 893 F.2d 1287, 1290 (11th Cir. 1990) ("[p]rejudice is established when there is a reasonable probability that the result of the proceedings would have been different had counsel not performed deficiently").

A determination of *Strickland* prejudice is "necessarily dependent on a review of the merits" of the underlying claim. *Cross*, 893 F.2d at 1290. "Counsel cannot be labeled ineffective for failing to raise issues which have no merit." *Card v. Dugger*, 911 F.2d 1494, 1520 (11th Cir. 1990). The issues Vasiloff raises in this motion have no merit.

**C.** **Argument.** Vasiloff alleges that had he not signed the appeal waiver in his plea agreement, he would have been able to raise the following issues on appeal: (1) That all counts in the indictment for production of child pornography should have been "grouped" together since the government cannot prove "that there was more than a single production day." (Doc. 5 at p.15); (2) That enhancements for both "grouping" and "pattern of conduct" comprise an impermissible double counting. (Doc. 5 at p. 17); (3) That the enhancement for "providing alcohol"/ "vulnerable victim" should not have been applied because the beer bottle in one of the photographs was a "prop." (Doc. 5 at p. 18-19); and (4) He should not have been

6

convicted of Possession of Child Pornography because the images in question were deleted from his computer. (Doc. 5 at 22).

As to the issue of grouping, the probation office conducted an independent review of the images produced by Vasiloff and made the following findings:

9.     The following is an analysis of the child pornography images of MF which **Vasiloff** produced:

10.    ***Counts One through Nine:*** These images were taken on June 23, 2006. One of the images depicts the vagina and breast of MF. Another depicts a close-up of the vagina and anus of MF. Two of the images depict MF's vagina while she is naked on a bed. One of the images depicts the anus and vagina of MF. One of the images depicts MF placing a vibrator in her vagina, two other images are close-ups of the victim placing a vibrator in her vagina. Another image depicts the face and body of MF with a vibrator.

11.    ***Count Ten:*** This image was taken on July 3, 2006, and depicts a close-up image of MF's vagina.

12.    ***Counts Eleven through Thirteen:*** These images were taken on July 1, 2006, and depict MF outdoors while naked

7

in a vehicle. Her vagina is visible in each image, and she is
consuming alcohol.

13.      **Count Fourteen:** This image was taken on July 9, 2006,
and depicts MF outdoors while naked in a vehicle. Her
vagina is visible in each image, and she is consuming
alcohol.

14.      **Counts Fifteen through Twenty-One:** These images were
taken on August 14, 2006. Two of these images depict MF
naked on a pillow in a living room. Two of these images
depict MF naked outside on a blanket and her vagina is
visible. In another of these images, MF is naked outside on
a blanket and her vagina and anus are visible. One of these
images depicts a close-up of MF's vagina and anus. One
of these images depicts a close-up of MF's vagina while
she is naked outside on a blanket.

15.      In addition, there is at least one uncharged image of MF's
breast.

(Presentence Investigation Report (PSR) at p. 6.) For sentencing purposes, the
images were "grouped" according to the separate and distinct dates on which each set

8

of images were produced. This was the correct way to group the images, since each "photo shoot" was a different harm.

United States Sentencing Guidelines Section 3D1.2(b) states "All counts involving substantially the same harm shall be grouped together into a single Group. Counts involve substantially the same harm within the meaning of this rule . . . [w]hen counts involve the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan." However, application note 4 to this section makes it clear that [t]his provision does not authorize the grouping of offenses that cannot be considered to represent essentially one composite harm (e.g., robbery of the same victim on different occasions involves multiple, separate instances of fear and risk of harm, not one composite harm.) The commentary in the same note additionally gives the following example: (5) The defendant is convicted of two counts of rape for raping the same person on different days. The counts are not to be grouped together.

Vasiloff next argues that enhancements for both "grouping" and "pattern of conduct" or "pattern of activity" was impermissible double counting. In support of the five level enhancement to Vasiloff's guidelines calculation, the probation officer stated:

**Chapter Four Enhancements:** Pursuant to §4B1.5 (Repeat and

9

Dangerous Sex Offender Against Minors), if the defendant's instant offense of conviction is a covered sex crime, neither §4B1.1 nor section (a) of this guideline applies, and the defendant engaged in a pattern of activity involving prohibited sexual conduct, *the offense level shall be 5 plus the offense level determined under Chapters Two and Three*. Application Note 4(A) to the Commentary at § 4B1.5, describes "prohibited sexual conduct" as any of the following (i) any offense described in 18 U.S.C. § 2426(b)(1)(A) or (B); (ii) the production of child pornography; or (iii) trafficking in child pornography, only if previously convicted of felony offense of child pornography. The defendant engaged in a pattern of prohibited sexual conduct when he sexually exploited MF on numerous occasions by producing images of child pornography on more than one occasions, for a total of 21 images. Comment. (n.4)(B) describes the determination of a pattern of activity. An occasion of prohibited sexual conduct may be considered for purposes of subsection (b) without regard to whether the occasion (I) occurred during the course of the instant offense; or (II) resulted in a conviction for the conduct that occurred on that occasion. Therefore, the offense level becomes 47. (It is noted that §4B1.5(a) did not apply because the defendant did not have a prior "sex offense conviction.")

(PSR at p. 13.)

In *United States v. Carter*, 292 Fed.Appx. 16 (11th Cir. 2008), the Court addressed the issue of double counting relative to Chapter 2 and Chapter 4 enhancements.

"Impermissible double counting occurs only when one part of the Guidelines is applied to increase a defendant's punishment on account of a kind of harm that has already been fully accounted for by application of another part of the Guidelines." *United States v. Matos-Rodriguez*, 188 F.3d 1300, 1309 (11th Cir.1999) (internal citation omitted). Double counting is permitted, however, "if the Sentencing Commission intended that result and each guideline section in question concerns conceptually separate notions relating to sentencing." *United*

10

States v. Stevenson, 68 F.3d 1292, 1294 (11th Cir.1995); *see also United States v. Dudley*, 463 F.3d 1221, 1227 (11th Cir.2006) (finding no impermissible double counting where the Guidelines sections at issue addressed separate harms). "This court presumes the Sentencing Commission intended to apply separate guideline sections cumulatively, *unless* specifically directed otherwise." *Matos-Rodriguez*, 188 F.3d at 1310. . . .

As stated above, this Court presumes that the Sentencing Commission intended for Guidelines sections to apply cumulatively. Additionally, here we have specific guidance that these sections were not intended to be exclusive of one another. Section 4B1.5(b)(1) states that the enhancement from that section "shall be 5 *plus* the offense level determined under Chapters Two and Three." (emphasis added). This indicates that the Sentencing Commission intended for the application of enhancements under Chapter Two (like the § 2G2.2(b)(5) enhancement applied here) to be *added* to the § 4B1.5(b)(1) enhancement. These two sections also address different harms. Section 2G2.2(b)(5) addresses the fact that the offense itself involved a pattern of sexually exploiting minors. Section 4B1.5, however, looks at the likelihood that the defendant will become a repeat offender and whether lengthy incarceration is therefore needed to protect the public. *See* U.S.S.G. § 4B1.5(b)(1) cmt. background. The application of sections 2G2.2(b)(5) and 4B1.5(b)(1) did not, therefore, involve impermissible double-counting.

*Carter*, 292 Fed.Appx. at 3-5. Clearly, this issue is without merit.

Vasiloff's third argument is that the enhancement for "providing alcohol"/ "vulnerable victim" should not have been applied because the beer bottle in one of the photographs was a "prop." However, had this issue been raised by the defense, the government was prepared to offer evidence that the victim had disclosed that Vasiloff frequently gave her alcoholic wine coolers, Valium and Xanax. She also

disclosed that these substances were given to her prior to the production of the child pornography. The government also would have introduced the images in question. In two of the images, the victim appears to be asleep or otherwise not conscious. The "prop" as Vasiloff refers to the "beer bottle" appears in three of the images. It is clear in two of the images that there is liquid in the bottle and the victim is drinking from the bottle in one of those images.

Finally, Vasiloff argues that he should not have been convicted of Possession of Child Pornography because the images in question were deleted from his computer. He has attached an affidavit to his motion from a computer science professor who states that "he is confident that [Vasiloff] would have been unable to recover/undelete the files on his computer without the assistance of others and the use of specialize (sic) programs." He further states that because of this opinion, he is "confident in stating" that Vasiloff neither "actually possessed" the images in question nor had them under his "dominion and control" when his computer was seized by law enforcement. (Doc. 5, Exhibit B at p.2.)

With all due respect to the computer science expert, his opinion is contrary to the law in this circuit. In *United States v. Shiver*, 305 Fed.Appx.640, 643 (11th Cir. 2008), the defendant argued that since all of the images of child pornography on his computer had been deleted and stored in the computer's unallocated files, and since

12

he lacked the "forensic software" to access or retrieve them from that location, he consequently lacked the ability to exercise dominion or control over the images. The Court found, however, that even if it were true that the defendant was in fact unable to retrieve the deleted images from the unallocated space of his hard drive, he did exercise dominion and control over them when he deleted them.

## III.   Conclusion

As outlined above, any challenge on appeal of the issues Vasiloff would have raised had he not signed the appeal waiver would have been futile. Therefore, his allegations in the pending motion are insufficient to support a finding of deficient performance or prejudice. Therefore, the United States respectfully requests that because Vasiloff has not pleaded facts or presented sufficient evidence or argument demonstrating that he is entitled to an evidentiary hearing, his claims for relief should be summarily denied. *See, e.g., Blacklidge v. Allison*, 431 U.S. 63, 73-74 (1977); *Tejada v. Dugger*, 941 U.S. 1551, 1559 (11th Cir. 1991).

Respectfully submitted this the 19th day of December, 2012.

JOYCE WHITE VANCE
United States Attorney

*Mary Stuart Burrell*

MARY STUART BURRELL
Assistant United States Attorney

13

CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing has been served on the appellant

by mailing a copy of same to him (acting pro-se) by First Class, United States Mail,

postage prepaid, this the 19th day of December, 2012, at the following address:

> Gary Steven Vasiloff
> Reg. No. 26486-001
> USP Tucson
> P.O. Box 24550
> Tucson, Arizona 85734

*Mary Stuart Burrell*

MARY STUART BURRELL
Assistant United States Attorney

14

AFFIDAVIT OF ROBERT B. TUTEN

Comes now ROBERT B. TUTEN, after being duly sworn and deposes and states as follows:

My name is Robert B. Tuten. I am a practicing attorney in Huntsville, AL. I was appointed under the CJA to represent Mr. Vasiloff in a child pornography case. From the beginning, Mr. Vasiloff admitted his guilt. The evidence against him was overwhelming. Mr. Vasiloff also informed me of information that caused us to believe that other related charges would be filed against him if this information ever came to light through his admission or through a more thorough investigation. I shall not divulge this information as it is covered by the attorney client privilege. Mr. Vasiloff did not want a trial as trial preparation could result in the Government discovering the additional information about the case. Further, Mr. Vasiloff could not testify at a trial without the probability of his testimony revealing to the Government information that could and probably would lead to more charges.

After lengthy discussions with Mr. Vasiloff, he decided that resolving his case by guilty plea was in his best interests. Mr. Vasiloff and I reviewed the United States Sentencing Guidelines that applied to his case. Mr. Vasiloff knew that there were numerous sentencing enhancements that could and would be applied to his sentence. Mr. Vasiloff knew that the sentencing enhancements would cause his ultimate sentence to be severe. Mr. Vasiloff was not sentenced to "life". However, given his age and given the length of his sentence, in reality he will probably never be released from prison.

The benefit Mr. Vasiloff derived from his plea agreement was a recommendation of a sentence at the low end of the sentencing guidelines, a reduction in guideline level for acceptance of responsibility, and reasonable assurances from the Government that the investigation was closed and that there were no other possible charges that would be filed in the Northern District of Alabama.

When Mr. Vasiloff decided to appeal his conviction he was already in prison. I wrote to him and asked him to tell me what issues he wanted to raise in his appeal. He never responded to any of my letters. Therefore, I reviewed his transcript and formulated issues to raise on appeal on my own.

ROBERT B. TUTEN

STATE OF ALABAMA
COUNTY OF MADISON

## VERIFICATION

BEFORE ME, the undersigned Notary Public in and for said County and State, personally appeared ROBERT B. TUTEN, whose name is signed to the foregoing testimony, and who is known to me, acknowledged before me on this date, that he signed the foregoing voluntarily and that the facts contained therein are true and correct on this the 20th day of November, 2012.

NOTARY PUBLIC

My Commission Expires: 1-27-15

# 37

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| GARY STEVEN VASILOFF, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Case No. 4:10-cv-8001-VEH-MHH |
| | ) (Crim. No. 4:07-cr-337-VEH-PWG) |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |

## REPORT AND RECOMMENDATION

Movant Gary Steven Vasiloff seeks relief from a 3,900 month sentence that

the Court imposed after Mr. Vasiloff pled guilty to 21 counts of sexual

exploitation of a child (his then 14-year-old stepdaughter) and one count of

possession of child pornography. Pursuant to 28 U.S.C. § 2255, Mr. Vasiloff asks

the Court to vacate, set aside, or correct his sentence. (Doc. 1; Crim. Doc. 38).[1]

Mr. Vasiloff contends that the sentence is unconstitutional and that his counsel

was ineffective for a variety of reasons, including his attorney's purported failure

to obtain adequate consideration for the appeal waiver in Mr. Vasiloff's plea

---

[1] Citations to the record concerning Mr. Vasiloff's §2255 motion appear throughout this
Report and Recommendation as "(Doc. ___)." Citations to the record in the criminal
proceedings against Mr. Vasiloff appear as "(Crim. Doc. ___)."

1

agreement. (*Id.*) After reviewing the record concerning Mr. Vasiloff's § 2255

motion and the record from Mr. Vasiloff's criminal case, the undersigned

magistrate judge recommends that the District Court deny the § 2255 motion.

**OPERATIVE FACTS**

On August 8, 2007, the Government filed a complaint against Mr. Vasiloff

for possession of images of child pornography in violation of 18 U.S.C. §

2252A(a)(5)(B). (Crim. Doc. 1). Thereafter, the grand jury returned a twenty-

three count indictment against Mr. Vasiloff. (Crim. Doc. 9). Counts one through

twenty-one of the indictment charge that Mr. Vasiloff violated 18 U.S.C. §

2251(a) by inducing and using a minor to engage in sexually explicit conduct for

the purposes of producing a photograph of the conduct, using materials that had

traveled in interstate and foreign commerce. Each of the twenty-one counts

corresponds to a separate photograph that Mr. Vasiloff took of his then 14-year-

old stepdaughter. (Crim Doc. 9, pp. 1-13; Crim. Doc. 28, p. 10-11). Count

twenty-two charges that Mr. Vasiloff violated 18 U.S.C. § 2252A(a)(5)(B)

because he possessed images of child pornography that were produced using

materials that had traveled in interstate and foreign commerce. (Crim. Doc. 9, p.

2

Case 4:10-cv-08001-VEH-SGC Document 37 Filed 08/14/13 Page 3 of 45

13).[2]

On October 18, 2007, Mr. Vasiloff signed a plea agreement in which he

agreed to plead guilty to twenty-one production counts and one possession of child

pornography count. (Crim. Doc. 15, p. 1). In the agreement, Mr. Vasiloff

stipulated that the following facts are accurate and provide the basis for his plea:

> The Alabama Department of Human Resources Assessment of Children at
> Risk officials received information and reported the same to the Cherokee
> County Sheriff's Office (CCSO) advising that Gary Steven Vasiloff had
> taken nude photographs of his stepdaughter (age 14) using a dildo and
> posing in other lewd and lascivious positions, and had downloaded the
> photos from his digital camera onto his personal computer. It was also
> alleged that the victim had been given alcoholic beverages before the
> pictures were taken.

> On January 23, 2007, the CCSO executed a state search warrant at
> Vasiloff's residence. Vasiloff's computer was seized, along with other
> items of evidence, including a digital camera and a dildo. The CCSO
> utilized the computer analysis services of the Alabama Computer Forensic
> Lab to analyze Vasiloff's computer. Vasiloff's computer was analyzed and
> twenty-one images of child pornography depicting the victim were
> discovered. Seven additional images of the victim depicting breast nudity
> were also discovered. In numerous of these pictures, the victim can be seen
> consuming alcoholic beverages she says were given to her by Vasiloff. The
> images were produced by a Concord camera, which was manufactured in
> the People's Republic of China.

> The FBI initiated its investigation into the matter after receiving
> investigative reports from the CCSO on July 17, 2007. On July 31, 2007, an

---

[2] Pursuant to 18 U.S.C. § 2253(a)(3), the Government demanded a forfeiture of property.
(Crim. Doc. 9, pp. 13-14).

3

examiner with the Alabama Computer Forensic Lab provided the FBI with a report of examination of Vasiloff's personal computer. The FBI reviewed the report on July 31, 2007, and confirmed the images of child pornography were in fact of the victim in question.

On August 8, 2007, Vasiloff was arrested on a federal complaint charging him with Possession of Child Pornography. After waiving his rights pursuant to *Miranda*, he confessed to producing the images of child pornography depicting his stepdaughter. He admitted that the images had been taken at a deceased relative's abandoned house in Cherokee County, Alabama, between the dates of June 23, 2006, and August 14, 2006. He also turned over the Concord camera used to produce the images.

(Crim Doc. 15, pp. 3-4).

Under the terms of the plea agreement, the parties acknowledged that the maximum statutory punishment that a court could impose for production of child pornography was imprisonment for not more than 30 years. (Crim. Doc. 15, p. 2). The maximum statutory punishment for possession of child pornography was imprisonment for not more than 10 years. (*Id*. at 3).

The plea agreement contains a provision pursuant to which Mr. Vasiloff, with one narrow exception, waived his right to appeal or to attack collaterally via a § 2255 motion the sentence that the Court imposed following his plea. The waiver provision states:

**I, GARY STEVEN VASILOFF, hereby waive my right to appeal my conviction in this case, any fines, restitution, and/or sentence (including one for revocation of release) that the court might impose upon me, and the right to challenge any sentence so imposed or the**

4

> manner in which the sentence was determined in any collateral
> attack, including, but not limited to, a motion brought under 28
> U.S.C. § 2255, subject to the following limitations:
>
> The defendant reserves the right to contest in an appeal or
> post-conviction proceeding:
>
> (a)     Any sentence imposed in excess of the applicable statutory
>         maximum sentence(s).
>
>         The defendant acknowledges that before giving up these
> rights, he discussed the Federal Sentencing Guidelines and their
> application to his case with his attorney, who explained them to his
> satisfaction. The defendant further acknowledges and understands
> that the government retains its right to appeal where authorized by
> statute.
>
>         I, GARY STEVEN VASILOFF, hereby place my signature on the
> line directly below to signify that I fully understand the foregoing
> paragraphs, and that I am knowingly and voluntarily entering into
> this waiver.

(Crim. Doc. 15, pp. 5-6) (emphasis in original)(signature on original).

After Mr. Vasiloff signed the plea agreement, the District Court held a change of plea hearing. (Crim. Doc. October 18, 2007 minute entry; Crim. Doc. 27). Before accepting Mr. Vasiloff's guilty plea, the District Court judge placed Mr. Vasiloff under oath and questioned him about his understanding of the plea and matters relevant to sentencing. (Crim. Doc. 27, pp. 3:22-4:7). The Court first asked Mr. Vasiloff whether he understood the Guilty Plea Advice of Rights Certification that he and his attorney signed. (*See* Crim. Doc. 14). Mr. Vasiloff

5

acknowledged that his attorney explained the form to him:

> THE COURT: Mr. Vasiloff, do you have in front of you a copy of a document entitled Guilty Plea Advice of Rights certification stamped filed October 18th, 2007?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: Did you and your attorney fill out that document?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: Did you understand the information in that document?
>
> THE DEFENDANT: Mostly, yes, ma'am.
>
> THE COURT: What did you not understand? Is there anything you want to go over with me?
>
> THE DEFENDANT: No, ma'am.
>
> THE COURT: Can you tell me any parts of it that you do not understand?
>
> THE DEFENDANT: It was just the way some of the stuff was worded. Yes, he helped me through it.
>
> THE COURT: Now that your lawyer has talked to you about what's in the document, after his explanation, do you understand the document?
>
> THE DEFENDANT: Yes, ma'am.

(Crim. Doc. 27, pp. 4:20-5:15).[3]

---

[3] The Advice of Rights Certification contains several pertinent provisions. It states, for example: "The court must be satisfied that the defendant has not been coerced by any threat or

Mr. Vasiloff told the Court that before he signed the plea agreement, he had

sufficient opportunity to review the agreement with his attorney, Mr. Tuten. He

stated that Mr. Tuten answered all of his questions. (Crim. Doc. 27, p. 9:10-18).

The Court informed Mr. Vasiloff that the plea agreement contained a waiver

provision, pursuant to which he was waiving his right to appeal certain issues. (*Id.*

at 9:19-10:3). Mr. Vasiloff told the Court that he understood that he was giving

up some or all of his rights to appeal. (*Id.* at 10:4).

Before accepting the guilty plea, the District Court asked Mr. Vasiloff if he

understood that the Court had the option of imposing a variety of sentences:

> In other words, do you understand, Mr. Vasiloff, that if I accept your plea of guilty, when I impose a sentence, I could structure a sentence that is totally consistent with the plea agreement or recommendations made by the U.S. Attorney's Office, or I could structure a sentence that could be viewed as substantially more severe or substantially less severe than the contemplated sentence, and yet you would have no right to withdraw the plea of guilty you were in the process of entering? Do you fully understand that?

(Crim. Doc. 27, p. 10:10-19). Mr. Vasiloff told the Court that he understood. (*Id.*

at 10:20). Thereafter, the Court explained the maximum penalties relating to Mr.

Vasiloff's charges. (*Id.* at 11:7-12:19). In doing so, the Court explicitly stated

---

induced by any improper promise to enter the guilty plea, but that the plea is the free, uncoerced and voluntary choice of the defendant." (Crim. Doc. 14, p. 2). After that provision, there are two blanks for the defendant to select either "Done" or "Not Done." (*Id.*) Mr. Vasiloff initialed "Done." (*Id.*)

that the available penalties for "Counts 1 through 21" applied to *each* count:

> Do you understand that the maximum penalties as to Counts 1 through 21: A fine of not more than $250,000. And this applies to each count, so there's 21 counts. So that's 21 times $250,000. Custody of not less than 15 years and not more than 30 years; again that is each count.

(Crim. Doc. 27, p. 11:15-19). The Court also noted that as to Count 22, "the custodial term is not more than ten years." (Crim. Doc. 27, p. 12). Mr. Vasiloff stated that he understood the maximum penalties. (*Id.* at 13). Additionally, Mr. Vasiloff acknowledged that, "the Court must consider applicable sentencing guidelines but may depart from those guidelines." (*Id.* at 13). His attorney, Mr. Tuten, confirmed that he, "completely discussed with and advised Mr. Vasiloff regarding the sentencing guidelines and the fact that they're merely advisory." (*Id.* at 13).

Mr. Vasiloff recognized that he had a right to insist upon a plea of not guilty. (Crim. Doc. 27, p. 13:19-21). The Court reviewed with Mr. Vasiloff all the charges and definitions of the indictment. (*Id.* at 14:22-21:17). Mr. Vasiloff told the Court that he understood the charges against him and that he had seen all of the photographs at issue. (*Id.* at 14-16, 18). Additionally, the Court asked Mr. Vasiloff if he was satisfied with his attorney. (*Id.* at 21:23-25). Mr. Vasiloff responded, "[y]es, your honor." (*Id.*)

8

The Court gave the Government an opportunity to outline the evidence the Government would present if the case were to proceed to trial. (Crim. Doc. 27, p. 23:2-7). The Court directed Mr. Vasiloff to interrupt the Government if he believed that any of the Government's evidence was not true or could not be proved. (*Id.*) The Government outlined its case. (*Id.* at 23:16-25:5). Mr. Vasiloff told the Court that the facts the Government presented were substantially correct, including the Government's assertion that Mr. Vasiloff admitted that the images were taken "between the dates of June 23, 2006 and August 14, 2006." (*Id.* at 25:10). The Court informed Mr. Vasiloff that he was not required to plead guilty and that he was free to withdraw his guilty plea. (*Id.* at 26:4-7). Mr. Vasiloff still pled guilty. (*Id.* at 26:16). The Court found that Mr. Vasiloff's guilty plea was "freely, voluntarily, understandingly, and knowingly offered by him," and the Court accepted his guilty plea. (*Id.* at p. 29:11-17).

On January 16, 2008, the Court sentenced Mr. Vasiloff. (Crim. Doc. 28). Mr. Tuten, Mr. Vasiloff's counsel, acknowledged that he and Mr. Vasiloff had 35 days to review the presentence report. (*Id.* at 3:11-13). Mr. Vasiloff did not object to the report. (*Id.* at 3:14-17).

The Court noted that, "in his plea agreement, [Mr. Vasiloff] admitted certain facts that bear upon the computation of his offense level under the guidelines."

(Crim. Doc. 28, p. 3:23-25). The Court then stated, "[t]here being no objections, the Court adopts the factual statements contained in the presentence report and makes specific findings that the guidelines offense level is 43, the criminal history category is 1, and the advisory guideline imprisonment term is life. However, the defendant will be sentenced within the statutory limitations set forth in United States Sentencing Guidelines Section 5G1.2(d)." (*Id.* at 4:15-22). The Court stated that it determined the guideline sentence by stacking the statutory minimums for counts 1 through 21 and the statutory maximum for count 22. (*Id.* at 15:14-17). Mr. Vasiloff's attorney objected to the stacking of the statutory minimums on Counts 1 through 21. (Crim. Doc. 28, p. 16:4-6).

Mr. Tuten asked the Court for a variance from the sentence. (Crim. Doc. 28 at p. 5:9-11). He argued, among other things, that Mr. Vasiloff was over 50 years old at the time of sentencing; that Mr. Vasiloff did not have an adult criminal history; and that Mr. Vasiloff deleted the images at issue from his computer before the federal investigation of his conduct began, indicating that he did not intend to "trade, sell, distribute, or keep" the images. (Crim. Doc. 28, pp. 6-7). Mr. Tuten also asked the Court to consider the Eleventh Circuit Court of Appeals's decision in *United States v. McBride*, a case in which the court of appeals affirmed a "lenient" sentence of a defendant "charged with possessing 981 images and 45

10

separate videos involving child pornography." (*Id.* at 8-9). Finally, Mr. Vasiloff

offered a statement in which he explained that he deleted the images from his

computer to prevent them from being "posted on the internet on sites." (*Id.* at 9).

In response to Mr. Tuten's request for a variance, the Government made a

proffer of evidence to memorialize the results of the Government's investigation.

The Government explained that it had evidence that demonstrated that Mr.

Vasiloff initially tried to cover up his conduct. Specifically, after his stepdaughter

was removed from his home, she reported to the person who was acting as her

foster mother that Mr. Vasiloff, "had given her a dildo and taught her how to

use it; had taken pictures of her; had given her alcoholic beverages. She also

alleges that he gave her controlled substances when this was happening . . ."

(Crim. Doc. 28, p. 11). DHR became involved, and state court hearings followed.

According to the Government, at those hearings, Mr. Vasiloff reported that his

stepdaughter, "was a habitual liar . . . He said that she had a mental illness. He said

that she had had a physical illness wherein she had gotten a really high fever and it

caused her to hallucinate and she had hallucinated these things. He said that she

had been taking medication and even produced the medication in court at one

point; said that one of the side effects of the medication was that it made her

hallucinate and make up things and be a habitual liar." (Crim. Doc. 28, pp. 11-12).

The Government informed the Court that Mr. Vasiloff did not take responsibility

for his conduct until after the FBI recovered the pictures from his computer and

placed the photographs in front of Mr. Vasiloff. (Crim. Doc. 28, p. 12). The

Government presented the pictures to the Court, and Mr. Tuten stated that Mr.

Vasiloff did not deny taking the pictures. (Crim. Doc. 28, p. 13).[4]

The Court acknowledged that stacking the mandatory minimum sentences

for 21 production counts and the maximum sentence for the possession count

produced "an extraordinarily long sentence" of 3,900 months "which is 325 years,

which is basically just another way of saying life," but the Court saw no reason to

vary from that sentence. (Crim. Doc. 28, p. 16:7-10). Explaining her decision not

to vary from the guideline range, the Court stated:

> The fact that Mr. Vasiloff used his position as the stepfather or surrogate
> father -- and by surrogate father, I mean more than stepfather. There was a
> close relationship where the child looked on Mr. Vasiloff as the person who
> had been in the role of her father makes this wors[e]. Although any
> child should not go through what this child went through, but the fact that
> Mr. Vasiloff was [for all intents and] purposes her father makes this worst.
> The fact that the mother was in the hospital just gave Mr. Vasiloff more
> access to his stepdaughter without any fear of discovery by his wife.

---

[4] With respect to Mr. Vasiloff's motion for variance, the Court noted that as opposed to
variance, there was no motion for departure from the guidelines, meaning that "the only
argument that the defendant is making is that the sentence – that the guidelines calculation is not
reasonable under the facts and circumstances of this case." (Crim. Doc. 28, p. 15). Mr.
Vasiloff's counsel agreed and acknowledged that he was objecting to the stacking of the statutory
minimums. (Crim. Doc. 28, pp. 15-16).

. . .

But because of the relationship between Mr. Vasiloff and this particular child, it's not only, you know, the production of child pornography or sexual exploitation of a child, but it's sexual exploitation of a child who in everything but a biological sense was the daughter of the perpetrator, and so it's incestuous type. Well, although I guess technically incest. It's just that type of violation. And the level of -- I mean, I am not a psychologist or psychiatrist, but the level of the impact on the victim, in my experience with these cases coming before me, is exacerbated when there is an incestuous type exploitation.

. . .

So, now I do note that the photographs were taken within a relatively short period of time; two months, I think, sixty days . . . So I have considered the fact that it was over a short period of time, and that may lessen the damage to the stepdaughter. I hope. I hope so. I would assume that a shorter period of time would be easier to recover from [than] years of abuse and exploitation. But he didn't just take pictures of his stepdaughter, he got her to perform sex acts, and they weren't sex acts on him or with him; they were with a dildo. So I have considered that. Therefore, I am not going to vary. And pursuant to the Sentencing Reform Act of 1984, it is the judgment of the Court that the defendant, Gary Steven Vasiloff, is hereby committed to custody of the Bureau of Prisons to be in prison for a term of [180] months for Counts 1 through 21, each count, separately, and 120 months as to Count 22 separately with each count to be served consecutively to the other. The total sentence imposed is 3,900 months pursuant to the United States Sentencing Guidelines Section 5G1.2(b).

(Crim. Doc. 28, pp. 16-19). The Court continued:

the Court finds that the sentence imposed is sufficient but not greater than necessary to comply with the statutory purposes of sentencing. Furthermore, the sentence is reasonable when considering the following sentencing factors found at 18 U.S.C. 3553(a), the nature and circumstances of the offense -- and I have talked about that in terms of, well, I may not

13

have specifically mentioned that the child was 14 at the time, but I considered that; her relationship with Mr. Vasiloff. I also considered the fact that Mr. Vasiloff doesn't have any real prior criminal history. I also considered the fact that the sexual exploitation involved causing the child to perform sex acts on herself, specifically, to penetrate herself with a dildo, in addition to the photographing of her. To reflect the seriousness of the offense; to promote respect for the law; and to provide just punishment for the offense; sexual exploitation of children -- the avoidance of that, the prohibition of that, and therefore the punishment of that to deter it by others -- certainly Mr. Vasiloff is not going to have an opportunity to do it again -- is about as important as [a] core value as I think this country has. And so the offense is extremely serious, and it's reflected in the sentence, and I think that the sentence does provide just punishment for the offense under all the facts and circumstances of this case.

(Crim. Doc. 28, pp. 19-20). Mr. Tuten re-newed Mr. Vasiloff's objection to the

sentence. (*Id*. at 23).

On January 25, 2008, Mr. Vasiloff filed a notice of appeal to the Eleventh

Circuit Court of Appeals, seeking relief from his sentence. (Crim. Doc. 22). The

Government moved to dismiss the appeal based on the appeal waiver in the plea

agreement. The Eleventh Circuit granted the Government's motion. (Crim. Doc.

34). On January 15, 2009, the Supreme Court of the United States denied Mr.

Vasiloff's petition for writ of certiorari. (Crim. Doc. 37).

On January 14, 2010, Mr. Vasiloff filed this 28 U.S.C. § 2255 motion. Mr.

Vasiloff contends that the Court should vacate his sentence, set it aside or correct

it because his counsel was ineffective during his plea negotiations, and his

sentence is unconstitutional. Mr. Vasiloff offers twelve grounds for relief:

1. Ineffective assistance of counsel in negotiating an appeal waiver without securing a true/actual benefit.

2. Compulsion, by ineffective counsel, with knowing complicity of other parties, to waive all my constitutional rights (based on an unrealistic unspoken promise).

3. Ineffective counsel never requested proof of the USPO-asserted "production dates" used to "group" the offense resulting in an incorrect sentencing enhancement and (inappropriately compelled me to waive this issue).

4. Ineffective counsel never requested proof of "multiple photo shoot dates"– and compelled me to waiver this argument– resulting in an inappropriate five-level enhancement for pattern of conduct.

5. The "providing alcohol to a minor making them vulnerable" enhancement [3A1.1(b)(1)] argument only succeeded because of IAC who then improperly compelled me to waive the argument.

6. It is multiplicitous [sic] – causing this Court to lose jurisdiction – when more than one "production" count is charged for a single "photo-shoot". (Also IAC not to argue/appeal this fact).

7. Constitutional and legal errors render this conviction invalid.

8. Constitutional and legal errors render this sentence invalid.

9. Cumulative error causes the conviction and/or sentence to be invalid.

10. My Constitutional right to "due process" and freedom from "cruel and unusual punishment" was violated by my lengthy sentence.

11.   Offense level 43 (or 44) should NOT be "mandatory Life" but instead be a "range" (as are levels 1-42 at Criminal History I).

12.   "Appeal waiver" (if not plea agreement itself) should be invalidated due to contract principles of "Lack of consideration" or "Mutual Mistake."

(Doc. 1; Crim. Doc. 38).

The Government filed a motion to dismiss, citing the waiver provision in Mr. Vasiloff's plea agreement. (Doc. 6). Mr. Vasiloff filed a response to the Government's motion to dismiss. (Doc. 12, 15). The magistrate judge recommended that the Court deny the Government's motion to dismiss because Mr. Vasiloff's claims concern the validity of the appeal waiver and his plea.[5] (Doc. 19). The Court adopted the recommendation and denied the Government's motion to dismiss. (Doc. 22).

The Government filed a response to Mr. Vasiloff's § 2255 motion. (Doc. 25). The Court issued a *McBride* order notifying the parties that the case was ripe for summary disposition. (Doc. 27). Mr. Vasiloff filed a reply brief and supplemental argument. (Docs. 34-36). He also filed motions for an evidentiary hearing and for court-appointed counsel. (Docs. 30, 32). On this record, the undersigned considers Mr. Vasiloff's motion for relief from the 3,900 month

_____

[5] This case was reassigned to the undersigned magistrate judge following the retirement of Chief Magistrate Judge Paul W. Greene.

16

sentence that he currently is serving.

## DISCUSSION

Pursuant to 28 U.S.C. § 2255, if the Court finds that the sentence imposed on Mr. Vasiloff "was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack," then the Court must "vacate and set the judgment aside" and "discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b). Mr. Vasiloff advances several arguments in support of his motion to vacate, set aside, or correct his sentence. In grounds one, two and twelve, Mr. Vasiloff contends that his counsel was ineffective during the plea negotiations. Because his counsel was ineffective, Mr. Vasiloff asserts that his appeal waiver is invalid. In the remaining grounds, Mr. Vasiloff contends that the enhancements discussed in his presentence investigation report are improper and that his sentence is unconstitutional. The record contradicts Mr. Vasiloff's assertion that he received ineffective assistance of counsel, and it supports his sentence. Consequently, Mr. Vasiloff is not entitled to habeas relief.

## I. MR. VASILOFF HAS NOT CARRIED HIS BURDEN WITH RESPECT TO HIS INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM.

Mr. Vasiloff contends that his trial counsel was ineffective during the plea negotiation. A petitioner may raise ineffective assistance of counsel claims with respect to plea negotiations despite a valid appeal waiver. *Vasiloff v. United States*, 2012 WL 5379334, \*1 (N.D. Ala. 2012) (citing *Williams v. United States*, 396 F.3d 1340, 1342 (11th Cir. 2005)).

To succeed on a claim of ineffective assistance of counsel, the petitioner must establish: (1) deficient performance—that his "counsel's representation fell below an objective standard of reasonableness;" and (2) prejudice—but for the deficiency in representation, "a reasonable probability exists that the result of the proceeding would have been different." *See Strickland v. Washington*, 466 U.S. 668, 688-696 (1984); *see also Chandler v. United States*, 218 F.3d 1305, 1312-1313 (11th Cir. 2000). The burden of proving ineffective assistance remains with the movant at all times. *Chandler*, 218 F.3d at 1315 n. 15.

The performance prong of *Strickland* "requires a petitioner to establish that counsel performed outside the wide range of reasonable professional assistance and made errors so serious that he failed to function as the kind of counsel

18

guaranteed by the Sixth Amendment." *Butcher v. United States,* 368 F.3d 1290,

1293 (11th Cir. 2004). The proper measure of attorney performance is

"reasonableness under prevailing professional norms." *Strickland,* 466 U.S. at

688. Because a wide range of performance is constitutionally acceptable, "the

cases in which habeas petitioners can properly prevail on the ground of ineffective

assistance of counsel are few and far between." *Rogers v. Zant,* 13 F.3d 384, 386

(11th Cir. 1994). Courts "are not interested in grading lawyers' performances" but

"are interested in whether the adversarial process at trial ... worked adequately."

*Id.* at 386. To be unreasonable, the performance must be such that "no competent

counsel would have taken the action that his counsel did take." *Grayson v.*

*Thompson,* 257 F.3d 1194, 1216 (11th Cir. 2001). "[E]ven if many reasonable

lawyers would not have done as defense counsel did," a court cannot grant relief

on ineffectiveness grounds unless the petitioner shows "that no reasonable lawyer,

in the circumstances, would have" taken similar action. *Rogers,* 13 F.3d at 386.

The prejudice prong of *Strickland* "requires a petitioner to demonstrate that

seriously deficient performance of his attorney prejudiced the defense." *Butcher,*

368 F.3d at 1293. In the guilty-plea context, a petitioner must establish "a

reasonable probability that, but for counsel's errors, he would not have pleaded

guilty and would have insisted on going to trial." *Hill v. Lockhart,* 474 U.S. 52,

59 (1985). Similarly, in the sentencing context, a petitioner must establish a

reasonable probability that, but for counsel's deficient performance, the result of

the sentencing proceeding would have been different. *Glover v. United States,*

531 U.S. 198, 203-04 (2001). Informed by this precedent, the undersigned

recommends that this Court find that Mr. Vasiloff's ineffective assistance of

counsel claim fails because he has established neither deficient performance by his

trial counsel nor prejudice created by the alleged deficiency.

### A. Mr. Vasiloff Has Not Demonstrated that his Attorney was Ineffective.

Mr. Vasiloff argues that Mr. Tuten was ineffective in negotiating the plea

agreement, so that the appeal waiver in the agreement is invalid or unenforceable.

Specifically, Mr. Vasiloff contends that Mr. Tuten was ineffective because Mr.

Vasiloff gave up his right to appeal, but he received nothing in return. Mr.

Vasiloff reasons "that a defendant can NEVER knowingly and intelligently waive

their appeal rights concerning an unknown, unimposed [sic] sentence." [6] (Doc. 5,

p. 8). Mr. Vasiloff believes that Mr. Tuten knew when he negotiated the

---

[6] Mr. Vasiloff cites *United States v. Raynor*, 989 F. Supp. 43 (D. D.C. 1997), for the
proposition that "a defendant cannot knowingly, intelligently and voluntarily give up the right to
appeal a sentence that has not yet been imposed and about which the defendant has no knowledge
as to what will occur at the time of sentencing." *Id.* at 49.

plea agreement that Mr. Vasiloff was facing a mandatory life sentence. (Doc. 5, p. 9).

Further, Mr. Vasiloff alleges that Mr. Tuten fraudulently induced him to enter the plea agreement by telling him how to answer the questions at the plea colloquy and informed him that he would receive a "'reasonable sentence' if I just 'went along with the procedure.'" (Doc. 5, p. 11). Mr. Vasiloff asserts that he was "'induced' to sign the plea agreement based on an understanding that my sentence was anticipated to be less than 'LIFE.'" (*Id.* at 13). Mr. Vasiloff argues that "I was led to believe that I would receive something more (by signing the plea agreement) than if I had plead without an agreement and absent any true benefit, I was fraudulently induced to enter into the deal - - regardless of what was said at the 'change of plea' hearing." (*Id.*)

Contrary to the assertions in his habeas petition, Mr. Vasiloff expressly acknowledged in his plea agreement that he did not receive promises that pressured him to plead guilty. (Crim. Doc. 15, p. 8). The plea agreement states:

**"NO OTHER PROMISES OR REPRESENTATIONS HAVE BEEN MADE TO ME BY THE PROSECUTOR, OR BY ANYONE ELSE, NOR HAVE ANY THREATS BEEN MADE OR FORCE USED TO INDUCE ME TO**

21

**PLEAD GUILTY.**" (*Id.*) (emphasis in original).

Statements that Mr. Vasiloff made under oath and subject to the penalty of perjury at his plea hearing similarly contradict his current contention that he was induced to enter the plea agreement. Statements made during the plea colloquy are presumed to be true. *United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994) ("There is a strong presumption that the statements made during the [plea] colloquoy are true."). Consequently, Mr. Vasiloff bears a heavy burden to show that his statements under oath were false. *United States v. King*, 450 Fed. Appx. 794, 800 (11th Cir. 2011); *United States v. Rogers*, 848 F. 2d 166, 168 (11th Cir. 1988). In this case, Mr. Vasiloff confirmed to the Court that his decision to enter the plea agreement was informed and voluntary, and he specifically acknowledged the effect of the appeal waiver.

| THE COURT: | Mr. Vasiloff, does the written plea agreement that is on the table in front of you contain everything that you are relying on at this time by way of a plea bargain or plea agreement? |
| --- | --- |
| THE DEFENDANT: | Yes, ma'am. |
| THE COURT: | Before you signed the agreement, did you have a sufficient opportunity to review it with your attorney, Mr. Tuten? |
| THE DEFENDANT: | Yes, ma'am. |

22

THE COURT: Did you have any questions of Mr. Tuten regarding the meaning of the agreement or how it might operate that he did not answer to your satisfaction?

THE DEFENDANT: No, ma'am, he answered all of my questions.

THE COURT: Mr. Vasiloff, the plea agreement that you have entered contains language waiving some or all of your rights to plea agreement the sentence to be imposed. Under certain circumstances, the defendant can waive his or her right to appeal, and that type of waiver may be enforceable. However, if you believe that the waiver that is in your plea agreement is not enforceable, you can appeal the sentence and present that theory to the appellate court. When you signed the plea agreement, did you understand that you were giving up some or all of your rights to appeal?

THE DEFENDANT: Yes, ma'am.

(Crim. Doc. 27, 9:5-10:4). Mr. Vasiloff's sworn statements that he read the plea documents, he had enough time to discuss the case with his counsel, and he was satisfied with the way his trial counsel handled his case undermine his allegation of deficient performance. *King*, 450 Fed. Appx. at 800-01 (affirming district court's decision to deny motion to withdraw guilty plea where district court did not abuse its discretion in finding that sworn statements that defendant made at plea hearing were true, and where statements from plea hearing contradicted the

23

arguments that defendant made on appeal).

Mr. Vasiloff specifically complains that Mr. Tuten did not provide accurate advice about the length of his sentence. This argument does not support a claim of deficient performance. "[T]rial counsel's failure to accurately predict the sentence which the trial court will impose is not deficient performance. As the Eleventh Circuit has reiterated, effective assistance of counsel does not mean errorless assistance." *Martin v. McDonough*, 2006 WL 2245406, *7 (M.D. Fla. Aug. 4, 2006) (citing *Green v. Zant*, 738 F.2d 1529, 1536 (11th Cir. 1984)); *Kemp v. Leggett*, 635 F.2d 453 (5th Cir. 1981).

As a practical matter, at the plea stage, Mr. Tuten could do nothing more than predict the length of Mr. Vasiloff's potential sentence. Mr. Vasiloff's change of plea hearing took place on October 18, 2007; he entered his plea agreement the same day. (Crim. Doc. 15; Crim. Doc. October 18, 2007 minute entry). Mr. Vasiloff's sentencing hearing took place three months later on January 16, 2008. (Crim. Doc. 28). The United States Probation Office issued its presentence report reflecting the advisory guideline imprisonment term of life after the change of plea hearing. (Crim. Doc. 28, pp. 3-4). In advising Mr. Vasiloff about the risks and benefits of the plea waiver in Mr. Vasiloff's plea agreement, Mr. Tuten could only

offer Mr. Vasiloff an educated guess about the sentence that the Court would impose.

Mr. Vasiloff knew this much before the Court accepted his guilty plea: the maximum sentence for *each* of the twenty-one counts relating to the photographs that Mr. Vasiloff produced was 30 years. (Crim. Doc. 27, p. 11). Mr. Vasiloff testified that he understood the applicable maximum penalty, and he understood that the sentencing guidelines were advisory and that the Court could depart from them. (Crom. Doc. 27, p. 13). With this information at his disposal, the Court asked Mr. Vasiloff if he still wished to change his plea to guilty. He replied, "Yes, your honor." (Crim. Doc. 27, p. 26). Mr. Vasiloff then pled guilty separately to each of the 22 counts that his plea agreement covers. (Crim. Doc. 27, pp. 26-29). Mr. Tuten could not have offered Mr. Vasiloff more specific information about his potential sentence before Mr. Vasiloff changed his plea to guilty. Mr. Vasiloff has not established that Mr. Tuten's advice was deficient.

**B.     Mr. Vaslioff Has Not Demonstrated That He Has Been Prejudiced by His Attorney's Alleged Deficient Performance.**

Even if Mr. Vasiloff could establish that Mr. Tuten did not adequately explain the length of Mr. Vasiloff's potential sentence, Mr. Vasiloff cannot prevail on his petition because he cannot prove that he was prejudiced, given that

information concerning the length of his potential sentence was available to him from a variety of sources. The plea documents and the Court's instruction at the plea hearing disclosed to Mr. Vasiloff that the Court might impose the maximum penalty and that his sentence might be lengthy.

For example, the plea agreement states that the statutory punishment that the Court may impose for production of child pornography is "Imprisonment for not less than 15 years nor more than 30 years." (Crim. Doc. 15, p. 2). The Court explained that it had authority to deviate from the Sentencing Guidelines and impose a sentence that was more severe than the sentence recommended in the guidelines. (Crim. Doc. 27, p. 9:4-18). The Court also thoroughly described the penalties associated with the offenses for which Mr. Vasiloff was charged. (*Id.* at 11). In doing so, the Court explicitly stated that the available penalties for "Counts 1 through 21" applied to *each* count:

> Do you understand that the maximum penalties as to Counts 1 through 21: A fine of not more than $250,000. And this applies to each count, so there's 21 counts. So that's 21 times $250,000. Custody of not less than 15 years and not more than 30 years; again that is each count.

(Crim. Doc. 27, p. 11). The Court also noted that as to Count 22, "the custodial term is not more than ten years." (Crim. Doc. 27, p. 12). Mr. Vasiloff stated that he understood the maximum penalties. (*Id.* at 13:2-4).

Because he cannot demonstrate that he suffered prejudice as a result of his trial counsel's alleged ineffective explanation of the potential length of his sentence, Mr. Vasiloff's ineffective assistance of counsel argument fails.

## II.   MR. VASILOFF'S CHALLENGES TO HIS SENTENCE ARE WITHOUT MERIT.

The waiver provision in Mr. Vasiloff's plea agreement precludes Mr. Vasiloff's collateral attack on his sentence. So does his failure to object at the sentencing hearing to the enhancements that the Court. Absent waiver, Mr. Vasiloff's argument regarding the calculation of his sentence fails on the merits. That argument has three components. First, he contends that the Court improperly enhanced his sentence by grouping various pornographic photographs together because there is no evidence that he took the photos over the span of a few days. Second, he asserts that the Court should not have applied the "pattern of activity" enhancement and that the Court's use of both the grouping and the pattern enhancements constitutes double counting. Finally, he avers that the Court should not have added the vulnerable victim enhancement to his offense level because the victim was not unusually vulnerable. (Docs. 1, 34). These arguments are not persuasive. Neither is Mr. Vasiloff's contention that his 3,900 month sentence is unconstitutional.

27

## A. Mr. Vasiloff Waived his Ability to Attack his Sentence.

The waiver provision in Mr. Vasiloff's plea agreement defeats his attempt to challenge his sentence. The pertinent language in the waiver provision states:

> **I, GARY STEVEN VASILOFF, hereby waive . . . the right to challenge any sentence so imposed or the manner in which the sentence was determined in any collateral attack, including, but not limited to, a motion brought under 28 U.S.C. § 2255, subject to the following limitations:**
>
> **The defendant reserves the right to contest in an appeal or post-conviction proceeding:**
>
> **(a) Any sentence imposed in excess of the applicable statutory maximum sentence(s) . . .**
>
> **I, GARY STEVEN VASILOFF, hereby place my signature on the line directly below to signify that I fully understand the foregoing paragraphs, and that I am knowingly and voluntarily entering into this waiver.**

(Crim. Doc. 15, pp. 5-6) (emphasis in original)(signature on original).

Although he argues that his sentence is too long because of the enhancements that the Court applied and because of the way in which the Court stacked the sentences for the twenty-one counts to which he pled guilty, Mr. Vasiloff does not contend that the 15 year sentence for each of the twenty-one production counts exceeds the applicable statutory maximum sentence. Similarly, he does not suggest that the sentence that the Court imposed for the possession

28

count exceeds the statutory maximum. Therefore, Mr. Vasiloff's challenges to the length of his sentence do not fall within the scope of the narrow exception to the waiver provision to which he agreed. That provision bars his § 2255 attack on his sentence.

Indeed, the Court previously advised Mr. Vasiloff that if his plea agreement was valid, then he waived his collateral attack on his sentence. In recommending that the Court deny the Government's motion to dismiss the § 2255 motion, the presiding magistrate judge stated that the waiver provision governed Mr. Vasiloff's "right to challenge in any collateral attack the sentence imposed, the manner in which the sentence was imposed, and any fines or special assessments . . . Any sentencing issues may ultimately be precluded based upon the waiver . . ." (Doc. 19, p. 3). The District Court adopted the magistrate judge's recommendation. (Doc. 22).

Even without the waiver provision, Mr. Vasiloff waived his ability to challenge the enhancements that the Court used in the calculation of the sentence because he did not object to the enhancements at his sentencing hearing. During the sentencing hearing, Mr. Vasiloff's attorney objected to the stacking of the sentences for Counts 1 through 21, but he did not object to the grouping or pattern

29

of activity enhancements that the Court, based on the presentence report, used in

its calculation of Mr. Vasiloff's sentence. Mr. Vasiloff did not raise these

arguments in his direct appeal to the Eleventh Circuit Court of Appeals. (Case No.

08-10412-EE). Consequently. Mr. Vasiloff's arguments regarding the sentencing

enhancements are barred procedurally. *See Rogozinski v. United States*, 2013 WL

1668202 (11th Cir. April 17, 2013).[7]

**A.     The Sentence Enhancements are Proper.**

**1.     Grouping, Pattern of Activity, and Double Counting**.

In sentencing Mr. Vasiloff, the Court accepted the recommendation in the

presentence report for a four point enhancement for grouping and a five point

enhancement for "pattern of activity." With respect to grouping, Mr. Vasiloff

contends that the Court should have grouped all 21 of the production counts

against him together because the Government did not prove by a preponderance of

the evidence "that there was more than a single production day." (Doc. 5, p. 19;

---

[7] Mr. Vasiloff asserts that his counsel was ineffective at the sentencing hearing and on direct appeal for failing to raise the enhancement issues. (Doc. 5, p. 18). Even if Mr. Tuten challenged the enhancements, the Court "cannot conclude that there is a reasonable probability that the result of the sentencing would have been different." *Wilson v. United States*, 962 F. 2d 996, 998 (11th Cir. 1992) (quoting *United States v. Lawson*, 947 F. 2d 849, 853 (7th Cir. 1991)). Because he cannot demonstrate prejudice, Mr. Vasiloff cannot prevail on an ineffective assistance of counsel argument concerning the enhancements that the Court used in his sentence calculation.

*see also* Doc. 34, pp. 12-14). He states: "[t]he government has never presented (or

even had) ANY evidence of the 'multiple production dates' which were used to

enhance his sentence from a severe one of 15-20 years to a completely outrageous

term of three hundred twenty five (325) years." (Doc. 35, p. 1).

Contrary to this argument, in his plea agreement, Mr. Vasiloff stipulated

that he took the images at issue "between the dates of June 23, 2006, and August

14, 2006." (Crim. Doc. 15, p. 4).[8] To prepare the presentence report, the

Probation Office reviewed the images. It found that Mr. Vasiloff took nine of the

images at issue on June 23, 2006; three of the images on July 1, 2006; one image

on July 3, 2006; one image on July 9, 2006; and seven images on August 14, 2006.

(Doc. 25, pp. 7-8) (citing Presentence Investigation Report, p. 6).[9]

United States Sentencing Guidelines Section 3D1.2(b) states:

All counts involving substantially the same harm shall be grouped together
into a single Group. Counts involve substantially the same harm within the

---

[8] Similarly, at the plea hearing the Government stated that if the case had gone to trial, the
evidence would have demonstrated that the images were taken "between the dates of June 23,
2006 and August 14, 2006." (Crim. Doc. 27, p. 25). Mr. Vasiloff acknowledged that the facts
that the Government outlined were substantially correct, and he affirmed that he did the things
that the Government described in its outline of the evidence that it was prepared to present at
trial. (Crim. Doc. 27, pp. 25-26).

[9] Mr. Vasiloff did not object to the presentence report. "It is the law of this circuit that a
failure to object to allegations of fact in a PSI admits those facts for sentencing purposes."
*United States v. Wade*, 458 F.3d 1273, 1277 (11th Cir. 2006). Mr. Vasiloff did not object to the
allegations of fact in the PSI or at the sentencing hearing. The Court deems those facts admitted.

meaning of this rule . . . [w]hen counts involve the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan.

U.S.S.G. §3D1.2(b). Application note 4 provides that a district court should not group counts that cannot be considered "one composite harm." U.S.S.G. §3D1.2 n.4. The application note gives this example: "(5) The defendant is convicted of two counts of rape for raping the same person on different days. The counts are not to be grouped together." *Id.* (emphasis in original). Following these guidelines, the Court did not err when it did not group all 21 production counts together but instead grouped only the counts that related to images taken on the same date.

With respect to "pattern of activity," Mr. Vasiloff argues that if "there is indeed only a single provable 'shooting day' then there are no grounds for the § 4B1.5(b)(1) 'pattern of conduct' enhancement because there was but one 'occasion,' not 'two or more separate instances.'" (Doc. 5, p. 21). This argument fails because the record establishes that there was more than one "shooting day." Moreover, the commentary to guideline § 2G2.2 defines a pattern of activity as "any combination of two or more separate instances of the sexual abuse or sexual exploitation of a minor by the defendant, whether or not the abuse or exploitation

32

(A) occurred during the course of the offense; (B) involved the same minor; or (C)

resulted in a conviction for such conduct." U.S.S.G. 2G2.2 cmt n. 1; *Carter*, 292

Fed. Appx. at 19. Mr. Vasiloff had more than twenty photographs depicting his

stepdaughter in sexually explicit ways. Mr. Vasiloff took the photos on different

days. The record establishes that Mr. Vasiloff, "engaged in 'two or more separate

instances' comprising a pattern of activity." *Carter*, 292 Fed. Appx. at 19.

Finally, Mr. Vasiloff submits that the Court's use of both the §3D1.2(b)

grouping enhancement and the § 2G2.2 pattern of activity enhancement led to

impermissible "double counting." (Doc. 5, pp. 21-22). The Eleventh Circuit

Court of Appeals addressed the issue of double counting relative to Chapter 2 and

Chapter 4 enhancements in *United States v. Carter*, stating:

> "Impermissible double counting occurs only when one part of the
> Guidelines is applied to increase a defendant's punishment on account of a
> kind of harm that has already been fully accounted for by application of
> another part of the Guidelines." *United States v. Matos-Rodriguez*, 188 F.
> 3d 1300, 1309 (11th Cir. 1999)). Double counting is permitted, however,
> "if the Sentencing Commission intended that result and each guideline
> section in question concerns conceptually separate notions relating to
> sentencing." *United States v. Stevenson*, 68 F.3d 1292, 1294 (11th
> Cir.1995).

*Carter*, 292 Fed. Appx. at 19. Significantly, the Court of Appeals reiterated,

"'[t]his court presumes the Sentencing Commission intended to apply separate

33

guideline sections cumulatively, *unless* specifically directed otherwise.'" *Carter*, 292 Fed. Appx. at 19 (quoting *Matos-Rodriguez*, 188 F. 3d at 1310) (emphasis supplied).

Mr. Vasiloff has not rebutted the presumption that the Sentencing Commission intended to apply the §3D1.2(b) grouping enhancement and the § 2G2.2 pattern of activity enhancement cumulatively. Ultimately, he argues simply that it was error for the Court to apply both enhancements absent proof to support each one. (Doc. 34, p. 14). As the undersigned has explained, the record supports the enhancements. Therefore, the undersigned recommends that, if the Court reaches the merits of Mr. Vasiloff's challenges to the calculation of his sentence, the Court reject Mr. Vasiloff's arguments regarding the grouping and pattern of activity enhancements.

**2.      Vulnerable Victim.**

Pursuant to §3A1.1(b)(1), the Court increased Mr. Vasiloff's offense level by two points based on the vulnerable victim enhancement. (Doc. 19). "For purposes of subsection (b) 'vulnerable victim' is person (A) who is a victim of the offense of conviction ...; and (B) who is unusually vulnerable due to age, physical or mental condition, or who is otherwise particularly susceptible to the criminal

34

conduct." U.S.S.G. §3A1.1 cmt. n. 2. "The applicability of the 'vulnerable victim'

enhancement must be determined on a case-by-case basis, and is appropriate

where the defendant knows that the victim has 'unique characteristics' that make

the victim more vulnerable to the crime than other potential victims of the crime."

*United States v. Phillips*, 287 F.3d 1053, 1056-57 (11th Cir. 2002).

Mr. Vasiloff argues emphatically that the victim in this case, "was NOT

UNUSUALLY vulnerable." (Doc. 34, p. 16). The undersigned disagrees. The

victim in this case is Mr. Vasiloff's stepdaughter. She was 14 years old when he

took the images at issue. Mr. Vasiloff created the images while his wife – his

stepdaughter's mother – was hospitalized, and he was caring for the victim and for

her brother. Mr. Vasiloff's relationship with the victim and the nature of the crime

warrant the vulnerable victim enhancement.[10]

## B.    Mr. Vasiloff's Sentence is not Unconstitutional.

Mr. Vasiloff presents three arguments in support of his contention that his

3,900 month sentence is unconstitutional. First, in what appears to constitute a

---

[10] Mr. Vasiloff argues at length that the Court should not have applied this sentence
enhancement as a matter of law because it does not concern the provision of alcohol or drugs to a
minor, (Doc. 34, pp. 14-18), and he contends that it is "a standard practice in the film and photo
business to use 'fake' beer inside a 'real' beer bottle," (Doc. 30, p. 3). The undersigned does not
reach these issues because the undersigned finds that vulnerable victim enhancement rests
squarely on Mr. Vasiloff's familial relationship to the victim and on her susceptibility to abuse,
given the circumstances of her mother's illness.

due process challenge, Mr. Vasiloff posits that he cannot be charged with possession of child pornography because he deleted the images at issue before he was arrested. (Doc. 34, pp. 18-20). Second, he submits that the 3,900 month sentence constitutes cruel and unusual punishment. (Doc. 5, pp. 29-32). Finally, Mr. Vasiloff contends that the Guidelines Manual offense level 43 should be a sentence range, not a mandatory life sentence -- another apparent due process argument. (Doc. 5, pp. 32-33). The undersigned recommends that the Court reject these constitutional challenges.

## 1.     Mr. Vasiloff "Possessed" Child Pornography.

Mr. Vasiloff argues that, "[i]n a holistic sense, one does not 'possess' something that they long ago put in the trash." (Doc. 34, p. 19). 18 U.S.C. § 2252A(a)(5)(B) defines possession of child pornography as:

> knowingly possess[ing], or knowingly access[ing] with intent to view, any book, magazine, periodical, film, videotape, computer disk, or any other material that contains an image of child pornography that has been mailed, or shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means, including by computer, or that was produced using materials that have been mailed, or shipped or transported in or affecting interstate or foreign commerce by any means, including by computer.

According to the Eleventh Circuit Court of Appeals, possession is "'the act or

condition of having in or taking into one's control or holding at one's disposal.'"

*United States v. Woods*, 684 F.3d 1045, 1059 (11th Cir. 2012) (quoting *United States v. Frank*, 599 F.3d 1221, 1234 (11th Cir. 2010)). When a defendant deletes images of child pornography, he continues to "exercise control over the images." *United States v. Shiver*, 305 Fed. Appx. 640, 643 (11th Cir. 2008) (citing *United States v. Romm,* 455 F.3d 990, 1000 (9th Cir. 2006)).

Like Mr. Vasiloff, Mr. Shiver argued that he did not possess child pronography because he deleted the offending images from his computer. The Eleventh Circuit was not persuaded. The appellate court opined:

> Shiver insists that since all of the images had been deleted and stored in his computer's unallocated files, and since he lacked the 'forensic software' to access or retrieve the images from that location, he consequently lacked the ability to exercise dominion or control over the images. But even assuming that Shiver was in fact unable to retrieve the images from the unallocated files, he was able to exercise control over the images by deleting them from his computer's cache.

*Shiver*, 305 Fed. Appx. at 643. The court equated control with possession and held that Mr. Shiver "possessed the images knowingly." *Id.* Mr. Vasiloff's argument is indistinguishable from Mr. Shiver's and equally unpersuasive. Thus, under this binding precedent, Mr. Vasiloff possessed photographs for

37

purposes of §2252A(a)(5)(b) even if he deleted them.[11]

In any event, Mr. Vasiloff's argument cannot be reconciled with the record. At his plea hearing, Mr. Vasiloff admitted that he possessed child pornography. (Crim. Doc. 27, p. 25:10). Mr. Vasiloff possessed the pictures prior to deleting them. In his plea agreement, he stipulated that he took "nude photographs of his stepdaughter (age 14) using a dildo and posing in other lewd and lascivious positions, and had downloaded the photos from his digital camera onto his personal computer." (Crim. Doc. 15, p. 3). Therefore, he exercised control over the photographs. Mr. Vasiloff was properly sentenced for possession of child pornography.

## 2. Mr. Vasiloff's Sentence Does Not Constitute Cruel and Unusual Punishment.

---

[11] Mr. Vasiloff cites *United States v. Seiver*, 692 F.3d 774 (7th Cir. 2012), for the proposition that, "it is true that after deleting a file and emptying the trash bin containing it, a computer owner who is not technologically sophisticated no longer 'possesses' the file in a meaningful sense, and the crime of which the defendant was committed requires knowing possession. Had the defendant deleted the incriminating files (and emptied his trash folder with those files in it), he would no longer have knowingly possessed them if . . . he could no longer access them because he lacked the software that he would have needed to be able to recover them from the hard drive's slack space." *Id.* at 778 (citing *United States v. Moreland*, 665 F.3d 137, 152 (5th Cir. 2011)). The language that Mr. Vasiloff cites is dicta in an opinion regarding the validity of a search warrant for a computer that contained evidence of violations of 18 U.S.C. §§ 2252 and 2252A. Moreover, an opinion from the Seventh Circuit Court of Appeals is persuasive authority; it does not trump binding Eleventh Circuit authority.

Citing the Eight Amendment, Mr. Vasiloff argues that his sentence constitutes cruel and unusual punishment. (Doc. 5, p. 29). "The Eighth Amendment provides: 'Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.' U.S. Const. Amend. VIII. 'The Eighth Amendment does not require strict proportionality between crime and sentence' but rather 'forbids only extreme sentences that are 'grossly disproportionate' to the crime.'" *United States v. Estrella*, 2013 WL 1943433, *4 (11th Cir. May 13, 2013) (quoting *United States v. Farley*, 607 F.3d 1294, 1341 (11th Cir. 2010)). "'Outside the context of capital punishment, *successful* challenges to the proportionality of sentences [are] exceedingly rare.'" *United States v. Raad*, 406 F.3d 1322, 1323 (11th Cir. 2005)(quoting *Solem v. Helm*, 463 U.S. 277, 289 (1983))(emphasis supplied). Mr. Vasiloff bears the burden of showing that the sentence is grossly disproportionate to the offense committed. *United States v. Johnson*, 451 F.3d 1239, 1243 (11th Cir. 2006).

"Child sex crimes are among the most egregious and despicable of societal and criminal offenses . . .." *United States v. Sarras*, 575 F.3d 1191, 1220 (11th Cir. 2009). As the Court noted, this child sex crime involving Mr. Vasiloff's 14 year old stepdaughter was, for all intents and purposes, incestuous, making it all

39

the more egregious.  The Court explained:

> The fact that Mr. Vasiloff used his position as the stepfather or surrogate
> father -- and by surrogate father, I mean more than stepfather. There was a
> close relationship where the child looked on Mr. Vasiloff as the person who
> had been in the role of her father makes this worst. Although any child
> should not go through what this child went through, but the fact that Mr.
> Vasiloff was [for all intents and] purposes her father makes this worst. The
> fact that the mother was in the hospital just gave Mr. Vasiloff more access
> to his stepdaughter without any fear of discovery by his wife.

> . . .

> But because of the relationship between Mr. Vasiloff and this particular
> child, it's not only, you know, the production of child pornography or
> sexual exploitation of a child, but it's sexual exploitation of a child who in
> everything but a biological sense was the daughter of the perpetrator, and so
> it's incestuous type. Well, although I guess technically incest. It's just that
> type of violation. And the level of -- I mean, I am not a psychologist or
> psychiatrist, but the level of the impact on the victim, in my experience with
> these cases coming before me, is exacerbated when there is an incestuous
> type exploitation.

(Crim. Doc. 28, pp. 16-17).

As the Court stated, Mr. Vasiloff's 325 year sentence "is basically just
another way of saying life." (Crim. Doc. 28, p. 16:7-10).  The sentence is severe,
but it is not disproportionate under the circumstances, and it does not violate the
Eighth Amendment. *See United States v. Rolon*, 445 F.3d 314, 332 (11th Cir.
2011) (rejecting Eighth Amendment challenge to consecutive life sentences);

*Sarras*, 575 F.3d at 1209 (affirming sentence of "360 months on each of counts

one, two, and three [concerning persuading a minor to engage in sexually explicit

conduct]; and [a] term of 120 months on count four [possession of child

pornography]. All such terms to run consecutive."); *Carter*, 292 Fed. Appx. at 18,

20-21 (affirming consecutive 20 year (count 1 - production), 15 year (count 2 -

distribution/receipt), and 10 year (count 3 - possession of child pornography)

sentences even though defendant argued that he was in poor health); *see generally,*

*United States v. Hankerson*, 491 Fed. Appx. 166, 168 (11th Cir. 2012) (quoting

with approval *United States v. Yousef*, 327 F.3d 56, 163 (2nd Cir. 2003))

("Lengthy prison sentences, even those that exceed any conceivable life

expectancy of a convicted defendant, do not violate the Eighth Amendment's

prohibition against cruel and unusual punishment when based on a proper

application of the Sentencing Guidelines or statutorily mandated consecutive

terms.").[12]

---

[12] Mr. Vasiloff has asked the Court to take notice of Judge Posner's concurring opinion in *United States v. Craig*, 703 F.3d 1001, 1002-04 (7th Cir. 2012) (Posner, J., concurring). Judge Posner's cost-benefit analysis of lengthy sentences is interesting and worthy of discussion, but it does not cast a constitutional pall over the sentence in this case. The *per curiam* opinion in *Craig* supports the sentence in this case. Mr. Craig's total offense level for four counts of producing child pornography was 43 (just like Mr. Vasiloff's offense level), and "his guideline sentence for each count was life." Instead of giving him a life sentence, the district court sentenced Mr. Craig to 30 years on one count and to concurrent twenty year sentences on the other three counts, with instructions that Mr. Craig was to serve the concurrent 20 year sentences

3.     **Mandatory Life of PSI Offense Levels Greater than 43**.

Mr. Vasiloff argues that there should be a sentence range for offenses above 43.  (Doc. 5, p. 32).  28 U.S.C. § 994(a) authorizes the United States Sentencing Commission to promulgate guidelines and policy statements.  The Commission's statutory mission is to "foresee guidelines that will further the basic purpose of criminal punishment...it delegates to the Commission broad authority to review and rationalize the federal sentencing process."  U.S.S.G. §1A1.1, ¶ 2.  The Commission is responsible for adopting sentencing ranges.

Mr. Vasiloff cites *United States v. Heath*, 840 F. Supp. 129, 131 (S.D. Fla. 1993), for the proposition that an offense level above 43 should have a sentence range.  *Heath* is not a child pornography case; it is a drug case involving a young defendant.  *Id*.  Although the district court judge formulated a sentence range for levels above 43, he did so because the sentence table "does not consider the impact caused to a young defendant."  *Id*.  Mr. Vasiloff committed his crime as an older offender, and the crime was more egregious in nature than Mr. Heath's crack cocaine offense at the age of 22.  The undersigned does not recommend that the Court follow *Heath*, an opinion that is not binding in this Court.  There is no flaw,

_____

consecutive to the 30 year sentence.  The Seventh Circuit panel held that, "[t]he judge was entitled to do this," and the panel dismissed the appeal.  *Id.* at 1002.

constitutional or otherwise, in the Court's use of existing sentencing guidelines.[13]

## C.   Cumulative Error Theory.

The undersigned does not find that there were multiple errors committed during Mr. Vasiloff's criminal proceedings. Mr. Vasiloff contends that he has been denied the constitutional right to a fair trial; however, he waived his right to a trial when he accepted a plea agreement.

## III.   MR. VASILOFF IS NOT ENTITLED TO AN EVIDENTIARY HEARING.

Mr. Vasiloff has asked for an evidentiary hearing so that he may present "evidence from outside the record" in support of his § 2255 motion. (Doc. 30, p.1). "'[I]f the petitioner 'alleges facts that, if true, would entitle him to relief, then the district court should order an evidentiary hearing and rule on the merits of his claim.'" *United States v. Scott*, 325 Fed. Appx. 822, 824 (11th Cir, 2009) (quoting *United States v. Aron*, 291 F.3d 708, 715(11th Cir. 2002)). "'[A] district court is not required to hold an evidentiary hearing where the petitioner's

---

[13] Mr. Vasiloff also complains in general about sentencing procedures. He contends that it is wrong for a court to have to advise a defendant only of the maximum potential penalty for the crimes with which he is charged and not to have to tell the defendant that the sentences for separate counts may run consecutively. (Doc. 15, pp. 21-23). Here, the Court explicitly told Mr. Vasiloff at his plea hearing that the maximum penalty that the Court described applied to each count, and the Court made clear that Mr. Vasiloff's guilty plea pertained to 21 production counts and one possession count. (Doc. 27, p. 11). Mr. Vasiloff has not demonstrated that his sentence is unconstitutional on this record.

allegations are affirmatively contradicted by the record, or the claims are patently

frivolous.'" *Id.* The evidence which Mr. Vasiloff proposes to introduce at an

evidentiary hearing either supports arguments that are patently frivolous or

concerns allegations that the record affirmatively contradicts.

Mr. Vasiloff first wishes to offer evidence to contest Mr. Tuten's assertion

in his affidavit that Mr. Vasiloff benefitted from his guilty plea because the

Government agreed to forego additional investigation of Mr. Vasiloff's conduct in

exchange for the plea, and the investigation may have produced evidence that

would support additional charges against Mr. Vasiloff. (Doc. 25-1, p. 1; Doc. 30,

pp. 2-3). In his affidavit, Mr. Tuten stated that Mr. Vasiloff, "informed me of

information that caused us to believe that other related charges would be filed

against him if this information ever came to light through his admission or through

a more thorough investigation. I shall not divulge that information as it is covered

by the attorney client privilege. Mr. Vasiloff did not want a trial as trial

preparation could result in the Government discovering the additional information

about the case. Further, Mr. Vasiloff could not testify at a trial without the

probability of his testimony revealing to the Government information that could

and probably would lead to more charges." (Doc. 25-1, p. 1). Mr. Vasiloff argues

that, "[c]ontrary to Mr. Tuten [sic] claims, Mr. Vasiloff did NOT admit to any additional significant crimes, and even if he had, they wouldn't have subjected him to more time in prison than he will end up serving on his current 3,900 month 'bargain' that Mr. Tuten claims to have arranged." (Doc. 30, p. 2).

The record contradicts Mr. Vasiloff's assertion. The affidavit that an FBI Special Agent provided in support of the federal criminal complaint against Mr. Vasiloff contains descriptions of conduct that exceeds the scope of the conduct addressed in Mr. Vasiloff's federal indictment, lending credence to Mr. Tuten's assertion that Mr. Vasiloff gained a benefit by obtaining "reasonable assurances from the Government that the investigation was closed and that there were no other possible charges that would be filed in the Northern District of Alabama." (Doc. 25-1, p. 1; Crim. Doc. 1, p. 2). Specifically, the agent stated in his affidavit that the Alabama Department of Human Resources Assessment of Children at Risk officials reported to the Cherokee County Sheriff's Office that, "Gary Steven Vasiloff had sexually abused his stepdaughter (age 14) by performing oral sex on her, watching 'sex movies' with her, persuading her to rub his penis, and teaching her to use a dildo." (Crim. Doc. 1, p. 2). This conduct could have served as the basis for additional charges against Mr. Vasiloff. Perhaps there is other conduct of

45

which Mr. Tuten is aware. On this record, the undersigned does not find that an evidentiary hearing is warranted.[14]

In support of his argument that the Court should not have applied a vulnerable victim enhancement in calculating his sentence, Mr. Vasiloff seeks to introduce evidence that it is "standard practice in the film and photo business to use 'fake' beer inside a 'real' beer bottle." (Doc. 30, p. 3). He offers the declaration of Robert Tashbook who posits that, "it is the nearly universal practice to use 'fake' (non-alcoholic) liquid instead of real (or simulated) beer bottles when filming or photographing a scene involving the depiction of a performer 'drinking' from a bottle." (Doc. 30, p. 11). This statement and Mr. Tashbook's "professional judgment," based on his review of the Government's description of the images at issue, that Mr. Vasiloff's stepdaughter was neither drunk nor medicated when Mr. Vasiloff photographed her is probative of nothing, is patently frivolous, and does not entitle Mr. Vasiloff to relief. *See* pp. 34-35, *supra*.

Therefore, the undersigned recommends that the Court deny Mr. Vasiloff's

---

[14] Mr. Vasiloff asks the Court to sanction Mr. Tuten for "false statements that he made in his affidavit." (Doc. 31, p. 1). Mr. Vasiloff offered his declaration and his sister's declaration in support of his request for a sanction. (*Id.* at p. 3-8). Mr. Vasiloff's sister, Ms. Medley, states, for example, that she is "unaware of any actions (of commission or omission) by the defendant that WOULD have opened him up to criminal liability, contrary to the sworn claims of Mr. Tuten in his affidavit." (Doc. 31, p. 8). For the reasons stated above, Mr. Vasiloff's criticisms of Mr. Tuten's affidavit are unpersuasive. There is no basis for a sanction.

motion for an evidentiary hearing.

## CONCLUSION

The undersigned magistrate judge RECOMMENDS that the Court DENY

Mr. Vasiloff's motion to vacate, set aside or correct sentence.

Notice of Right to Object

Any party who objects to this report and recommendation must, within

fourteen (14) days of the date on which it is entered, file specific written

objections with the clerk of this court. Any objections to the failure of the

magistrate judge to address any contention raised in the petition also must be

included. Failure to do so will bar any later challenge or review of the factual

findings or legal conclusions of the magistrate judge. See 28 U.S.C. §

636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985),

*reh'g denied*, 474 U.S. 1111, 106 S.Ct. 899, 88 L.Ed.2d 933 (1986); *Nettles v.*

*Wainwright*, 677 F.2d 404 (5th Cir. 1982) (en banc). In order to challenge the

findings of the magistrate judge, a party must file with the clerk of the court

written objections which shall specifically identify the portions of the proposed

findings and recommendation to which objection is made and the specific basis for

objection. A copy of the objections must be served upon all other parties to the

action.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge shall make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the magistrate judge. The district judge, however, need conduct a hearing only in his discretion or if required by law, and may consider the record developed before the magistrate judge, making his own determination on the basis of that record. The district judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Objections not meeting the specificity requirement set out above will not be considered by a district judge.

A party may not appeal a magistrate judge's recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a district judge.

Done, this the 14th day of August, 2013.

_Madeline H. Haikala_

MADELINE HUGHES HAIKALA
U.S. MAGISTRATE JUDGE

**46**

FILED
2013 Dec-04 AM 09:11
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION**

GARY STEVEN VASILOFF,     )

       Petitioner,     )

v.     )     Case No. 4:10-cv-08001-VEH-PWG
     )     (Crim. No. 4:07-cr-00337-VEH-PWG)

UNITED STATES OF AMERICA,     )

       Respondent.     )

## MEMORANDUM OPINION AND ORDER

The previously assigned magistrate judge filed a report and recommendation on August 14, 2013 (Doc. # 37), recommending that the petition for writ of habeas corpus be DENIED. On September 16, 2013, petitioner filed a pleading styled as "Notice of Fraud Upon the Court." (Doc. # 40). On October 7, 2013, petitioner filed "Petitioner's Objections to Magistrate's Report and Recommendation." (Doc. # 42). The Court will treat such filings as motions, or, in the alternative, as objections to the magistrate judge's report and recommendation.

Also pending are petitioner's Motion for Evidentiary Hearing (Doc. # 30) and petitioner's Motion to Appoint Counsel (Doc. # 32); in light of the remainder of this opinion, these motions are hereby DENIED as MOOT. Next, while not styled as a motion, the court construes petitioner's "Request to Delay Ruling and Add One Exhibit" (Doc. # 44) as such; this motion is hereby GRANTED IN PART and DENIED IN PART. Specifically, petitioner's request to add an exhibit is hereby GRANTED; the request to dely ruling is hereby DENIED. Finally, petitioner has filed a "Request for Immunity Letter" (Doc. # 41); while not styled as a motion, to the extent that it could be so construed, it is hereby

DENIED.  The court has also considered the "supplemental citations" as set ut in petitioner's Notice of

Supplemental Citations" (Doc. # 45).

Having carefully reviewed and considered *de novo* all of the materials in the court file, the Court

is of the opinion that the magistrate judge's findings are due to be and are hereby ADOPTED and her

recommendation is ACCEPTED. To the extent that the petitioner's filings of September 16, 2013, and

October 7, 2013 (Docs. # 40, 42), are construed as interposing objections to the report and

recommendation, such objections are due to be and hereby are OVERRULED.  To the extent that the

petitioner filings (Docs. # 40, 42) are construed as motions, they are due to be and hereby are DENIED.

Accordingly, the petition for writ of habeas corpus is due to be DENIED. A Final Judgment will be

entered.

As to the foregoing it is SO ORDERED this the 4th day of December, 2013.

**VIRGINIA EMERSON HOPKINS**
United States District Judge

2

47

FILED
2013 Dec-04 AM 09:22
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**MIDDLE DIVISION**

| | |
|---|---|
| GARY STEVEN VASILOFF, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Case No. 4:10-cv-08001-VEH-PWG |
| | ) (Crim. No. 4:07-cr-00337-VEH-PWG) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |

### FINAL JUDGMENT

In accordance with the Memorandum Opinion entered contemporaneously herewith and with

Rule 58 of the *Federal Rules of Civil Procedure*, it is hereby ORDERED, ADJUDGED, and

DECREED that the petition for writ of habeas corpus is DENIED.

As to the foregoing it is SO ORDERED this the 4th day of December, 2013.

**VIRGINIA EMERSON HOPKINS**
United States District Judge

**49**

FILED
2014 Feb-04 AM 10:33
U.S. DISTRICT COURT
N.D. OF ALABAMA

Mr. Gary Steven Vasiloff, pro se

USP -- 26486001

P.O. Box 24550, Tucson, AZ 85734

2014 FEB - 3   P 12: 36

COURT
ALABAMA

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF ALABAMA

MIDDLE DIVISION

| | | |
|---|---|---|
| Gary Steven VASILOFF, | } | Case No. 4:10-cv-08001-VEH-PWG |
| Petitioner, | } | 4:07-cr-00337-VEH-PWG |
| vs. | } | |
| UNITED STATES OF AMERICA, | } | (conditional) NOTICE |
| Respondent. | } | OF APPEAL |
| _____ | } | |

Petitioner pro se, Mr. Gary Steven Vasiloff ["Mr. Vasiloff"],
respectfully notices this Court and opposing counsel, the
United States Attorney, that he wishes to appeal the final
judgment of this Court, which denied his petition for a writ
of habeas corpus [under 28 U.S.C. §2255] and his associated
filings that were also denied (whether explicitly or "as
moot") at that same time.

This Notice is timely under Fed.R.App.P. 4(a)(1)(B)(i) as it
is filed within 60 days of the 4 December 2013 final judgment
and it is an appeal in a civil case and the respondent in the
United States.

page 1 of 4

This notice is CONDITIONAL on three things:

First, despite Mr. Vasiloff explicitly noting various factual and legal errors (not mere differences in interpretation or opinion) that were material to (former) Magistrate Haikala's Report & Recommendation, this Court did NOT explicitly address ANY of those errors when denying the Habeas petition. Since Mr. Vasiloff contends that the CORRECT facts (as presented by him) "if [found by this Court to be] true, would entitle him to relief, [this Court] should [have] order[ed] an evidentiary hearing," which was instead summarily denied. Absent an EXPLICIT addressing of these claimed factual errors, Mr. Vasiloff, contends that it is more likely that his claims were misunderstood rather than "liberally construed," as Supreme Court and Circuit precedent requires. Mr. Vasiloff is filing a SEPARATE Motion to this Court highlighting these explicit errors. In light of that filing, perhaps it is best for this Court to retain jurisdiction of this case-- as a correction or amendment of this Court's 4 December 2013 will directly affect the (need and subject of this) appeal.

Second, there is a previously filed Motion before this Court to get Mr. Vasiloff's "direct appeal" rights restored-- in light of the Eleventh Circuit's erroneous "dismissal" of the that appeal in 2008 (based on his an alleged lawful waiver of his appeal rights), a ruling that is in direct conflict with this Court's 4 December 2013 ruling, that Mr. Vasiloff did not waive those appeal rights. When this Court grants that Motion, then an appeal of this §2255 Motion will be moot as Mr. Vasiloff can present a stronger version of these claims to the

Court of Appeals via his restored "direct appeal."

Third, Rule 11 of the Rules Governing §2255 Proceedings
states in part, "The district court must issue or deny a
certificate of appealability when it enters a final order
adverse to the applicant." Such was NOT done by this Court.
Therefore, Mr. Vasiloff respectfully requests that he be
allowed to take advantage of the second sentence of that same
rule subsection: "... the court may direct the parties to
submit arguments on whether a certificate should issue." Mr.
Vasiloff believes that such a COA is meritorious. He requests
the opportunity to argue this fact to this Court, prior to its
making a decision on whether to issue a COA.

Mr. Vasiloff suggests to this Court that perhaps an extension
of time to file an appeal, as per Fed.R.App.P. 4(a)(5) or any
other germane statute, rule or policy, would be appropriate,
to allow for resolution of the two above issues and any others
that might be relevant.

Mr. Vasiloff further prays for any and all other relief,
related to his timely appeal of this Court's rulings on 4
December 2013, to which he might be entitled. He further
requests that, just like all of his filings, this filing be
"liberally construed."

Mr. Vasiloff respectfully requests that the Court of Appeals be
made aware that he will be filing a separate COA application once
the appeal is docketed.

Page 3 of 4

RESPECTFULLY SUBMITTED,

24 January 2014

Gary Steven Vasiloff, pro se

[Because opposing counsel, the United States Attorney, is an
electronic filer, they will be served by the CM/ECF system
using an NDA. Mr. Vasiloff requests to be sent a simultaneous
NDA, delivered by U.S. Mail, so that he can verify receipt by
the Court of this Notice and that such service on the US was
actually performed.]

VERIFICATION

I, Gary Steven Vasiloff, do hereby affirm under penalty of
perjury, as per 28 U.S.C. §1746, that all facts in this
Notice, including the date of delivery of this Notice to
prison legal staff for mailing to this Court, are true and
correct.

24 January 2014

Gary Steven Vasiloff, pro se

**53**

FILED

2014 Feb-06  AM 11:06
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### MIDDLE DIVISION

|  |  |  |
|---|---|---|
| GARY STEVEN VASILOFF, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 4:10-cv-08001-VEH-PWG |
| | ) | (Crim. No. 4:07-cr-00337-VEH-PWG) |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## ORDER REGARDING CERTIFICATE OF APPEALABILITY
## IN PRISONER HABEAS CASE

The petitioner, Gary Steven Vasiloff ("Petitioner"), has filed a notice of appeal (Doc. # 49) from the Court's denial of his petition for writ of habeas corpus brought pursuant to 28 U.S.C. § 2255. The notice of appeal also includes a request for the opportunity to submit arguments regarding why the Court should issue a certificate of appealability. (Doc. # 49 at 3). The Court construes the notice of appeal as a motion for certificate of appealability.

A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, a "petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

For the reasons set forth in the magistrate judge's report and recommendation (Doc. # 37), which was adopted by the Court (Doc. # 46), Petitioner has not met the standard required to obtain

a certificate of appealability. Accordingly, to the extent that the notice of appeal (Doc. # 49) is construed as a motion for a certificate of appealability, it is hereby **DENIED.** The Court advises Petitioner that he may seek a certificate of appealability directly from the Court of Appeals for the Eleventh Circuit.

      **DONE** this 6th day of February, 2014.

**VIRGINIA EMERSON HOPKINS**
United States District Judge

2

**59**

USCA11 Case: 14-10483 Document: 28 Date Filed: 12/08/14 Page: 1 of 260 FILED
Case: 14-10483    Date Filed: 12/08/2014    Page: 1 of 1

2014 Dec-09 AM 09:29
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-10483-A

_____

GARY STEVEN VASILOFF,

Petitioner-Appellant,

versus

UNITED STATES OF AMERICA,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

ORDER:

Gary Steven Vasiloff moves for a certificate of appealability ("COA"), and leave to proceed *in forma pauperis* ("IFP"), in order to appeal the district court's denial of his 28 U.S.C. § 2255 motion to vacate, set aside, or correct sentence. To obtain a COA, a movant must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Because Vasiloff has satisfied this standard, his motion for a COA is GRANTED on the following issues only:

(1) Whether Vasiloff's claim that the indictment was multiplicitous was barred by his guilty plea or the appeal waiver.

(2) If not, whether the indictment was multiplicitous.

Vasiloff's motion for IFP is also GRANTED.

_____
UNITED STATES CIRCUIT JUDGE

# UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

John Ley
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

December 08, 2014

Gary Steven Vasiloff
USP Tucson - Legal Mail
PO BOX 24550
TUCSON, AZ 85734

Appeal Number: 14-10483-A
Case Style: Gary Vasiloff v. USA
District Court Docket No: 4:10-cv-08001-VEH-PWG
Secondary Case Number: 4:07-cr-00337-VEH-PWG

**This Court requires all counsel to file documents electronically using the Electronic Case Files ("ECF") system, unless exempted for good cause.**

The enclosed order has been ENTERED.

Sincerely,

JOHN LEY, Clerk of Court

Reply to: Denise E. O'Guin, A
Phone #: (404) 335-6188

MOT-2 Notice of Court Action

**61**

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

No. 14-10483-A

GARY STEVEN VASILOFF,

Petitioner-Appellant,

versus

UNITED STATES OF AMERICA,

Respondent-Appellee.

Appeal from the United States District Court
for the Northern District of Alabama

Before ROSENBAUM and JILL PRYOR, Circuit Judges:

BY THE COURT:

Gary Steven Vasiloff moves for clarification of this Court's order of December 8, 2014,

granting him a certificate of appealability ("COA"), and leave to proceed *in forma pauperis* on

appeal. Vasiloff has also moved to stay the briefing schedule in this appeal. The motion for

clarification is DENIED, in part, as to the first issue authorized in the COA, except to remind the

parties that any issue not raised in an initial brief will be deemed abandoned. *See United States

v. Day*, 405 F.3d 1293, 1294 n.1 (11th Cir. 2005).

The motion for clarification is GRANTED as to the second issue authorized in the COA.

The second issue authorized in the COA is amended as follows:

(2) If not, whether the indictment was multiplicitous because it charged one
production count for each individual photograph.

The motion to stay the briefing schedule is DENIED AS MOOT.

# UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

Douglas J. Mincher
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

April 13, 2015

Gary Steven Vasiloff
USP Tucson - Inmate Legal Mail
PO BOX 24550
TUCSON, AZ 85734

Appeal Number: 14-10483-AA
Case Style: Gary Vasiloff v. USA
District Court Docket No: 4:10-cv-08001-VEH-PWG
Secondary Case Number: 4:07-cr-00337-VEH-PWG

**This Court requires all counsel to file documents electronically using the Electronic Case Files ("ECF") system, unless exempted for good cause.**

The enclosed order has been ENTERED.

Sincerely,

DOUGLAS J. MINCHER, Clerk of Court

Reply to: David L. Thomas, AA/rvg
Phone #: (404) 335-6169

MOT-2 Notice of Court Action

## CERTIFICATE OF SERVICE

I hereby certify that on this the 13th day of July, 2015, the foregoing appendix was filed electronically using the Court's CM/ECF system and a copy was served on the *pro*-se Appellant by first-class United States mail, postage prepaid, addressed as follows:

>Gary Steven Vasiloff, *pro se*
>#26486-001
>U.S.P. - Tucson
>P.O. Box 24550
>Tucson, AZ  85734

and by mailing the original and an additional copy of the appendix by Federal Express overnight delivery, to the Clerk of this Honorable Court, on the same date, addressed as follows:

>Clerk's Office – Appeal No. 14-10483-AA
>U.S. Court of Appeals – Eleventh Circuit
>56 Forsyth Street NW
>Atlanta, GA  30303.

Michael B. Billingsley
*Assistant United States Attorney*

Address of Counsel:

United States Attorney's Office
1801 Fourth Avenue North
Birmingham, Alabama 35203-2101
(205) 244-2001